UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEVAUGHN DINGLE,

    Plaintiff,

v.

UNIVERSITY OF SOUTH
FLORIDA BOARD OF
TRUSTEES,

    Defendant.
_____/

Case No..: 8:21-CV-02861-MSS-AEP

### KEVAUGHN DINGLE'S RESPONSE IN OPPOSITION TO THE UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Plaintiff, Kevaughn Dingle ("Plaintiff" or "Mr. Dingle"), by counsel and pursuant to Rule 12, Federal Rules of Civil Procedure, Local Rule 3.01, and the Court's Endorsed Order Granting Plaintiff's Unopposed Motion for Extension of Time to Respond to Motion to Dismiss Amended Complaint [Doc. 21] files his Response in Opposition to Defendant University of South Florida Board of Trustees' ("USF" or the "University") Motion to Dismiss Plaintiff's Amended Complaint (the "Motion") [Doc. 18] and Incorporated Memorandum of Law. The Court should deny the Motion for the following reasons.

### INTRODUCTION

Mr. Dingle's reputation, life, and future have been completely destroyed as a result of USF's discriminatory conduct and actions. USF simply does not care; instead,

USF boasts that it is not required to "make correct decisions" during life-altering disciplinary proceedings like Mr. Dingle's. [*See* Doc. 18, pg. 17]. USF's indifference and arrogance are on full display throughout the Motion. The Motion mischaracterizes certain allegations of the Amended Complaint, mischaracterizes court opinions, and relies on inapplicable law.

USF is attempting to litigate the merits of Mr. Dingle's claims through its Motion by going well beyond the four corners of the Amended Complaint as well as relying on incomplete records. In that regard, the Motion is representative of, and no different than, how USF conducted its sham investigation and ultimate expulsion of Mr. Dingle.

Nonetheless, the Amended Complaint, as a matter of law, sufficiently alleges claims under Title VI of the Civil Rights Act of 1964 ("Title VI") and Title IX of the Education Amendments of 1972 ("Title IX"). As to Title VI, the Amended Complaint sufficiently alleges that similarly situated individuals were treated disparately and that USF had a discriminatory intent in expelling Mr. Dingle from USF. As to Title IX, the Amended Complaint sufficiently alleges a claim under an erroneous outcome theory. *See Norris v. University of Colorado, Boulder*, 362 F.Supp.3d 1001 (D. Colo. 2019) (denying motion to dismiss Title IX claim based on similar allegations in the complaint). Therefore, the Court should deny the Motion.

2

## MOTION TO DISMISS STANDARD

The threshold for surviving a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a low one. *Farmer v. Humana, Inc.*, No. 8:21-CV-1478-MSS-SPF, 2022 WL 732126, at *2 (M.D. Fla. Jan. 25, 2022) (*citing Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al.*, 711 F.2d 989, 995 (11th Cir. 1983)). A Rule 12(b)(6) motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States,* 734 F.2d 762, 765 (11th Cir.1984). Instead, a complaint must simply contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). To avoid dismissal for failure to state a claim, a complaint must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Factual allegations must be accepted as true and construed in a light most favorable to the plaintiff. *Id.; Belanger v. Salvation Army,* 556 F. 3d 1153, 1155 (11th Cir. 2009).

## MEMORANDUM OF LAW

I. **The Amended Complaint sufficiently alleges a claim under Title VI of the Civil Rights Act of 1964.**

USF argues, despite the 159 numbered paragraphs of the Amended Complaint, that Mr. Dingle has not pled <u>any</u> facts to meet the pleading standard applicable to Title VI claims. [Doc. 18, pg. 9]. In support of its argument, USF relies on law inapplicable

to this stage of the proceeding and cites case law which actually supports Mr. Dingle's claims.

### A. Elements of a Title VI Claim.

Title VI provides that "no person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

"To state a claim for discrimination under [Title VI], a plaintiff must plausibly allege that the (1) defendant discriminated based on [race]; (2) discrimination was intentional; and (3) discrimination was a substantial or motivating factor for the defendant's actions." *Qureshi v. Alabama Coll. of Osteopathic Med., Inc.*, No. 1:20-CV-934-RAH-SMD, 2021 WL 2364210, at *2 (M.D. Ala. June 9, 2021) (*citing Methelus v. Sch. Bd. of Collier Cty., Fla.*, 243 F. Supp. 3d 1266, 1277 (M.D. Fla. 2017) (citation omitted)). Additionally, a plaintiff bringing a Title VI claim "must allege that, through state action, similarly situated persons have been treated disparately, and that the disparate treatment was motivated by race." *Kemp v. Georgia State Univ. Admissions Off.*, Case No. 1:07-CV-0212-BBM, 2008 WL 11320077, at *4 (N.D. Ga. July 28, 2008).

Mr. Dingle's burden is not onerous at this early a stage in the proceeding, *see Jumbo v. Alabama State Univ.*, 229 F. Supp. 3d 1266, 1272 (M.D. Ala. 2017) (citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 565 (3d Cir. 2002), because "'issues involving state of mind,' such as discriminatory intent, involve fact-focused questions that 'are often unsuitable for a Rule 12(b)(6) motion to dismiss.'" *Id.*; *see,*

4

*e.g., Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-68 (1977) (determining whether discriminatory intent was a motivating factor requires an analysis of direct and circumstantial evidence, which may include historical background of decision, sequence of events leading up to event, procedural norms and any departures therefrom, and disproportionate impacts on the protected class, among others).

In fact, Mr. Dingle's burden at this stage is considered a "low hurdle" to clear. *See Qureshi v. Alabama Coll. of Osteopathic Med., Inc.*, 2021 WL 2364210, at *3 (denying motion to dismiss Title VI claim). The Amended Complaint, as set forth below, more than satisfies the low hurdle necessary to withstand the Motion.

B.  **The Amended Complaint sufficiently alleges Comparators.**

USF primarily argues that Mr. Dingle has failed to plead a claim for violation of Title VI because the comparator alleged in the Amended Complaint is not "similarly situated in all <u>relevant</u> respects." [Doc. 18, pg. 9 (emphasis supplied) (citing *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1229 (11th Cir. 2019))].[1]

USF's reliance on *Lewis*, which was decided at the summary judgment stage, is misplaced. In *Lewis*, the Eleventh Circuit held that a "meaningful comparator analysis must be conducted at the *prima facie* stage of the *McDonnell Douglas*'s burden shifting framework…" *Id.* at 1218. Meaning, that "[a] plaintiff is not required to plead a prima

---

[1] *Lewis* holds that a comparator must be similarly situated in all "material" – not relevant – respects. *Id.* at 1218. Given *Lewis* was decided at the summary judgment stage, the court's use of the term "material" is consistent with the requirements of Rule 56, Federal Rules of Civil Procedure.

facie case of discrimination in order to survive dismissal." *McCone v. Pitney Bowes, Inc.*, 582 F. App'x 798, 801 n.4 (11th Cir. 2014); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (holding that the prima facie standard in employment discrimination cases "is an evidentiary standard, not a pleading requirement"). At the stage in the proceeding, all that is required is that the claim must still be "facially plausible," that is, it must "allow the court to draw the reasonable inference that [the defendant] [i]s liable for ... [the] discrimination [charged]." *Id.* at 801. The well-pleaded allegations of the Amended Complaint allow the Court to draw the reasonable inference that USF is liable for the alleged discrimination.

Notwithstanding USF's misplaced reliance on *Lewis*, the comparator alleged in the Amended Complaint is similarly situated in all material respects. The Amended Complaint alleges that "a white male student, accused of the same violations as Plaintiff, based on more egregious facts received a deferred suspension and no expulsion. In contrast, Plaintiff, an African-American student athlete, was permanently expelled and arrested for the same alleged conduct." [Doc. 15, ¶ 32]. Paragraph 31 of the Amended Complaint further alleges that:

> On November 30, 2017, eight days before Mr. Dingle's formal hearing, a USF student filed a lawsuit in this court against USF alleging that USF failed to adequately punish a sexual assault perpetrator and attempted to silence those speaking out against the inadequate punishment. *See Garrett v. University Board of Trustees*, Case No. 8:17-CV-2874-T-33AAS, Dkt. 1. The Complaint alleged, among other things, that:
>
> i. A white male USF student raped her at his apartment on the evening of November 12, 2016 and then did not allow her to leave until the following morning.

    ii.    On December 6, 2016, USF Title IX officials acknowledged Ms. Garrett's complaint and issued a "Title IX initial contact letter." And, on December 9, 2016, USF Title IX officials assigned Investigator Joanna Ellwood to investigate the case.

    iii.    Ms. Ellwood concluded that there was "sufficient evidence to substantiate" that the accused violated the USF Student Code of Conduct, Sections 4.14 (b) and 4.14(c),[2] by having "non-consensual intercourse and non-consensual sexual contact" against Ms. Garrett.

    iv.    On March 9, 2017, over three months after the complaint was filed, USF Title IX officials issued a "no contact" letter to the accused. The same day, the USF Office of Student Rights and Responsibilities issued a written notice that recommend certain sanctions in the event the accused accepted responsibility.

    v.    The accused accepted the recommended sanctions and waived his right to a formal hearing. As such, the accused received the following sanctions for violating Sections 4.14 (b) and 4.14(c) of USF's Student Code of Conduct:

- Deferred suspension through May 4, 2018, which meant he would not actually miss any classes;

- That he would have to attend two meetings with the Interim Director of the Office of Student Rights and Responsibilities, Maria Cutsinger; and

- That he would refrain from contacting Ms. Garrett.

Despite these allegations, USF argues that Mr. Dingle and the alleged comparator are "not similarly situated [] in any respect." [Doc. 18, pg.10 (emphasis supplied)]. At the same time, USF admits that similar allegations suggest that two individuals are similarly situated: "[a] similarly situated comparator will have engaged in the same basic conduct; have been subject to the same policy, guideline, or rule; and

---

[2] Mr. Dingle was charged with violation of the same sections of the USF Student Code of Conduct. [Doc. 15, FN3]

7

share the plaintiff's disciplinary history [*see* Doc. 18, pg. 19 (citing *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1229 (11th Cir. 2019))].

Here, the alleged comparator, a white male student at USF, was subject to the same code of conduct as Mr. Dingle, accused of the same violation as Mr. Dingle, and given the option to accept a deferred suspension which meant he was never actually absent from the University. [Doc. 15, ¶ 31(v)]. In contrast, Mr. Dingle was not provided with any "options;" instead, USF conducted a sham and hurried investigation with a predetermined outcome motivated by Mr. Dingle's race and gender. Also, it is not mere coincidence that USF's decision to expel Mr. Dingle, as opposed to a deferred suspension (as offered in *Garrett*), came just weeks after numerous media outlets highlighted USF's mishandling of sexual assault cases and a lawsuit was filed involving the alleged comparator from *Garrett*. *Id.* at ¶¶ 29-34.

USF also erroneously argues that "[c]ourts frequently dismiss discrimination claims for failing to allege sufficient factual support regarding a comparator" [Doc. 18, pg. 9 (emphasis added)], but only cites to three cases; all of which are easily distinguishable and have no precedential or even persuasive value as it relates to the allegations of the Amended Complaint.

- *Arafat v. Sch. Bd. of Broward Cty.*, 549 App'x 872 (11th Cir. 2013): The Eleventh Circuit affirmed dismissal of Title VII claim alleged in Second Amended Complaint by *pro se* plaintiff because the plaintiff only generically referenced younger males and did not identify any specific comparators. In contrast, the allegations of the Amended Complaint are specific and detailed.

- *Mallory v. Gartner, Inc.*, No. 2:21-CV-462-SPC-MRM, 2021 WL 3857652 (M.D. Fla. Aug. 30, 2021): The court, while recognizing

8

> that a plaintiff need not establish a prima facie case to withstand a motion to dismiss and that a substantive assessment of comparators is left for later stages of a case, dismissed Title VII claim because the only allegation to support comparators read: "Defendant subjected Plaintiff to a more rigorous training program than her other non-Hispanic co-workers and refused to transfer to a more suitable territory." The plaintiff did not allege how she and the proffered comparators were similarly situated.

- *Gilliam v. U.S. Dep't of Veterans Affairs*, No. 2:16-cv-255-FtM-29UAM, 2019 WL 1383156 (M.D. Fla. Mar. 27, 2019): Court dismissed Title VII claim alleged in Third Amended Complaint by *pro se* plaintiff because the claim was facially implausible based on the fact that plaintiff conceded that the alleged comparator was not similarly situated because she worked in a different department within the Veteran Affairs.

In sum, USF does not cite to one case dismissing a Title VI claim with allegations remotely like those alleged in the Amended Complaint. In contrast, courts analyzing less specific allegations than those alleged in the Amended Complaint, have found the allegations sufficient to withstand a motion to dismiss. *See*, *e.g.*, *Methelus v. Sch. Bd. of Collier Cnty., Fla.*, 243 F. Supp. 3d 1266, 1278 (M.D. Fla. 2017); *Thomas v. Salem State Univ.*, No. CIV.A. 11-10748-DJC, 2013 WL 3404331, at *6 (D. Mass. July 2, 2013).

At a minimum, the Amended Complaint sufficiently puts USF on notice of Mr. Dingle's claims and sufficiently alleges the facts necessary to withstand the Motion. If the Court were to accept USF's argument at this stage of the proceeding, virtually no plaintiff would be able to allege a Title VI claim against USF given the cloak of secrecy USF operates under during its self-administered disciplinary

proceedings and the roadblocks it imposes on anyone attempting to obtain information regarding the proceedings.[3] Accordingly, the Court should deny the Motion.

### C. Mr. Dingle's ability to appeal the unwarranted and unsupported sanction is not a basis to dismiss his Title VI claim.

USF argues that Mr. Dingle had the opportunity to appeal the University's determination and, because USF rejected his appeal as untimely, Mr. Dingle cannot now bring claims for violation of Title VI and Title IX. [Doc. 18, pg. 16]. The case law relied upon by USF for its argument simply does not stand for the asserted proposition. In fact, to the contrary, the court in *Garrett* stated that there are no requirements to exhaust administrative remedies. *Garrett*, 448 F.Supp.3d at 1303. USF's argument is misplaced, illogical, and not a basis to dismiss the Amended Complaint.

### D. Discriminatory intent is a fact-based inquiry unsuitable at the motion to dismiss stage.

Finally, USF argues that Mr. Dingle has not pleaded any facts to show bias because of race. [Doc. 18, pgs. 16-17]. USF also argues that Kristin Steffen - not Laura Keroack - was the decision-maker in Mr. Dingle's case. Neither is a basis to dismiss the Amended Complaint. On November 18, 2017, USF identified Keroack as the

---

[3] In that regard, USF fails to recognize the relevance of the July 2020 Tampa Bay Times article identifying that over 200 alleged victims of sexual assault came forward with allegations dating back to 2016 – which predates the allegations against Mr. Dingle. Mr. Dingle has alleged that some of the victims recounted that USF failed to act when made aware of the sexual assault allegations. [Doc. 15, ¶ 42]. Mr. Dingle anticipates that additional comparators will be identified given that USF failed to take action when made aware of the allegations.

hearing officer for the December 8, 2017 hearing. [Doc. 15, ¶ 80]. Mr. Dingle received no other information regarding the hearing officer.

Regardless, as set forth above, "'issues involving state of mind,' such as discriminatory intent, involve fact-focused questions that 'are often unsuitable for a Rule 12(b)(6) motion to dismiss.'" *Jumbo v. Alabama State Univ.*, 229 F.Supp.3d 1266, 1272 (M.D. Ala. 2017) (citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 565 (3d Cir. 2002); *see, e.g., Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266-68 (1977) (determining whether discriminatory intent was a motivating factor requires an analysis of direct and circumstantial evidence, which may include historical background of decision, sequence of events leading up to event, procedural norms and any departures therefrom, and disproportionate impacts on the protected class, among others).

The Amended Complaint alleges that USF intentionally discriminated against Mr. Dingle. [*See* Doc. 15, ¶¶ 5, 125, and 150]. Similarly, the identify of the hearing officer is not a basis to dismiss the Amended Complaint. Mr. Dingle has alleged that Lauren Keroack was the hearing officer. Whether Keroack or Steffen presided as the hearing officer can be established through discovery.[4] Regardless, there is no basis to assume that Steffen possessed any more or less discriminatory intent than Keroack nor would that be proper to assess at this stage.

---

[4] The documents attached to the Motion in support of USF's argument that Steffen was the hearing officer are incomplete. Most notably, USF only attached the cover sheet to the hearing transcript instead of attaching the entire hearing transcript, which Mr. Dingle has never received or been given an opportunity to review.

11

## II. The Amended Complaint sufficiently alleges a claim under Title IX of the Education Amendments of 1972.

To make an adequate erroneous outcome claim, Plaintiff only need allege (1) facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and (2) a particularized causal connection between the flawed outcome and gender bias. *Norris v. Univ. of Colorado, Boulder*, 362 F.Supp.3d 1001, 1011 (D. Colo. 2019).

### A. The Amended Complaint sufficiently alleges articulable doubt.

As to the first element, articulable doubt, the court in *Norris* recognized that "[t]his is not an especially high bar, as this prong had been met often in recent cases where courts analyzed motions to dismiss." *Id*. (emphasis supplied) (citing *Doe v. Baum*, 903 F.3d at 585-86 (articulable doubt cast by allegation that the university did not provide an opportunity for cross-examination); *Doe v. Miami Univ.*, 882 F.3d at 592 (articulable doubt cast by arguing that administrative hearing panel did not sufficiently analyze evidentiary inconsistencies); *Doe v. Marymount Univ.*, 297 F.Supp.3d at 585-86 (articulable doubt cast by noting a combination of: (1) procedural deficiencies; (2) an adjudicator's decision lacking compelling evidence; and (3) inconsistency in accuser's statements); *Ruff v. Bd. of Regents of Univ. of New Mexico*, 272 F.Supp.3d 1289, 1299 (D.N.M. 2017) (articulable doubt cast by arguing that university policy filed criminal complaints absent probable cause, arrested the plaintiffs, and submitted a flawed report to the district attorney)).

Plaintiff may demonstrate articulable doubt, by: (1) alleging particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant or witnesses; (2) particularized strengths of the defense; or (3) alleging particular procedural flaws affecting the proof. *Norris*, 362 F.Supp.3d at 1011 (citing *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994)).

USF argues that Mr. Dingle "pleads no facts sufficient to cast some articulable doubt on the outcome of the disciplinary proceeding…" [Doc. 18, pg. 18]. In support, USF cherry-picks allegations from the Amended Complaint, paraphrases some of the allegations to fit its argument, and omits other relevant allegations. The Amended Complaint, however, devotes three separate sections to alleging articulable doubt on the outcome of the proceedings [Doc. 15, ¶¶ 65-100, 115-118].

As set forth in the allegations referenced above, Mr. Dingle does not simply disagree with the University's decision, but instead sets forth a litany of conduct which he alleges denied him a fair and impartial process. In part, Mr. Dingle disputes the University's actions of: (1) misapplying the definition of consent; (2) denying Plaintiff the right to ask questions of Jane Roe or the witnesses in the case, to test credibility or for purposes of cross-examination; (3) designating investigator Cutsinger and hearing officer Keroack with the duty of investigating the allegation and issuing the finding despite their clear and obvious bias against male students accused of sexual misconduct; (4) failing to give Plaintiff adequate time to review the investigative file and otherwise placing unreasonable restrictions on Plaintiff's review of the file; and (5) denying Plaintiff the right to an appeal. *Id.* at ¶ 147.

13

In line with other cases, Mr. Dingle alleges sufficient facts regarding particular procedural flaws to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding.

### B. The Amended Complaint alleges a causal connection between the flawed outcome and gender bias sufficient to render the claim facially plausible.

Allegations that may sufficiently provide for the causal connection include, among other things, "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender." *Doe v. Miami Univ.*, 882 F.3d at 593 (quoting *Yusuf*, 35 F.3d at 715).

Here, Mr. Dingle has alleged the following with respect to circumstances suggesting that gender bias was a motiving factor:

- Beginning in 2011 and through the time when Jane Roe's complaint was investigated, USF was subject to immense federal, local and campus pressure to take measures to protect female victims of sexual assault, adopt a trauma-informed approach to investigating sexual misconduct complaints; and issue more severe sanctions to those found responsible for sexual misconduct. Such pressure included the ongoing OCR investigation, student outcry regarding USF's lack of a zero-tolerance policy involving sexual assault, and the public announcement that OCR was investigating USF;

- Upon information and belief, investigator Cutsinger and hearing officer Keroack received "trauma-informed investigation" training which Keroack perpetuated the idea that female victims of sexual assault should never be questioned, that trauma excuses all memory lapses and credibility issues and that complainants always tell the truth. This approach caused Cutsinger and Keroack to overlook profound inconsistencies in Jane Roe's account of the incident;

14

- The evidence collected during the investigation did not support Jane Roe's account of non-consensual sexual contact. Rather, the evidence supported Plaintiff's account;

- Investigator Cutsinger had a conflict of interest in her role because she was a former Campus Police officer and because part of her responsibilities included ensuring USF's compliance with Title IX;

- Investigator Cutsinger had a lengthy career as a women's advocate, working with victims of domestic violence and sexual assault;

- Hearing Officer Keroack, who was tasked with issuing the sanction, had a conflict of interest because of her background in social work dealing with domestic violence victims and participation in the paper titled "Precarious Manhood and Displays of Physical Aggression."

[Doc. 15, ¶ 149].

The Amended Complaint further alleges various forms of public pressure faced by USF regarding its failure to comply with Title IX. *Id.* at ¶¶ 19-36. The court in *Norris* analyzed similar allegations in denying a motion to dismiss: "the numerous allegations, taken in concert with the allegations of gender bias concerning the process of the investigation [], provide some relevant evidence sufficient to find a causal connection and, in turn, render the claims plausible on their face." *Norris*, 362 F.Supp.3d at 1016; *see also Doe v. George Washington Univ.*, 366 F. Supp. 3d 1, 13 (D.D.C. 2018) ("[T]he combination of OCR investigations, publicized demonstrations, and the [university] statement are sufficient to avoid dismissal."); *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016) (Title IX claim plausible where the University was facing "substantial criticism ... both in the student body and in the

public media, accusing the University of not taking seriously complaints of female students alleging sexual assault by male students.").

Accordingly, the Court should deny the Motion.

### III. Mr. Dingle timely filed his lawsuit.

Mr. Dingle filed suit within the four-year statute of limitations applicable to his claims. As acknowledged in the Motion, the Supreme Court has held that the statute of limitations for Title VI and Title IX actions should be borrowed from "the most closely analogous statute of limitations under state law." *DelCostello v. Int'l Broth. of Teamsters*, 462 U.S. 151, 159 (1983). Here, the most analogous statute of limitations under Florida law is the four-year statute of limitation that serves as a catchall for injury actions. § 95.11(3)(p), Fla. Stat. ("Any action not specifically provided for in these statutes."). Indeed, other federal courts in Florida have acknowledged that a four-year statute of limitations applies to Title IX claims. *See, e.g. Doe No. 6 v. Sch. Bd. of Highlands Cnty. Florida*, 2:19-CV-14487, 2021 WL 271461, at *1 (S.D. Fla. Jan. 26, 2021) (recognizing that Florida's four-year statute of limitations applied to Title IX case); *Palmer ex rel. Palmer v. Santa Rosa Cnty., Fla., Sch. Bd.*, 2005 WL 3338724 (N.D. Fla. Dec. 8, 2005) (same). The same analysis applied to Title IX claims should apply to Title VI claims.[5]

---

[5] "Title IX was patterned after Title VI.... Except for the substitution of the word 'sex' in Title IX to replace the words 'race, color or national origin' in Title VI, the two statutes use identical language to describe the benefited class." *Cannon v. University of Chicago,* 441 U.S. 677, 694–95, 99 S.Ct. 1946, 1956–57, 60 L.Ed.2d 560 (1979).

16

The court in *Palmer ex rel. Palmer v. Santa Rosa Cnty., Fla., Sch. Bd.,* addressed the same argument made by USF—that this Court should apply the statute of limitations embodied withing the Florida Civil Rights Act. There, the court rejected same argument made by USF. *Id.* at *3 The court quoted *M.H.D. v. Westminster Sch.*, 172 F.3d 797, 803 (11th Cir. 1999), noting that "[c]ourts generally agree that a Title IX claim for damages is most closely analogous to a common law action for personal injury; therefore, the statute of limitations for personal injury actions controls." *Id.* It therefore held that "Florida's statute of limitations for personal injury actions, which is four years, applies to plaintiff's Title IX claim." *Id.*

The decision in *Palmer* is not an outlier. Other courts have similarly rejected arguments advanced by defendants asking courts to apply a state civil rights act's statute of limitations, rather than the state personal injury statute of limitations, to Title IX claims. *See, e.g. Egerdahl v. Hibbing Community College*, 72 F.3d 615, 618 (8th Cir.1995) (finding that Title IX claims were governed by Minnesota's six-year personal injury statute of limitations rather than by the one-year statute of limitations pertinent to the state civil rights actions under the Minnesota Human Rights Act); *Doe v. Bd. of Educ. of Prince George's Cnty.*, 888 F. Supp. 2d 659, 665 (D. Md. 2012) (declining to apply the statute of limitations in the Maryland Human Relations Act in favor of the Maryland personal injury statute of limitations).

While USF cites a recent decision in *Stafford v. George Washington Univ.*, 18-CV-2789 (CRC), 2022 WL 35627, (D.D.C. Jan. 4, 2022), the court there noted that "its statute of limitations holding is a novel one; courts in this district have up to now

17

applied the three-year limitations period from D.C.'s general personal injury law to Title VI claims." *Id*. at *1. The *Stafford* case is currently on appeal. *Doe v. Howard Univ.*, 1:20-CV-01769 (CJN), 2022 WL 898862 (D.D.C. Mar. 28, 2022) similarly follows *Stafford's* lead in rejecting previous decisions applying the three-year personal injury statute of limitations. It is also on appeal. Neither of those cases are binding on this Court, and are in conflict with Eleventh Circuit precedent and district court decisions.

## CONCLUSION

For the foregoing reasons, the Court should deny USF's Motion to Dismiss the Amended Complaint in its entirety. To the extent the Court finds any pleading deficiencies, the Court should permit Mr. Dingle to cure them.

*/s/ Kenneth G. Turkel*
Kenneth G. Turkel - FBN 867233
E-mail: kturkel@tcb-law.com
Anthony J. Severino – FBN 093452
E-mail: aseverino@tcb-law.com
TURKEL CUVA BARRIOS, P.A.
100 N. Tampa Street, Suite 1900
Tampa, FL 33602
Tel: (813) 834-9191
Fax: (813) 443-2193
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of May, 2022, the foregoing document was filed with the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Kenneth G. Turkel*
Attorney
