UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEVAUGHN DINGLE,

Case No.: 8:21-CV-02861-MSS-MRM

Plaintiff,

v.

UNIVERSITY OF SOUTH FLORIDA
BOARD OF TRUSTEES,

Defendant.
_____________________________/

VIDEO RECORDED DEPOSITION OF DANIELLE McDONALD AS THE CORPORATE REPRESENTATIVE OF UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES
(Pages 1 through 178)

Tuesday, July 18, 2023
9:38 a.m. - 3:35 p.m.

University of South Florida
Office of the General Counsel
4202 East Fowler Avenue
CGS 301
Tampa, Florida 33620

Stenographically Reported By:
Lori K. Ash, RPR, FPR
Notary Public, State of Florida
U.S. Legal Support, Inc.
(813) 876-4722

APPEARANCES:
ANTHONY J. SEVERINO, ESQUIRE
Turkel Cuva Barrios, P.A.
100 North Tampa Street
Suite 1900
Tampa, Florida 33602
(813) 834-9191
aseverino@tcb-law.com
Attorney for Plaintiff

SACHA DYSON, ESQUIRE
GrayRobinson, P.A.
401 East Jackson Street
Suite 2700
Tampa, Florida 33602
(813) 273-5000
sacha.dyson@gray-robinson.com

Attorney for Defendant

ALSO PRESENT:

Joanne Adamchak, Esquire
Deputy General Counsel
University of South Florida

Kyle Hankins, Videographer
U.S. Legal Support, Inc.



INDEX


| | PAGE |
|---|---|
| Examination by Mr. Severino | 6 |
| Certificate of Reporter | 177 |
| Certificate of Oath | 178 |


EXHIBITS


| NO. | DESCRIPTION | PAGE |
|---|---|---|
| 1 | Amended Notice of Taking Videotaped Deposition of Corporate Representative of University of South Florida Board of Trustees | 8 |
| 2 | Chart (000450 to 000543) | 25 |
| 3 | Letter dated 11/28/17 from Maria Z. Cutsinger to Kevaughn Dingle (000071 to 000074) | 34 |
| 4 | One-page document with heading "Administrative Officer Hearing Friday , December 8, 2017 1:00 p.m." (000014) | 37 |
| 5 | Transcript of administrative hearing dated 12/8/17 (000077 to 000150) | 38 |
| 6 | Composite of documents with first page titled "Student # 2" (000707 to 000713) | 54 |
| 7 | Composite of documents with first page titled "Student # 3" (000714 to 000720) | 54 |
| 8 | Composite of documents with first page titled "Student # 4" (000721 to 000738) | 60 |
| 9 | USF Regulation Number: USF6.0021, Title: Student Code of Conduct (000201 to 000241) | 64 |
| 10 | Composite of documents with first page titled "Student # 9" (000759 to 000765) | 77 |





| NO. | DESCRIPTION | PAGE |
|---|---|---|
| 11 | Document from Page Vault, Document title: New federal investigation targets USF handling of sexual violence case (DINGLE 211 to 217) | 87 |
| 12 | Document from Page Vault, Document title: Safe HOME at University of South Florida hosts first annual Slut Walk - The Catalyst (DINGLE 218 to 225) | 90 |
| 13 | Document from Page Vault, Document title: Lawsuit: USF ignored student's fears after she alleged sexual assault (DINGLE 267 to 275) | 95 |
| 14 | Document from Page Vault, Document title: Editorial: USF should revisit approach to Title IX protections (DINGLE 276 to 281) | 99 |
| 15 | USF Policy Number 0-004, Title: Sexual Misconduct/Sexual Harassment (including Sexual Violence) (000498 to 000521) | 111 |
| 16 | Letter dated 1/19/18 from Danielle McDonald to Kevaughn Dingle (000163 to 000164) | 139 |
| 17 | Document titled "01581-001-2017: Dean of Students Appeal after Hearing (Tampa)) Appeal, January 3, 2018, 2:48 p.m." | 142 |
| 18 | Letter dated 12/13/17 from Jonathan Monti to Kevaughn Dingle (000153 to 000155) | 157 |
| 19 | Amended Complaint and Jury Demand | 157 |
| 20 | Defendant's Answer and Defenses to Plaintiff's Amended Complaint and Jury Demand | 157 |
| 21 | Three-ring binder titled "Corporate Rep Deposition" | 175 |




The video recorded deposition of DANIELLE McDONALD AS THE CORPORATE REPRESENTATIVE OF UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES was taken pursuant to notice by counsel for the Plaintiff on Tuesday, July 18, 2023, commencing at 9:38 a.m. at University of South Florida Office of the General Counsel, 4202 East Fowler Avenue, CGS 301, Tampa, Florida 33620. Said deposition was reported by Lori K. Ash, RPR, FPR, Notary Public, State of Florida at Large.

- - - - - - - - -

THE VIDEOGRAPHER: Good morning. We are now on the video record. Today is Tuesday, the 18th of July, 2023. The time now is 9:38 a.m. Eastern Standard Time. We're here for the video recorded deposition of the corporate representative of the University of South Florida Board of Trustees. Her name is Danielle McDonald. We're here in the matter of Kevaughn Dingle versus the University of South Florida Board of Trustees. We are currently being held at University of South Florida. The address is 4202 East Fowler Avenue, the CGS building, 301, Tampa, Florida 33620.

My name is Kyle Hankins, the videographer.

Page 6

The Court Reporter is Lori Ash.
At this time, would all counsel state their appearances for the record, beginning with Plaintiff's counsel first, please.
MR. SEVERINO: Anthony Severino on behalf of Plaintiff, Kevaughn Dingle.
MS. DYSON: Good morning. My name is Sacha Dyson. I'm here on behalf of University of South Florida Board of Trustees, along with Joanne Adamchak.
THE VIDEOGRAPHER: Madam Court Reporter, would you please swear in the witness.
THE COURT REPORTER: Would you raise your right hand, please. Do you swear or affirm that the testimony you are about to give will be the truth, the whole truth, and nothing but the truth?
THE WITNESS: I do.
THEREUPON,
DANIELLE McDONALD,
having first been duly sworn or affirmed, was examined and testified as follows:
EXAMINATION
BY MR. SEVERINO:
Q Good morning, Ms. McDonald. As I just

Page 7

stated, my name is Anthony Severino, and I represent the Plaintiff in the case we're here today about, Kevaughn Dingle.
Could you please state your full name for the record.
A Danielle Busson McDonald.
Q And have you ever been deposed before?
A Yes.
Q And approximately how many times?
A Once.
Q Okay. Was that on behalf of USF or a personal matter?
A Not on behalf of USF.
Q Okay. All right. So you've been deposed once, you kind of know how this goes, but --
A It's a little different than this.
Q Okay. So question and answers today. That's pretty much what we're here to do. If you need a break at any time, just let me know --
A Okay.
Q -- and we can stop and take a break for whatever reason. Make sure you answer verbally, even though we have the video, so Ms. Ash can take down your testimony.
A Right.

Page 8

Q Is there anything that will prevent you from giving me my full attention today [sic]?
A No.
Q All right. And the other thing too is if you don't understand a question, feel free to let me know, and I'll try and rephrase it to make sure we're on the same page --
A Okay.
Q -- as we go forward.
(Exhibit Number 1 was marked for identification.)
BY MR. SEVERINO:
Q I'm going to show you what we'll mark as Exhibit 1 to today's deposition, which is the amended notice of taking videotaped deposition of corporate representative. Take a look at that for me.
THE WITNESS: Is this the same as --
MS. DYSON: Mmm-hmm.
BY MR. SEVERINO:
Q Have you seen Exhibit 1 before?
A Exhibit A?
Q Exhibit 1.
A Oh.
Q That whole --

Page 9

A Yes.
Q -- notice is marked as Exhibit A. There's an Exhibit A -- sorry. Marked as Exhibit 1. There's an Exhibit A to that exhibit.
A Gotcha. I have seen Exhibit A.
Q Exhibit 1.
MS. DYSON: What are you referring to?
MR. SEVERINO: Exhibit 1 is the amended notice, the whole thing.
MS. DYSON: Oh, oh, oh. Okay. I think it's confusing.
MR. SEVERINO: Yeah, I know, because there's an Exhibit A to the notice.
BY MR. SEVERINO:
Q So Exhibit 1 is the entire stapled document.
A The entire thing?
Q Yes. And have you seen that before today?
A I don't think I've -- don't know if I've seen these front two pages.
Q Okay. But you've seen Exhibit A?
A Yes.
Q Okay. All right. And you're here today as the corporate representative of USF. Correct?
A Yes.

Page 10

Q Okay. And what is your role with USF?
A I'm the associate vice president for community development and student engagement and the dean of students in the division of student success.
Q And how long have you -- well, there's two roles. Right? Assistant VP and then dean of students. Is that correct?
A They are together, but yes.
Q They are together?
A Mmm-hmm.
Q Okay. So how long have you been in that role?
A I've been in that role for five -- five years -- five or six years.
Q So around 2018 you started in that role?
A Maybe not. COVID years -- I've lost years. I did an interim twice --
Q Okay.
A -- which is part of the challenge in that.
Q That's fine. And before that, were you with USF as well?
A Yes.
Q What was your role there?
A I started here as an associate dean of students. I was an interim dean of students twice,

Page 11

and then I became the assistant to vice president and dean of students, and then I became the associate vice president and dean of students in 2020.
Q So in your current role, what exactly do you do for the University?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I oversee 12 departments that focus on supporting students and the community and the out-of-class experience. Do you want to know what each of those departments are?
BY MR. SEVERINO:
Q No. That's okay.
A And I also serve on emergency response for the University and for students -- individual student crisis.
Q Do you have any personal knowledge of the facts of this case?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I am aware of the case. Yes.
BY MR. SEVERINO:
Q Were you aware of the case at the time of the disciplinary proceeding for the Plaintiff?

Page 12

MS. DYSON: Objection. Outside the scope. And objection to form.
THE WITNESS: Yes, I'm aware that there was a case involving the Plaintiff.
BY MR. SEVERINO:
Q In any of your roles at USF, did you deal with USF Student Code of Conduct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes.
BY MR. SEVERINO:
Q Okay. What about USF's Title IX procedures?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Can you ask the question again.
BY MR. SEVERINO:
Q Yeah. Did you have any experience with USF Title IX procedures in any of your roles at USF?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes.
BY MR. SEVERINO:
Q Were you ever involved in the hearing process under the Student Code of Conduct in any of your roles at USF?
MS. DYSON: Objection. Outside the scope.

Page 13

THE WITNESS: I'm involved in the appellate process.
BY MR. SEVERINO:
Q Okay. What about the underlying process before the appellate process, were you ever involved in that?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Only if there was an interim suspension.
BY MR. SEVERINO:
Q Interim -- is that the same thing as provisional?
A Yes.
Q Okay. And what was your role with the interim/provisional suspension?
MS. DYSON: Objection. Outside the scope. Objection to the form.
THE WITNESS: I may be involved with the threat assessment to determine the provisional suspension. I may have received the initial suspension. I may have received the initial report from the police officers to -- or housing or any other form to then forward to the student conduct officer to make the decision and if there's an appeal.
BY MR. SEVERINO:

Page 14

Q Were you involved in any of that with respect to the Plaintiff, Mr. Dingle?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I don't remember. I'd have to go back to look at the case.
BY MR. SEVERINO:
Q Okay. Did you speak to anyone in preparation for your deposition today?
A Yes.
Q Okay. Who did you speak with?
A I spoke with Sacha.
Q Okay. Aside from Ms. Dyson, did you speak with anyone else to prepare for your deposition today?
A And Jodi Adamchak.
Q Besides Ms. Adamchak and Ms. Dyson, did you speak with anyone else?
A No.
Q Okay. Did you review any documents in preparation for your deposition today?
A Just what Sacha gave me -- gave me.
Q Okay. So let's do it this way: So on Exhibit 1, which you have in front of you, if you'd turn -- it should be the third page, which is Exhibit A.

Page 15

A Mmm-hmm.
Q Do you see that? So those are the 30(b)(6), we call them, topics for your deposition today.
A Mmm-hmm.
Q And so I'm going to go through each one and ask you if you reviewed any documents to prepare to testify about the topics.
A Okay.
Q All right. So with respect to topic 1, did you review any documents in preparation for your deposition today?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I reviewed what was given to me in the notebook.
BY MR. SEVERINO:
Q Okay. Why don't you tell me what's in that notebook then.
A Topic area 1 has what the facts were supporting the refuting denial of paragraph 26, 27, 35, and 71. And then it has the facts that support the denial for the different topics and paragraphs.
Q Okay. All right. Same thing, we'll -- I'm going to go through these. So we can go through that notebook.

Page 16

A Okay.
Q So number 2, topic number 2, what documents have you reviewed?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: The facts for the second defense, the facts for the third defense, and facts for the fifth defense.
BY MR. SEVERINO:
Q Okay. And are those -- do you know is that something your counsel prepared?
A Yes.
Q So let's go to number 3.
A The facts for --
MS. DYSON: Objection. Outside the scope.
BY MR. SEVERINO:
Q Number -- topic number 3 on Exhibit A, what documents did you review in preparation for your deposition today?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: The response to topic area 3.
BY MR. SEVERINO:
Q Does that binder have tabs 1 through 18?
A Mmm-hmm. (Nods head.)
Q Okay. So number 4, topic area number 4,

Page 17

what documents?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Response to topic area 4.
BY MR. SEVERINO:
Q Okay. And, again, that's just a Word document that was provided to you by counsel?
A Yes.
Q All right. Same for Number 5?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: The facts associated with University response to topic 5.
BY MR. SEVERINO:
Q Again, it's a Word document provided to you by counsel?
A Yes.
Q All right. Number 6, same question.
A Number 6, the topic area 6, response a, b, c, d, e, f, and g.
Q And, again, those are documents provided to you by your counsel?
A Yes.
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Sorry.
MS. DYSON: That's okay.
BY MR. SEVERINO:

Page 18

Q I forgot to mention that she will object at times to my question for whatever reasons, but you can go ahead answer unless, you know, she instructs you otherwise. I'm sure she told you that earlier, but just to remind you.
Number 7, topic area number 7, what documents did you review in preparation for today?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: The University response to topic area 7.
BY MR. SEVERINO:
Q And that's what it's titled?
A "Topic Area 7 - Scholarship and Housing Contract."
Q Okay. Topic area Number 8?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: "Topic Area 8 - Financial Hold."
BY MR. SEVERINO:
Q Okay. All right. And, again, that's a Word document provided to you by your counsel?
A Yes.
MS. DYSON: Objection. Outside the scope.
BY MR. SEVERINO:
Q Topic area 9, same question.

Page 19

MS. DYSON: Objection. Outside the scope.
THE WITNESS: "Topic Area 9 - Title IX Investigation Policy."
BY MR. SEVERINO:
Q Do you have a copy of the actual policy there?
A No.
Q Okay. So, again, a Word document provided to you by counsel?
A Yes.
Q Topic area number 10, same question.
MS. DYSON: Objection. Outside the scope.
THE WITNESS: "Topic Area 10 - Title IX Incident Report Form."
BY MR. SEVERINO:
Q Do you have a copy of the actual form there?
A No.
Q Did you review a copy of the Title IX incident report form in preparation for today?
A No.
Q Go to topic area 11 for me. Same question.
MS. DYSON: Objection. Outside the scope.
THE WITNESS: "Topic Area 11 - Definition of Consent."
BY MR. SEVERINO:
Q Do you have a copy of USF's Title IX policy and procedures there?
A No.
Q Okay. And that is just a Word document with the definition of consent on it?
MS. DYSON: Objection to the form.
THE WITNESS: It's a Word document with -- responding that Title IX office does not have a definition of consent but that University policy 0-004 provides a definition of consent and has portions of the policy.
BY MR. SEVERINO:
Q All right. Topic area number 12, same question.
MS. DYSON: Objection. Outside the scope.
THE WITNESS: "Topic Area 12 - Student Code of Conduct."
BY MR. SEVERINO:
Q Do you have a copy of the policy that was in effect for the years 2016 through '18 in there?
A No, I do not.
Q Did you review a copy of that prior to today's deposition?

Page 20

Page 21

A No, I did not.
MS. DYSON: Objection. Outside the scope.
BY MR. SEVERINO:
Q Topic area 13, same question.
MS. DYSON: Objection. Outside the scope.
THE WITNESS: "Topic Area 13 - Sexual Misconduct Policy."
BY MR. SEVERINO:
Q And do you have a copy of the actual sexual misconduct policy with you today?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No, I do not.
BY MR. SEVERINO:
Q Did you review a copy of it prior to today's deposition?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No, I did not.
BY MR. SEVERINO:
Q Okay. Topic area number 14, same question.
MS. DYSON: Objection. Outside the scope.
THE WITNESS: "Topic Area 14 - Policy Regarding Extensions Requests."
BY MR. SEVERINO:
Q Do you have USF's actual policy regarding

Page 22

the extensions in there?
MS. DYSON: Objection. Outside the scope. Objection to the form.
THE WITNESS: USF does not have a policy.
BY MR. SEVERINO:
Q USF has no written policy anywhere about --
A Concerning whether to grant or deny a request for an extension to file an appeal following an administrative officer hearing.
Q There's no policy whatsoever at USF with respect to that?
MS. DYSON: Objection to the form.
THE WITNESS: Not to my knowledge.
BY MR. SEVERINO:
Q Same question for topic 15.
MS. DYSON: Objection. Outside the scope.
THE WITNESS: "Topic Area 15 - Communication With University Police." I'm sorry. "USF Police."
BY MR. SEVERINO:
Q Are there any actual communications between USF and the University police in there?
MS. DYSON: Objection to the form. Objection. Outside the scope.

Page 23

THE WITNESS: No.
BY MR. SEVERINO:
Q Again, that's just a Word document that was provided to you by counsel?
A Yes.
Q Okay. Three more. 16, same question.
MS. DYSON: Objection. Outside the scope.
THE WITNESS: "Topic Area 16 - Availability of Policies and Training."
BY MR. SEVERINO:
Q Do you have any actual training or policies in that notebook that was provided to you by counsel?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I don't understand. I need clarification on the question.
BY MR. SEVERINO:
Q Yeah. With respect to topic 16, again, is that just a Word document provided to you by counsel?
A Yes.
MS. DYSON: Objection. Outside the scope.
BY MR. SEVERINO:
Q Did you review in preparation for today's deposition any policies or procedures which were

Page 24

provided or made available to Kristin Steffen, Jonathan Monti, and Maria Zale Cutsinger?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No.
BY MR. SEVERINO:
Q Okay. 17, same question.
MS. DYSON: Objection. Outside the scope.
THE WITNESS: "Topic Area 17 - USF's Regulations.
"a. 'Me Too Movement' from 2016 through Plaintiff's expulsion from USF.
"b. Department of Education's September 22nd rescission of the 2011 Dear Colleague Letter.
"c. the Tampa Bay Times November 22nd, 2017 article..." response.
"d. the 'Slut Walk' protest (as described in Paragraph 30 of the Amended Complaint.
"e. the Tampa Bay Times November 30th, 2017 article...
"f. the Tampa Bay Times December 6, 2017 article..." response.
BY MR. SEVERINO:
Q In that binder, do you have copies of the actual articles that you just referenced?

Page 25

MS. DYSON: Objection. Outside the scope.
THE WITNESS: No, I do not.
BY MR. SEVERINO:
Q Did you review the articles and the documents that were referenced in 17b through f in preparation for your deposition today?
A No.
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No, I did not.
BY MR. SEVERINO:
Q And, lastly, topic 18, same question. What did you do to prepare for topic 18 today?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I have a document entitled "Topic Area 18 - Tampa Bay Times Article."
BY MR. SEVERINO:
Q Other than the binder that you have in front of you that we just went through, are there any other documents that you reviewed in preparation for your deposition today?
A No.
(Exhibit Number 2 was marked for identification.)
BY MR. SEVERINO:
Q I'm going to hand you what's been marked

Page 26

Exhibit 2. For the record, Exhibit 2 is Bates labeled 540 through 543.
I'm sorry. Have you seen that document before today?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I have seen the document. I have not reviewed it.
BY MR. SEVERINO:
Q Do you know who prepared this spreadsheet?
MS. DYSON: Are you directing this to a particular topic area?
MR. SEVERINO: I can. Topic 7. Topic 6. Sorry.
MS. DYSON: On which part of topic 6?
MR. SEVERINO: Topic 6 in general, how USF compiled the information contained in the chart. I'm asking --
MS. DYSON: So that would be 6a.
BY MR. SEVERINO:
Q Do you know who prepared this spreadsheet?
A I don't know the particular person who created the spreadsheet.
Q Do you know if more than one person participated in preparing this spreadsheet?
MS. DYSON: Objection. Outside the form

Page 27

[sic].
THE WITNESS: I do not know that.
BY MR. SEVERINO:
Q Did you participate at all in preparing this spreadsheet?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No, I did not.
BY MR. SEVERINO:
Q How did USF compile the information that is on this spreadsheet?
A USF compiled the information in the chart from its Simplicity system, which is the database that's used in the Office of Student Rights and Responsibilities, as well as another student information system that maintains self-identified demographic information on the students. Demographic information, such as race, gender, are not maintained in Simplicity. We reviewed the -- USF reviewed the categories of items set forth in the answer to Interrogatory Number 4 and queried its system to obtain the requested information.
Q Did you just read that from your notebook?
A I did.
Q In Simplicity, what documents did USF review to compile the information on this chart?

Page 28

MS. DYSON: Objection. Outside the scope. And objection to form.
BY MR. SEVERINO:
Q Let's back up. This chart has -- let's see -- one, two, three, four, five, six, seven, eight, nine, ten, 11, 12, 13, 14, 15, 16, 17, 18 -- 19 columns. Do you see that at the top?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes.
BY MR. SEVERINO:
Q Okay. And out of those 19 columns, can you identify which columns the information came from Simplicity?
MS. DYSON: Objection. Outside the scope. And objection to the form.
THE WITNESS: No. I'm not sure what all comes from Simplicity or from another database.
BY MR. SEVERINO:
Q What's the name of the other database?
MS. DYSON: Objection to the form. Objection. Outside the scope.
THE WITNESS: It's part of the student information system, Banner.
BY MR. SEVERINO:
Q Banner like B-a-n-n-e-r?

Page 29

A Mmm-hmm.
THE COURT REPORTER: I'm sorry. I didn't hear you.
THE WITNESS: I'm sorry. Yes.
BY MR. SEVERINO:
Q As you sit here today, is there anything in this chart that is inaccurate?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I don't think I can answer that. I don't have knowledge of this.
BY MR. SEVERINO:
Q So you didn't review any documents that were used to compile this chart in preparation for today?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No.
BY MR. SEVERINO:
Q And you didn't speak with the individual or individuals who prepared this spreadsheet in preparation for your deposition today?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No.
BY MR. SEVERINO:
Q I believe you stated earlier in your response that this was produced in response to

interrogatories. Is that correct?
MS. DYSON: Objection as to form. Objection. Outside the scope.
THE WITNESS: I don't understand the question.
BY MR. SEVERINO:
Q Yeah. I believe you testified earlier that this chart was produced in response to answers to interrogatories by USF. Do you remember that?
A Yes.
MS. DYSON: Objection to form. Objection. Outside the scope.
BY MR. SEVERINO:
Q And you agree that USF would not have produced this spreadsheet in response to verified answers to interrogatories if the spreadsheet was not true and accurate. Correct?
MS. DYSON: Objection. Outside the scope. Objection to the form.
THE WITNESS: I believe that USF would do its best effort to give accurate information.
BY MR. SEVERINO:
Q Does USF still maintain the records that were used to compile the information in this spreadsheet?



MS. DYSON: Objection. Outside the scope. Objection to form.
THE WITNESS: It would depend on the timeline of the complaint, the circumstances of the complaint, what -- I'd have to look at each case to determine whether we still had them or not.
BY MR. SEVERINO:
Q And you would do that by reviewing each case in Simplicity. Is that correct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes. If I can determine which case. This is -- has removed identifying information.
BY MR. SEVERINO:
Q Take a look at the spreadsheet. And the columns don't have numbers, but looks like the one, two, three, four, five -- the seventh from the end. So from right to left, the seventh is "Name of administrative officer or members of the UCB."
Do you see that?
MS. DYSON: Objection to the form. Objection. Outside the scope.
THE WITNESS: Yes.
BY MR. SEVERINO:



Q How does USF choose an administrative officer to preside in a specific case?
MS. DYSON: Are you referencing a particular topic area?
MR. SEVERINO: I'm asking questions. I mean, it's in the topics. If there's a specific question --
MS. DYSON: No. You need to identify the topic area that you're referencing.
MR. SEVERINO: I don't need to identify the topic area I'm referencing. We just went through all the topics. She has it in her --
MS. DYSON: Yes. So she can provide the University's testimony, please identify the topic area that you're referencing.
BY MR. SEVERINO:
Q Let's do this. Topic -- take a look at Exhibit 1, and you look at Exhibit A, which is the topic areas we went through, and look at 6d.
So how does the University determine which administrative hearing officer will preside in a specific case?
A The Office of Student Rights and Responsibilities director or the designee appoints the administrative hearing officer or members of the



UCB. As the regulations -- the regulation 6.0021, the charged student has two options for a formal hearing. They can choose a UCB or administrative hearing officer. If the student elects the administrative officer, he waives -- he or she waives the right to the UCB. If the student elects a UCB, then they waive the right to the hearing offering.
So the director selects the hearing officer from the individuals designated as administrative hearing officers, taking into account the availability of the personnel based on current assignments and respective schedules as well as considering any conflict of interest. The members of the UCB are determined from the pool of students, faculty, and staff who apply to be members.
Q Anything else?
A No.
Q And -- and you read that from the binder that was provided to you by counsel. Correct?
A Yes.
Q You mentioned that, I guess, the director or the designee, among other things, considers any potential conflict of interest. Correct?
A Yes.

Page 34

Q Okay. And how does the director and designee determine if there are any conflict of interest for an administrative hearing officer in a specific case?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: It could be any number of things, if they know that that administrative hearing officer may have been involved in other areas of the case or if they are the instructor to any people on the case, and then the students involved are able to acknowledge whether they believe there's a conflict of interest.
BY MR. SEVERINO:
Q How are they able to acknowledge that, the students involved?
A When the charged student receives their letter for the hearing, it states who would be the hearing officer or officers.
Q And at that point, a student has the opportunity to, I guess, question whether there's a conflict of interest of the hearing officer. Is that correct?
A Yes.
(Exhibit Number 3 was marked for

Page 35

identification.)
BY MR. SEVERINO:
Q This is marked as Exhibit 3. Take a look at that, and let me know if you've seen that before.
MS. DYSON: Objection to form. Objection. Outside the scope.
THE WITNESS: If I've seen this particular letter?
BY MR. SEVERINO:
Q Yes.
A Yes, I have.
Q When did you see it, if you recall?
MS. DYSON: Objection to the form. Objection. Outside the scope.
THE WITNESS: I get copies of the letters when the outcomes of the emergency provisional suspension hearing get related.
BY MR. SEVERINO:
Q So this is Exhibit 3 here, and this is dated November 28th, 2017, to Mr. Dingle. And it's documents Bates labeled 71 through 74. And if you could -- at the bottom of the first page, the last sentence, "The hearing officer will determine the relevance of questions submitted and may paraphrase the content." And then at the following -- at the

Page 36

end of that paragraph, it says, "The following person will serve as your Administrative Hearing officer." And who is that?
MS. DYSON: Objection. Outside the scope. Does this relate to a particular topic area?
MR. SEVERINO: Yes.
MS. DYSON: Which one?
MR. SEVERINO: 4.
THE WITNESS: Can you ask your question again.
BY MR. SEVERINO:
Q Yeah. Who is identified as the administrative hearing officer on Exhibit 3?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Lauren Keroack.
BY MR. SEVERINO:
Q And who is Lauren Keroack?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: A staff member at USF.
BY MR. SEVERINO:
Q Do you remember what her role or title was at the time of this letter on November 28th, 2017?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No, I do not.
BY MR. SEVERINO:

Page 37

Q And is this the type of letter that you're referring to where a student will have the opportunity to question the con -- whether there's any conflict of interest for the chosen administrative hearing officer?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I'm not sure if there's another letter that's also given to them that gives them that opportunity.
(Exhibit Number 4 was marked for identification.)
BY MR. SEVERINO:
Q Exhibit 4. Exhibit 4 is Bates labeled one-four, 14. Ms. McDonald, have you seen Exhibit 4 before today?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No.
BY MR. SEVERINO:
Q And you will see that this says "Charged Student: Kevaughn Dingle." "Charged Student's Advisor" is blank. And then it says "Hearing Officer: Kristin Steffen."
Do you see that?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes, I do.

BY MR. SEVERINO:
Q Do you know if this was ever provided to Mr. Dingle?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I do not know.
BY MR. SEVERINO:
Q And do you know who the hearing officer was at Mr. Dingle's formal hearing?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I would have to look at the transcript from the hearing.
(Exhibit Number 5 was marked for identification.)
BY MR. SEVERINO:
Q I'll give you Exhibit 5.
MR. SEVERINO: That's my only copy.
MS. DYSON: Okay.
MR. SEVERINO: Just going to ask about the hearing officer for now.
BY MR. SEVERINO:
Q And what -- what is Exhibit 5.
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Exhibit 5 is the administrative hearing, looks like a transcript.



BY MR. SEVERINO:
Q And who is identified as the hearing officer?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Kristin Steffen.
BY MR. SEVERINO:
Q So you'd agree that at Mr. Dingle's formal hearing Kristin Steffen was the administrative hearing officer?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes. According to the transcript.
BY MR. SEVERINO:
Q And so why was Ms. Keroack replaced as the administrative hearing officer with Ms. Steffen?
A The University doesn't know why. We think that this may have been a clerical error.
Q Describe what you mean by clerical error.
MS. DYSON: Object to the form. Outside the scope.
THE WITNESS: Could have been that the person writing the letter put the wrong name in or it was left over from a merge field. With it being six years ago, we're not really sure what happened.



BY MR. SEVERINO:
Q Did Ms. Keroack or Ms. Steffen have more experience with administrative hearings?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I don't have knowledge of that.
BY MR. SEVERINO:
Q Who would have made the change from Ms. Keroack to Ms. Steffen serving as the administrative hearing officer?
MS. DYSON: Objection to form. Objection. Outside the scope.
THE WITNESS: I don't have knowledge of that.
BY MR. SEVERINO:
Q But with respect to the general process, would it have been the director or the designee of the OSRR?
MS. DYSON: Objection to form. Objection. Outside the scope.
THE WITNESS: The assigning of it would be the director. Doing -- or the designee. Doing the letter may not have been.
BY MR. SEVERINO:
Q How was the selection of the hearing



officer communicated to the individual who sends the letter?
MS. DYSON: Objection to the form. Objection. Outside the scope.
THE WITNESS: I don't have the answer to that.
BY MR. SEVERINO:
Q If you could put Exhibit 2 back in front of you, the chart, the spreadsheet. Take a look at student number 2, that column.
A Mmm-hmm.
Q Can you tell me what the length of the investigation was with respect to student 2?
MS. DYSON: Are you referring to a particular topic area?
MR. SEVERINO: Topic 6b.
THE WITNESS: From number 2, it says the date of complaint was November 17th, 2015, and the finding of responsibility was July 28th, 2016. And it says the date of appeal is August 4th, 2016.
BY MR. SEVERINO:
Q So in determining the length of investigations for each student in this chart, the beginning of the investigation would start with the

Page 42

column that says "Date of Complaint." Is that correct?
A I couldn't answer that. Depends on where that started and how the complaint was filed.
Q You have to explain that to me. I don't know what that means.
A So a complaint can be filed, but then -- but the person filing it doesn't move forward with things yet. So there could be a delay in that. They could just file the complaint but not want any movement.
Q When you say the person filing the complaint, are you talking about the complainant or the person at the Title IX office?
MS. DYSON: Object to the form.
THE WITNESS: So I don't know --
BY MR. SEVERINO:
Q Let me rephrase that. Sorry.
Who are you referring to when you say "filing the complaint"?
A It could be a complainant. It could be a third-party responder. Because I don't know exactly what they -- what date they looked at, whether it was when it was sent to student conduct or when it was filed to Title IX. I couldn't say then when the

Page 43

investigation actually began.
Q So when a complaint is filed, is not USF's policy or procedure to begin its investigation at that time?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I don't know what the policy was at that time.
BY MR. SEVERINO:
Q So how can you testify regarding the length of the investigation for student 2?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I can't, based on this spreadsheet.
BY MR. SEVERINO:
Q Okay. What about in preparing for your deposition today? Is there anything that you did that can tell us how long the investigation was for student 2?
MS. DYSON: Can we take a break?
MR. SEVERINO: Sure.
THE VIDEOGRAPHER: The time is 10:21 a.m. We are off the video record.
(The deposition was recessed from 10:21 a.m. to 10:34 a.m.)
THE VIDEOGRAPHER: The time is 10:34 a.m.

Page 44

We're back on the video record.
BY MR. SEVERINO:
Q All right. Ms. McDonald, before we took a break, I was asking you about the length of investigation for student 2.
A Yes. So the investigation I can't answer to. What I can answer to is that the date of the complaint came on the -- on November 17th, 2015, and the finding of responsibility was on July 28, 2016. During that time, I don't know how long the investigation was. That's a part of the hearing process.
Q And so for each of the students identified by numbers on this spreadsheet, which is 1 through 34, would you be able to tell me the length of an actual investigation for any of the other students?
MS. DYSON: Object to the form.
THE WITNESS: No. Not by this spreadsheet.
BY MR. SEVERINO:
Q But the investigation would have occurred sometime between the date of complaint for each student and the finding -- the date of finding of responsibility. Is that correct?
A Yes.

Page 45

Q All right. You had testified earlier that the -- I believe the person filing the complaint may not have wanted to move it forward right away, so the investigation may have not started on the date of this complaint. Is that what you testified to earlier?
A Yes.
Q Okay. And does that mean that if a complainant files a complaint that they can tell the University not to investigate yet?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I don't know what the policy was back then during that time.
BY MR. SEVERINO:
Q So if we go back to student 2, based on this spreadsheet, student 2 was found responsible for violating Section 4.14(b) and 4.14(c). Correct?
A Yes.
MS. DYSON: Objection to form. Outside the scope.
THE WITNESS: Yes.
BY MR. SEVERINO:
Q And based on that finding of responsibility, what sanctions were imposed against student 2?

MS. DYSON: Objection. Outside the scope.
THE WITNESS: Expulsion and a no-contact order.
BY MR. SEVERINO:
Q And what was student's -- student 2's race?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: The respondent?
BY MR. SEVERINO:
Q Yes.
A Black, non-Hispanic.
Q And so where it has the number on the far left-hand column of the student and then on the far right-hand column it says "Respondent Race," is the -- the numbers correspond to the respondent. Correct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes. Because the findings are connected to the respondent.
BY MR. SEVERINO:
Q Okay. And so student 2 was imposed the sanctions of expulsion and no-contact order. With respect to the expulsion, what factors did the University consider in imposing the sanction of expulsion?



MS. DYSON: Are you referring to a particular topic area?
MR. SEVERINO: Topic 6.
MS. DYSON: Topic 6 what?
MR. SEVERINO: I mean f, 6f.
THE WITNESS: So I wouldn't know for that specific case without reading the actual -- going into the case and reading it.
MS. DYSON: Object to the form. Sorry. Go ahead.
BY MR. SEVERINO:
Q Did you do that in preparation for today's deposition?
A No, I did not.
Q Why not?
MS. DYSON: Object to the form. Outside the scope.
THE WITNESS: I didn't know what questions were going to be asked beyond the spreadsheet of this -- of each case.
BY MR. SEVERINO:
Q Weren't you given -- if you'd take a look at Exhibit 1, if you look at Exhibit A, weren't you given that prior to today's deposition?
MS. DYSON: Objection. Outside the scope.



THE WITNESS: Repeat the question.
BY MR. SEVERINO:
Q Yeah. Exhibit A --
A Yes.
Q -- which is on Exhibit 1 --
A Right.
Q -- I believe you testified earlier that you were provided that before today's deposition.
A Yes.
Q Okay. Do you remember when you were provided it?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Let me look at my calendar.
MS. DYSON: No, you don't have to look at anything.
THE WITNESS: I don't have to look at anything. Okay.
Within the past two weeks.
BY MR. SEVERINO:
Q Okay. And did you review it when it was provided to you?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I looked over it. Yes.
BY MR. SEVERINO:
Q Okay. And you see topic 6f. Correct?



A Yes.
Q And topic 6F says "The factors and evidence considered for the sanctions imposed in each case." Do you see that?
A Yes.
Q Okay. And beyond what's in that notebook, you didn't review anything else to answer question 6f?
A I didn't review each individual case to see what individual cases would impact the findings. I know that there's a number of factors that impact findings. It could have been the circumstances of the violation, whether the student accepted responsibility or not, other mitigating circumstances, report, a disciplinary history, health and safety of the community, impact on the community. Each case is going to be different and decided based on specific facts and circumstances presented.
I didn't know that I would be asked on each single case why a certain finding was found or not. And having not been the hearing officer or the ones for each of these that made the decision, I wouldn't know what factored into their specific decisions.

Page 50

Q And you didn't talk to any of the hearing officers identified on this spreadsheet --
MS. DYSON: Objection. Outside the scope.
BY MR. SEVERINO:
Q -- in preparation for today?
A No, I did not.
Q And the answer that you just provided with the general considerations, did you read that from the notebook that counsel provided you?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes, I did.
BY MR. SEVERINO:
Q Do you know whether criminal charges were filed against student 2 with respect to this allegation?
MS. DYSON: Are you relating to a particular topic area?
MR. SEVERINO: 6c.
THE WITNESS: USF did not file criminal charges on behalf of the complainant or responding party. So I'm not familiar with whether there were criminal charges or not.
BY MR. SEVERINO:
Q When you say "USF," are you referring to the University or campus police?

Page 51

A To the University. We are not -- we don't have a criminal prosecutorial function.
Q I understand that. I'm just asking whether USF knows if criminal charges were filed with respect to Exhibit 2 -- I mean, student 2 and the conduct alleged.
A If it was provided in any of the other documents provided, then I guess we would know if there were criminal charges --
Q You said --
A -- as USF.
Q -- "documents provided." What are you referring to?
A The whatever you put in your lawsuit, the cases, any of that other. I don't believe it's any of the documents that I have or that USF has charged.
Q Let's go to -- actually, before we do that -- actually, let's go to student 3 on Exhibit 2. Based on this spreadsheet, student 3 was found responsible for violating 4.14(b) and 4.14(c). Correct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes.
BY MR. SEVERINO:

Page 52

Q And what is the race of student 3?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: The respondent in number 3 is black, non-Hispanic.
BY MR. SEVERINO:
Q And what were the sanctions imposed on student 3 for violating 4.14(b) and 4.41(c) [sic]?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Expulsion, no-contact order.
BY MR. SEVERINO:
Q Okay. And with respect to the expulsion sanction, are you able to tell me what specific factors or evidence was considered in determining to expel student 3?
MS. DYSON: Are you referring to a particular topic area?
MR. SEVERINO: Same one as student 2. It would be 6f.
THE WITNESS: I could not say on what specifically in that student. That would have been up to the -- the UCB to determine what factors to -- the factors they considered in making that decision.
MS. DYSON: Can we take a break?
MR. SEVERINO: Yes.

Page 53

THE VIDEOGRAPHER: The time is 10:44 a.m. We're off video record.
(The deposition was recessed from 10:44 a.m. to 10:51 a.m.)
THE VIDEOGRAPHER: The time is 10:51 a.m. We're back on video record.
BY MR. SEVERINO:
Q Ms. McDonald, before we took a break, we were discussing student 3 and the factors and/or evidence that was considered in imposing the sanction of expulsion.
A So in every one of the cases, the same things would be considered: the facts of the case, the findings of responsibility; any other mitigating circumstances; were there parts of witnesses; were there prior disciplinary history; the health, safety, and welfare of the community; and the impact on the community. So all of that would have gone into the determination of sanctions imposed.
Q Are there any specific factors that would necessitate a sanction of expulsion over the sanction of suspension?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: It would be those same factors that I talked: the facts of the case,

whether the student accepted responsibility, the accounts of other students, prior disciplinary hearing, health and safety of the community, impact of the community.
BY MR. SEVERINO:
Q And you're reading that from the notebook. Is that correct?
A Yes.
MR. SEVERINO: Do you have a stapler anywhere in here?
MS. ADAMCHAK: I'll get a stapler.
MR. SEVERINO: Thank you.
These are going to be 6 and 7.
MS. DYSON: Okay.
MR. SEVERINO: I need to staple them. Make it easier.
(Exhibit Numbers 6 and 7 were marked for identification.)
BY MR. SEVERINO:
Q You are being handed what's been marked as Exhibit 6 and Exhibit 7. Exhibit 6 is Bates labeled 707 through 713, and Exhibit 7 is Bates labeled 714 through 720.
Let's start with Exhibit 6. Flip through that for me, if you would. Let me know if you've



reviewed that document prior to today.
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I did not review this in terms of preparing for this case, but I may have seen it back in 2016 when it came through.
BY MR. SEVERINO:
Q Okay. And if you turn to Bates label 708 for me.
A Mmm-hmm.
Q What is this document? Do you know?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: This is a notice of investigative interview.
BY MR. SEVERINO:
Q And according to Bates label 708 here, what time did this alleged incident occur?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: 2:00 a.m.
BY MR. SEVERINO:
Q Is that a fact that would be considered ultimately in determining the sanction imposed?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I couldn't say. It could be if it's a relevant fact in the case.
BY MR. SEVERINO:



Q Okay. Take a look at Bates label 709. What is this document?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: This is the outcome letter of a hearing, of a UCB hearing.
BY MR. SEVERINO:
Q Okay. And about halfway down, it says "The University Conduct Board found you responsible for the above violation for the following reason/s." And then the last sentence of the first bullet point says "Further, the complainant was intoxicated and therefore unable to consent to sexual activity."
Is that a fact that would be considered in imposing the sanction of expulsion?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: As a fact of the case, yes.
BY MR. SEVERINO:
Q Take a look at Exhibit 7 for me. Have you seen Exhibit 7 prior to today?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I may have in 2016 when the case went through.
BY MR. SEVERINO:
Q Did you review it in preparation for your deposition today?



MS. DYSON: Objection. Outside the scope.
THE WITNESS: No, I did not.
BY MR. SEVERINO:
Q Again, if you look at Bates label 715, what is this document?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: This is the outcome letter of the University Conduct Board hearing.
BY MR. SEVERINO:
Q And if you look at the date and time on this as compared to Exhibit 2 [sic], they both say June 6, 2015, at 2 a.m. Correct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes, they do.
BY MR. SEVERINO:
Q Do you know whether these were part of the same incident, Exhibit 2 and 3 [sic]?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I am not sure based on the incident number.
BY MR. SEVERINO:
Q Let's take a look at Exhibit 2 again, which is the spreadsheet.
A Mmm-hmm.
Q And we're going to look at student 4 now.

Page 58

According to this spreadsheet, student 4 was found responsible for violating the following: 4.06, stalking; 4.12, injurious behavior; 4.14(b) non-consensual sexual intercourse; 4.14(c) non-consensual sexual contact; 4.17, misuse of alcohol; and 4.24, specific acts of violence/4.24, dating violence.
Do you see that in the "Responsible Charges" column?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes.
BY MR. SEVERINO:
Q Okay. And what sanctions were imposed on student 4 for being found responsible for those charges?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Suspension, no-contact order, external assessment for anger management, meeting with staff members to discuss the external assessment for anger manager -- management.
BY MR. SEVERINO:
Q And what is the race of student 4?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: White, non-Hispanic.

Page 59

BY MR. SEVERINO:
Q Do you know why student 4 was suspended versus students 2 and 3 being expelled for violating the same codes of conduct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: They would have taken into account the facts of the case, the circumstances, the violation, whether students accept the responsibility, accounts of other students or witnesses, any other mitigating circumstances or parts of witnesses, the disciplinary hearing or not -- the disciplinary history or not, health and safety of the community, and the impact on the community.
BY MR. SEVERINO:
Q And did you just read that verbatim from the notebook counsel provided you?
A For the most part, yes.
MR. SEVERINO: Sorry. I have to take a break.
MS. DYSON: Sure. Yes. Absolutely.
THE VIDEOGRAPHER: The time is 11:01 a.m. We're off the video record.
(The deposition was recessed from 11:01 a.m. to 11:08 a.m.)

Page 60

THE VIDEOGRAPHER: The time is 11:08 a.m. We're back on video record.
(Exhibit Number 8 was marked for identification.)
BY MR. SEVERINO:
Q Ms. McDonald, before we took a break, we were talking about student 4 on Exhibit 2. I'm going to hand you what's been marked as Exhibit 8. And before we went on the break, you were again identifying the general factors that would be considered in determining the sanctions that's imposed in a specific case.
So take a look at Exhibit 4 [sic]. And did you review this in preparation for today's deposition?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Did you mean student 4, Exhibit 8?
BY MR. SEVERINO:
Q Yes. I'm sorry. Thank you. Exhibit 8.
A I did not review this in preparation of the case -- of the deposition.
Q And for the record, this is Bates labeled 721 through 726. And I believe you testified that some of the factors would be obviously the facts of the case, whether the student participated in the hearing process, whether it's a formal hearing, or whether the student accepted responsibility?

Page 61

A Among other --
Q Among others.
A -- factors. Yes.
Q But those are definitely four that would be considered?
A Mmm-hmm.
Q Okay. Take a look at Bates label 726. And this is a letter that goes from 726 to 730. What is this letter, if you know?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: This is an outcome of a hearing that was held in absentia, meaning that they failed to --
THE COURT REPORTER: Can you move your hand, please?
THE WITNESS: Yes. I'm so sorry.
THE COURT REPORTER: I couldn't hear you.
THE WITNESS: Yes. This is the outcome of a letter -- of a hearing that was held in absentia of the student because they did not arrange a meeting.
BY MR. SEVERINO:

Q So the student didn't participate in the process?
A They didn't --
MS. DYSON: Objection. Outside the scope.
THE WITNESS: They didn't participate in the initial meeting. So this is then the charge letter that gives them the option of responsibility that would have been what would happen in the -- in the first -- in the meeting that they didn't schedule, and so then it also says what the sanctions were going to be.
BY MR. SEVERINO:
Q So if the respondent didn't participate in the initial meeting, do you know what factors were considered in recommending these proposed sanctions?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: So they'd have to consider the information that they had in terms of the facts of the case, any of the complainant's statements, any witnesses, any investigation report they had.
BY MR. SEVERINO:
Q But it would be without a statement from the respondent. Is that correct?
MS. DYSON: Objection. Outside the scope.



THE WITNESS: Unless the respondent made any statements within any other part of the process. It looks like they had a notification in May.
BY MR. SEVERINO:
Q When you say as part of the process, you mean prior to this letter?
A Correct.
MS. DYSON: Objection. Outside the scope.
BY MR. SEVERINO:
Q Do you know whether the respondent did that in this case?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I don't.
BY MR. SEVERINO:
Q And you testified that this letter provides recommended sanctions. Is that correct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: It is the sanctions and the charges if they accept responsibility.
BY MR. SEVERINO:
Q I know you mentioned a couple times about accepting responsibility.
A Mmm-hmm.
Q Is that part of the process under the



Student Code of Conduct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Based on this in 2016, that was part of the process.
BY MR. SEVERINO:
Q And is that process identified in the Student Code of Conduct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I don't know if it was in the -- I would -- on the 2016 Student Code of Conduct.
(Exhibit Number 9 was marked for identification.)
BY MR. SEVERINO:
Q I'll hand you what's been marked as Exhibit 9.
MS. DYSON: Are you referring to a particular topic area now? I think we had 9 already, didn't we?
MR. SEVERINO: Not Exhibit 9. We were on 8.
MS. DYSON: Okay. Are you referring to a particular topic area?
MR. SEVERINO: Number 12.
BY MR. SEVERINO:



Q Is Exhibit 10 the Student Code of Conduct?
MS. DYSON: I'm confused. You said Exhibit 10.
MR. SEVERINO: I'm sorry. Exhibit 9. You're correct. Sorry. I looked at Exhibit 10 on here and --
MS. DYSON: Oh. Okay.
BY MR. SEVERINO:
Q All right. Is Exhibit 9 the Student Code of Conduct that was in effect at the time of Mr. Dingle's conduct process?
MS. DYSON: He's on topic area 12 now.
THE WITNESS: Repeat your question.
BY MR. SEVERINO:
Q Yes.
Is Exhibit 9 the Student Code of Conduct that was in effect at the time of Mr. Dingle's disciplinary process?
A So this would have been the Student Code of Conduct that was in effect for 2016 to 2018.
Q Okay. And --
A Starting August.
Q Okay. And Mr. Dingle's date of charges was November of 2017. Correct?
MS. DYSON: Objection. Outside the scope.

THE WITNESS: Is that in here?
MS. DYSON: Yeah. I think it's Exhibit 2.
THE WITNESS: Oh, yes.
BY MR. SEVERINO:
Q Let's do it this way.
A Sorry. Here it is
MS. DYSON: That would have been Exhibit 3.
THE WITNESS: Yes.
BY MR. SEVERINO:
Q Let's do it this way: Take a look at Exhibit 2, the chart right there.
A Yes.
Q Turn to the second page, and look at -- take a look at student 20 for me.
A That's the third page?
Q Is it the third? Yes. Correct. Third. Student 20. And the date of the complaint for student 20 is November 16, 2017. Correct?
A Yes.
MS. DYSON: Objection. Outside the scope.
BY MR. SEVERINO:
Q So Exhibit 9 would have been the Student Code of Conduct that was in effect for student 20?
A Yes.



Q All right. So if you go to page 21, which is Bates labeled 222 of Exhibit 9. Sorry. Go back to 220. If you look at paragraph 3a, is that the process under the Student Code of Conduct wherein a charged student's provided recommended sanctions and an opportunity to accept those sanctions?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: So, yes. So, when the -- as it says that the -- if the referral is not dismissed, the referred student, the respondent, becomes the charged student. The charge letter indicates the choices available to the charged student, which are to accept responsibility or to request a formal hearing.
BY MR. SEVERINO:
Q Okay. And on Exhibit 2, student 3 was given that opportunity. Correct?
A Correct.
MS. DYSON: Objection. Outside the scope.
BY MR. SEVERINO:
Q I'm sorry. Student 4 -- on Exhibit 2, student 4 was given that opportunity. Correct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: On Exhibit -- where is that --



BY MR. SEVERINO:
Q That's student 4 on Exhibit 2. I know.
MS. DYSON: He's referring to the chart, I believe.
MR. SEVERINO: Yes. For now --
THE WITNESS: Oh.
MR. SEVERINO: And if we need to follow up --
THE WITNESS: Oh, sorry. Yes. So repeat the question.
BY MR. SEVERINO:
Q Yes. So was student 4 provided recommended sanctions and an opportunity to accept those sanctions?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I don't -- on the spreadsheet, it doesn't say one way or the other.
BY MR. SEVERINO:
Q Right. So take a look at Exhibit 8.
A Okay. That's what I thought. Yes. On Exhibit 8, they were told they can accept the responsibility and what those charges would be, and on 00728, it says if they disagree with the findings, you have two choices for a formal hearing.



Q Okay. And if you take a look at -- go back to Exhibit 6. Was that student provided recommended sanctions and an opportunity to accept responsibility?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: It may have been in the initial review meeting.
BY MR. SEVERINO:
Q Well --
A Because that's not --
Q It's not in those documents?
A Right. Because this respondent probably showed up for the meeting, so they didn't have it in absentia.
Q But whether it's in absentia or not, the process is the recommended sanctions and an opportunity to accept responsibility. Correct?
A Right. So --
MS. DYSON: Objection. Outside the scope.
BY MR. SEVERINO:
Q So it's verbally communicated during the meeting?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: It can be, yes, in the initial review meeting.

Page 70

BY MR. SEVERINO:
Q Where does it say on Exhibit 9 Bates label 220 that it can be done verbally?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: It doesn't mention. It only mentions that if they are conducting it in absentia, then there would be a determination of appropriate charges in the charge letter.
BY MR. SEVERINO:
Q Right. And is the charge letter a written document?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: In absentia, yes.
BY MR. SEVERINO:
Q Well, it doesn't say that, does it? It says "At the conclusion of the Initial Review Meeting/In Absentia Review, the Initial Review Officer will issue a," quote, "Charge Letter"?
MS. DYSON: Objection to the form. And objection. Outside the scope.
THE WITNESS: Correct. So it says if we're looking at the same -- in number 2, initial review process, if the failed -- referred student fails to appear to the initial

Page 71

review or any step in the process, the initial review officer will conduct an in absentia review and make a determination of the appropriate charges be filed and send the charge letter.
BY MR. SEVERINO:
Q Okay. So you're on Bates label 219. Correct?
A Yes.
Q And if you go to the next page, 220, paragraph 3A, conclusion of the initial review process.
A Yes.
Q Okay. So at the conclusion of an initial review process, whether it's in absentia or not, the initial review officer will issue a charge letter. Correct?
A Yes.
MS. DYSON: Objection. Outside the scope.
BY MR. SEVERINO:
Q So nowhere in here is it authorized to be done verbally. Is that correct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: It doesn't say you can't. It just says that there's also a charge letter.

Page 72

BY MR. SEVERINO:
Q Did you ever issue recommendations in your role at USF recommending sanctions verbally and not in a charge letter?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I don't give recommendations for sanctions. I'm not part of that process.
BY MR. SEVERINO:
Q Are administrative hearing officers or initial review officers able to deviate from the terms of the Student Code of Conduct when performing their duties?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: If it's specifically in the code of conduct, no, they can't violate the code of conduct.
BY MR. SEVERINO:
Q Go back to the chart, Exhibit 2 for me, please. Go to second page, 541, Bates label 541. Take a look at student 8. The decision, including finding of responsibility, states "Dismissed, insufficient information to substantiate a finding of violation of the USF Student Code of Conduct."
Do you see that?
MS. DYSON: Objection. Outside the scope.

Page 73

THE WITNESS: Yes.
BY MR. SEVERINO:
Q What was the race of student 8?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: The respondent race was white, non-Hispanic.
BY MR. SEVERINO:
Q Okay. And what factors and evidence was considered in dismissing the case against student 8 for insufficient information?
MS. DYSON: Are you referring to a particular topic area?
MR. SEVERINO: 6e.
THE WITNESS: So the factors would have been the same thing; the facts of the case, the information that we had, the partipat- -- participation, the statements of students involved in the case, reviewing any of the documents related to the incident as they are provided by the students.
BY MR. SEVERINO:
Q Would one of the factors or could one of the factors have been that the complainant and the respondent had differing versions of what happened?
MS. DYSON: Objection. Outside the scope.

THE WITNESS: Depends on the facts of the case.
BY MR. SEVERINO:
Q So in a case of he said/she said, how does the University evaluate that?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: So they weigh all of the data, all of the documents, all of the information that they have within the rest of the case.
BY MR. SEVERINO:
Q Do you know if that was a factor with respect to student 8?
MS. DYSON: Objection. Outside the scope and objection to the form.
THE WITNESS: It would be in every single case that we would determine -- reviewing the data, the factors, the information that we have to review the case.
BY MR. SEVERINO:
Q Did you review the facts and data with respect to student 8 in preparation for your deposition today?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No, I did not.


BY MR. SEVERINO:
Q So you don't know why this was actually dismissed for insufficient information with respect to student 8. Correct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I know what would have been considered in that, but I don't have specifics to know that.
BY MR. SEVERINO:
Q Well, you know generally what would be considered, but you don't know what was actually considered by the decision-maker to dismiss this. Right?
A Right.
MS. DYSON: Objection. Outside -- outside the scope. And objection to the form. It's asked and answered?
BY MR. SEVERINO:
Q You can answer again.
A That is correct.
Q All right. So take a look at student 9 on Exhibit 2 again, same page. And Exhibit 9 was found responsible for violating Section 4.14(b), non-consensual sexual intercourse, and 4.14(c), non-consensual sexual contact. Do you see that?


A Yes.
Q And what sanction or sanctions were imposed on student 9 for those violations?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Deferred suspension, no-contact order, meeting with staff member.
BY MR. SEVERINO:
Q And what was student 9's race?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: White, non-Hispanic.
BY MR. SEVERINO:
Q Do you know why student 9 was imposed a sanction of deferred suspension and not expulsion?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: So it would have been the same considerations that we would give for every case; the data, the facts of the case, the facts of the complaint and respondent, the data that shows their documents and reports.
BY MR. SEVERINO:
Q Do you know what the facts were for student 9?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No, I do not.
BY MR. SEVERINO:


(Exhibit Number 10 was marked for identification.)
BY MR. SEVERINO:
Q I'll hand you what's marked Exhibit 10.
MS. DYSON: Thank you.
BY MR. SEVERINO:
Q Did you review Exhibit 10 in preparation for today's deposition?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I did not.
BY MR. SEVERINO:
Q And Exhibit 10, for the record, is Bates labeled 759 through 765. Take a look at Bates label 762 through 765 of Exhibit 10.
A Mmm-hmm.
Q What is this document?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: This is the charge letter after our initial review.
BY MR. SEVERINO:
Q And was student 9 provided recommended sanctions and the opportunity to accept those recommended sanctions in this letter?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes.

BY MR. SEVERINO:
Q And that would have been done because it's required under the Student Code of Conduct. Correct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: The charge letter and the charges? Yes.
BY MR. SEVERINO:
Q Correct. And the recommended sanctions and the opportunity to accept?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes.
BY MR. SEVERINO:
Q Back to the spreadsheet, Exhibit 2, take a look at student 10. The initial allegations were for violation of 4.14(b), non-consensual sexual intercourse; 4.14(c), non-consensual sexual contact; and 4.06, stalking. Do you see that?
A Yes.
MS. DYSON: Objection. Outside the scope.
BY MR. SEVERINO:
Q And what was the decision, including finding of responsibility, with respect to those allegations for student 10?
MS. DYSON: Objection. Outside the scope.


THE WITNESS: Dismissed, insufficient information to substantiate a finding of a violation of the USF Student Code of Conduct.
BY MR. SEVERINO:
Q Okay. And what were the factors and/or evidence considered in dismissing the allegations against student 10 for insufficient information?
MS. DYSON: Objection. Asked and answered.
THE WITNESS: It would have been the facts of the case; the witness statements, if there were any; the complainant statements.
BY MR. SEVERINO:
Q Specifically with respect to number -- student number 10, not the general considerations, do you know the actual considerations and evidence considered in dismissing this case?
MS. DYSON: Objection as to form. Asked and answered.
THE WITNESS: No, I do not.
BY MR. SEVERINO:
Q And what was the race of student 10?
A The respondent race was Hispanic.
Q Let's turn to page 3 of Exhibit 2, which is Bates labeled 542, please. Can you tell me by


looking at this chart with respect to student 20 the length of the investigation?
MS. DYSON: Objection. Outside the scope. Asked and answered.
THE WITNESS: The case went from November 16th, 2017, to the finding of responsibility on December 8th, 2017.
BY MR. SEVERINO:
Q So the investigation would have occurred at some point between those two dates. Correct?
A Yes.
Q Okay. So, at most, the investigation was 25 days, if we take the date of complaint to the date of finding of responsibility. Correct?
MS. DYSON: Objection. Asked and answered.
THE WITNESS: I mean, I'd have to count the days on a calendar, but those are the days in between -- this is the time frame. Yes.
BY MR. SEVERINO:
Q Okay. So the number of days between the date of complaint and date of finding of responsibility would have been the longest that the investigation could have ensued with respect to student 20?


MS. DYSON: Objection. Asked and answered.
THE WITNESS: Yes.
BY MR. SEVERINO:
Q And student 20 was found responsible for violation of 4.14(b), non-consensual sexual intercourse, and 4.14(c), non-consensual sexual contact. Do you see that?
A Yes.
MS. DYSON: Objection. Outside the scope.
BY MR. SEVERINO:
Q And what sanctions were imposed for violation of those --
MS. DYSON: Objection.
BY MR. SEVERINO:
Q -- codes of the Student Code of Conduct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Expulsion, no-contact order.
BY MR. SEVERINO:
Q Okay. And what was student 20's race?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: The respondent race was black, non-Hispanic.
BY MR. SEVERINO:
Q And specifically with respect to student

Page 82

20, what factors were considered in determining to expel student 20 versus suspending student 20?

MS. DYSON: Objection. Outside the scope.

THE WITNESS: The -- for all the cases, it would be the facts of the case, the respondent, the complainant, the history, the safety of the community.

BY MR. SEVERINO:

Q And, again, specifically with respect to student 20, you don't know the specific facts that were considered in determining to expel him. Correct?

MS. DYSON: Objection. Outside the scope.

THE WITNESS: Correct.

BY MR. SEVERINO:

Q Take a look at Exhibit 3 for me, please.

MS. DYSON: What is Exhibit 3?

MR. SEVERINO: Exhibit 3 is Bates labeled 71 through --

MS. DYSON: Is it a letter? Is it --

MR. SEVERINO: Yes. It's 71 through 74.

BY MR. SEVERINO:

Q We talked about this earlier, but for this line of questioning, what is this document again?

MS. DYSON: Objection. Outside the scope.

Page 83

THE WITNESS: This is the outcome of the emergency provisional suspension hearing.

BY MR. SEVERINO:

Q And was Mr. Dingle provided anywhere in here recommended sanctions, with the opportunity to accept responsibility and those sanctions?

MS. DYSON: Objection. Outside the scope.

THE WITNESS: No, not in this letter.

BY MR. SEVERINO:

Q Why not?

MS. DYSON: Objection. Outside the scope.

THE WITNESS: I don't have an answer for that.

BY MR. SEVERINO:

Q Take a look at the middle of this page. It has the two --

A I need a minute to review --

MS. DYSON: Sure.

BY MR. SEVERINO:

Q That's fine.

A -- the emergency provisional suspension. Okay.

Q Oh.

MR. SEVERINO: Can you read back the last question to make sure we're...

Page 84

(The Court Reporter read as follows:

"Question: And was Mr. Dingle provided anywhere in here recommended sanctions, with the opportunity to accept responsibility and those sanctions?

"Objection. Outside the scope.

"I don't have an answer for that.

"Question: Take a look at the middle of this page.

And then, "I need a minute to review.")

BY MR. SEVERINO:

Q Okay. So now that you've reviewed, is there anything you need to add to your previous answer?

A In the provisional suspension review process, they indicate that the charge letter indicates the referral and that the provisional suspension is dismissed, that the letter -- or lifted and move forward or is continued and referral to move forward to recommended charges and sanctions. The referred student now becomes the charged student, and there is a -- according to the policy, there's a form where the student can elect responsibility and agree to the terms of the sanctions imposed by the charge letter.

Page 85

Q How does Mr. Dingle do that if he wasn't given that opportunity?

MS. DYSON: Objection. Outside the scope.

THE WITNESS: I don't know if he was given that opportunity, was -- outside of this letter or the policy, knowing the Student Code of Conduct.

BY MR. SEVERINO:

Q But under the Student Code of Conduct, he was supposed to be given that opportunity. Correct?

MS. DYSON: Objection. Outside the scope.

THE WITNESS: Correct.

BY MR. SEVERINO:

Q When -- when did the, quote, "Me Too Movement" rise to prominence?

MS. DYSON: Objection. Outside the scope. Are you referring to a particular topic area?

MR. SEVERINO: Yes. I'm talking about 17a.

THE WITNESS: I am not sure the date of when the Me Too Movement started.

BY MR. SEVERINO:

Q Do you know the year?

A No.

MS. DYSON: Objection. Outside the scope.

BY MR. SEVERINO:
Q Did USF take any action in response to the Me Too Movement?
A We wouldn't take response -- movement in response to public opinion or commentary. We may have had -- we do policy reviews on a -- on a regular basis to address any change in legislative, administrative, or operational requirements.
Q And was your response to the last question read from the notebook in front of you?
MS. DYSON: Object to form. Objection. Outside the scope.
THE WITNESS: Not word for word but basically.
BY MR. SEVERINO:
Q Did you participate in preparing any of the information contained in that notebook?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Not actively.
BY MR. SEVERINO:
Q Do you know what documents your counsel relied on to prepare the information in that notebook?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No, I do not.



(Exhibit Number 11 was marked for identification.)
BY MR. SEVERINO:
Q I'm going to hand you what's been marked Exhibit 11. And Exhibit 11 is Bates labeled DINGLE 211 through 217.
MR. SEVERINO: I didn't staple those. I just had them paperclipped. I'll staple those going forward.
MS. DYSON: Are you referring to a particular topic area?
MR. SEVERINO: 17c.
BY MR. SEVERINO:
Q Did you review Exhibit 11 in preparation for your deposition today?
A No --
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No, I did not.
BY MR. SEVERINO:
Q And this article, which was published November 2nd, 2017, is titled "New Federal Investigation Targets USF Handling of Sexual Violence Case." Do you see that?
A Yes.
MS. DYSON: Objection. Outside the scope.



THE WITNESS: Yes.
BY MR. SEVERINO:
Q What was -- what was the federal investigation regarding?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I do not know.
BY MR. SEVERINO:
Q USF was aware of the federal investigation, though. Correct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I think they were aware of the investigation. I don't know to the facts of that.
BY MR. SEVERINO:
Q And USF was also aware of this article from the Tampa Bay Times. Correct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes, as there's a statement by our spokesman.
BY MR. SEVERINO:
Q Do you know the outcome of this investigation that's referenced in this article?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I do not.
BY MR. SEVERINO:



Q If the investigation was in fact regarding USF's handling of a prior sexual assault case and if USF was found liable, what are the potential sanctions or liability that could be imposed against USF?
MS. DYSON: Objection to the form and outside the scope.
THE WITNESS: This is out of -- you're saying for the Department of Education?
BY MR. SEVERINO:
Q Yes.
A Violations of the Department of Education could be funding, could be censure, could be telling you to change your policies. Depends on what their finding is from the Department of Education.
Q So when you say "funding," are you referring to a loss of funding?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: There are some things that are federally protected, and then -- so that it could be a federal -- federal funding.
BY MR. SEVERINO:
Q A loss of federal funding?
A Loss of federal funding. Correct.
Q In response to this article, did USF take

Page 90

any action?
A Not to my knowledge. It wouldn't be an article. We don't take actions in terms of policy review or change in terms of an article.
Q Even if the University is getting negative attention in the media, that's not something that the University would consider and make changes?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No. We would review to make sure that we're following legislative processes.
BY MR. SEVERINO:
Q At the time of this article in Exhibit 11, did USF have a zero-tolerance policy with respect to sexual assault?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: We had no policy that said we have a zero tolerance that I know of.
(Exhibit Number 12 was marked for identification.)
BY MR. SEVERINO:
Q I hand you what's been marked Exhibit 12. This is a document Bates labeled 28 -- DINGLE 218 to DINGLE 225.
MS. DYSON: Are you referring to a

Page 91

particular topic area here?
MR. SEVERINO: 17 -- 17 -- let's see. It would be d. Let me make sure. 17d.
BY MR. SEVERINO:
Q Did you review Exhibit 12 in preparation for your deposition today?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No, I did not.
BY MR. SEVERINO:
Q And this is an article from November 13th of 2017 titled "Safe HOME at University of South Florida hosts first annual Slut Walk."
Do you see that?
A Yes, I do.
MS. DYSON: Objection. Outside the scope.
BY MR. SEVERINO:
Q And this was a protest that was actually held on USF campus. Correct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes.
BY MR. SEVERINO:
Q And the protest was in regards to USF not having a zero-tolerance policy in place for sexual assault. Is that correct?
MS. DYSON: Objection. Outside the scope.

Page 92

THE WITNESS: I don't know if that's in there or not, if that was their purpose.
BY MR. SEVERINO:
Q Take a look at page 2, DINGLE 220, second paragraph.
A That is what they said.
Q If you look at page 4, which is DINGLE 222, the last paragraph there, does that refresh your recollection at all about the rise to prominence of the Me Too Movement and when that occurred?
MS. DYSON: Object to the form and outside the scope.
THE WITNESS: I remember it having to do with Harvey Weinstein. Yes.
BY MR. SEVERINO:
Q Okay. And it says, "We started planning in July and the Me Too Movement came up last week and we just related."
MS. DYSON: Objection. Outside the scope.
BY MR. SEVERINO:
Q So last week would be the week before this article was published, November 13, 2017. Correct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes.

Page 93

BY MR. SEVERINO:
Q Okay. And given this protest occurred on campus, did USF take any action in response to this article or the protest?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: What type of action are you meaning?
BY MR. SEVERINO:
Q I don't know. Did they have any meetings to discuss enacting a zero-tolerance policy, about changing any polices or procedures in the wake of these protests?
A We wouldn't do that based on a protest.
Q So when would you make a change in policies or procedures with respect to the Student Code of Conduct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: When they are changing legislation, when we need to make administrative or operational changes. We also have an annual review process, but depending on the policy, it has a certain time frame of the review process.
BY MR. SEVERINO:
Q What about when the Department of

Page 94

Education issues what are referred to as Dear Colleague letters?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No, because they would not be legislation, unless our Board of Governors created legislation based on that.
BY MR. SEVERINO:
Q So explain that for me when you say "legislation." Your Student Code of Conduct is not legislation. Correct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: The Student Code of Conduct is our university regulation, and the Board of Trustees has to approve it, but it is not state legislation. No. But it often refers to legislation.
BY MR. SEVERINO:
Q Does the University rely at all on the Dear Colleague letters in formulating its Student Code of Conduct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No.
BY MR. SEVERINO:
Q What is the purpose of the Dear Colleague letters?

Page 95

MS. DYSON: Objection. Outside the scope.
THE WITNESS: I wouldn't be able to say. I didn't write them. The University didn't write them.
BY MR. SEVERINO:
Q Does the University review them at all?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: They come through our professional associations. They are on LISTSERV reviews.
BY MR. SEVERINO:
Q I'll mark this Exhibit 13.
(Exhibit Number 13 was marked for identification.)
BY MR. SEVERINO:
Q Did you review Exhibit 13 in preparation for your deposition today?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No, I did not.
BY MR. SEVERINO:
Q And for the record, it's Bates labeled DINGLE 268 through DINGLE 275, and this is an article published on November 30th, 2017, titled "Lawsuit: USF ignored student's fears after she alleged sexual assault."

Page 96

Do you see that?
A Yes.
Q Okay. And did USF take any action in response to this article?
A What type of action do you mean?
Q Any type of action. Anything.
A Well, obviously they responded or they gave some statements before -- for the article. I don't know if there were other articles after that, but we didn't do any changes to policy based on an article.
Q It looks like, if you turn to 273, which is page 6, that the USF President at the time, Judy Genshaft, actually sent a mass email Thursday evening reiterating the complexity of sexual assault cases and her concern for all involved.
A Yes.
Q Do you know what was said in that email, that mass email?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I do not, except what's quoted in here that the article said.
BY MR. SEVERINO:
Q And that email was sent in response to this article. Is that correct?

Page 97

MS. DYSON: Objection. Outside the scope.
THE WITNESS: I don't know if it was this article or if there were other emails or articles or things like that may have happened during that time.
BY MR. SEVERINO:
Q Did USF make any changes to any policies or procedures in response to the lawsuit that was filed as identified in this article?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: What topic is this?
BY MR. SEVERINO:
Q 17 --
MS. DYSON: There isn't a topic --
BY MR. SEVERINO:
Q -- d.
MS. DYSON: -- for that question.
MR. SEVERINO: That's incorrect.
MS. DYSON: What topic are you referring to?
MR. SEVERINO: 17d. The topic talks about this article.
MS. DYSON: 17d --
MR. SEVERINO: I don't have to give you --
MS. DYSON: -- is --

Page 98

MR. SEVERINO: -- every single question --
MS. DYSON: Well, you do have to --
MR. SEVERINO: I don't.
MS. DYSON: -- identify it with reasonable particularity. 17d relates
MR. SEVERINO: E. I apologize. It is --
MS. DYSON: 17e relates to a Tampa Bay Times article. It doesn't relate to any lawsuit.
BY MR. SEVERINO:
Q Okay. You can go ahead and answer.
A What was the question again?
Q Yes. Did USF take any action in response to the lawsuit that was filed as identified in Exhibit 13?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: So we would have -- if there was anything that came out of changing legislature during that time, administrative, or operational requirements, we may have changed policy, but we wouldn't have done it in response to a newspaper article.
BY MR. SEVERINO:
Q But in -- what about in response to a lawsuit alleging that USF mishandled a sexual

Page 99

assault case?
A Not --
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Not in terms of filing a lawsuit.
MS. DYSON: Anthony, we're at 12:08.
MR. SEVERINO: Yeah.
MS. DYSON: How much longer do you anticipate?
MR. SEVERINO: I can give you a better estimate when we take a break after the next exhibit.
MS. DYSON: Okay.
MR. SEVERINO: We'll wrap up these and take a break and figure out what we're going to do.
MS. DYSON: Okay.
MR. SEVERINO: A few more minutes here.
MS. DYSON: Sure.
(Exhibit Number 14 was marked for identification.)
BY MR. SEVERINO:
Q I hand you what's marked Exhibit 14. Did you review Exhibit 4 prior to today's deposition?
MS. DYSON: Objection. Outside the scope.

Page 100

What topic are you referencing?
MR. SEVERINO: 17f.
THE WITNESS: Repeat your question.
BY MR. SEVERINO:
Q Yeah. Did you review Exhibit 14 in preparation for today's deposition?
A No.
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No.
BY MR. SEVERINO:
Q This is an editorial titled "USF should revisit approach to Title IX protections" dated -- or published December 5th, 2017.
Do you see that?
A I do.
Q Okay. And at the time, was USF aware of this editorial?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I'm not sure.
BY MR. SEVERINO:
Q Did USF take any action with respect to its policies -- policies and procedures or anything else in response to the article in Exhibit 14?
A Not in response to a newspaper article or editorial.

Page 101

Q Is that just a standard policy of USF that you don't do that?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Lots of people have lots of opinions, and an editorial is definitely someone's opinion, so we would not base policy or procedure on that.
BY MR. SEVERINO:
Q All right. Real quick, Exhibit 2. So we established earlier in your testimony that students 2, 3, and 20 were not provided recommended sanctions and the opportunity to accept those sanctions. Correct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Can you help me with the exhibits on that?
BY MR. SEVERINO:
Q Yes. So the actual student file for Exhibit 2 -- I mean -- sorry -- student 2 would be Exhibit 6, for student 3 would be Exhibit 7, and -- and student 20 would be Exhibit 3.
A Okay. And repeat your question.
Q You testified earlier and we confirmed that students 2, 3, and 20 were not provided recommended sanctions and the opportunity to accept

responsibility and those sanctions. Correct?
MS. DYSON: Objection. Outside the scope. And asked and answered.
THE WITNESS: Not according to the documents here for 2 and not according to the documents here for 3. And you said 4?
BY MR. SEVERINO:
Q 2, 3, and 20.
A Oh, 20. Which exhibit was 20?
Q Exhibit 3.
A And not according to the documents provided here.
Q Okay. And you said "not according to the documents here." Are you aware of any other documents where that was done?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I'm not aware.
BY MR. SEVERINO:
Q Okay. And we also confirmed earlier that students 4 and 9 were both provided with recommended sanctions and the opportunity to accept those sanctions. Correct? And exhibit -- student 4 is Exhibit 8, and student 9 is Exhibit 10.
MS. DYSON: Objection to the form and outside the scope.



THE WITNESS: Repeat those for me. Which exhibits? Which --
BY MR. SEVERINO:
Q Student 4 would be Exhibit 8.
A Okay.
Q And student 9 is Exhibit 10.
A Exhibit 8 was given them. Student 4, Exhibit 8. And Exhibit 9, yes, was given them.
Q It should be student 9, Exhibit 10.
A Correct. Student 9, Exhibit 10.
Q Okay. So what is USF's explanation why students 2, 3, and 20 were not provided the same opportunity as students 4 and 9?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I don't have that information.
MR. SEVERINO: Okay. All right. We can go off the record.
THE VIDEOGRAPHER: The time is 12:16 p.m. We're off video record.
(The deposition was recessed from 12:16 p.m. to 1:32 p.m.)
THE VIDEOGRAPHER: The time is 1:32 p.m. We're back on the video record.
THE WITNESS: I needed to go back and



clarify my response to your last statements regarding student number 2 and number 3.
BY MR. SEVERINO:
Q Mmm-hmm.
A I said based on the documents that were in front of me they were not given a notice of recommended sanctions and the opportunity to accept responsibility, and that was true based on the documents I had. At lunch, I went and looked up their records, and both of them were given a charge letter with recommended sanctions, and both were given the opportunity to accept responsibility. And the recommended sanctions were the same. It -- from the initial review to the actual results of the hearing.
Q And what did you do to locate those documents?
A I pulled up -- I had the secretary at Student Conduct pull up the Simplicity doc- -- case.
Q And that's the charge letter?
A That is the -- the initial -- the letter after initial review meeting with the charge letter, yes.
Q Do you have copies of that for me?
A I do not have them here.



MR. SEVERINO: Can we get copies of those?
MS. DYSON: No. Because they weren't part of the Court's order. So under FERPA, we can't produce them.
MR. SEVERINO: Well, the Court overruled the FERPA objections, number 1. Number 2, anything she relies on to refresh her recollection I'm entitled to.
MS. DYSON: The Court's order is very specific about the documents that we can produce. I'm glad to talk about it further with you, but right now, I don't see how we can produce them without having an issue with FERPA.
MR. SEVERINO: The Court overruled the FERPA objection at our hearing.
MS. DYSON: That's not accurate. The Court ordered certain documents to be produced. The documents that she looked at were not among those documents that the Court ordered to be produced.
MR. SEVERINO: The Court at the hearing specifically said "I agree that FERPA does not protect these documents," and then he ordered a category of documents be produced. And now she

Page 106

is refreshing her recollection at her deposition with those documents, which means I'm entitled to them under the Federal Rules of Evidence.
MS. DYSON: I don't agree with you that -- that that can overcome the FERPA issue, and the Court did not issue a blanket ruling that FERPA doesn't apply. That's the issue that I have.
MR. SEVERINO: Well, we'll go back to the Court, and we'll reserve our right to redepose Ms. McDonald on those documents and those issues.
MS. DYSON: Well, they weren't noticed to begin with for this deposition, so we would object to that.
MR. SEVERINO: Okay. Well, we'll let the Court handle that.
BY MR. SEVERINO:
Q With respect to the other documents in your binder, do you have copies of those for me?
A I just have this (indicating).
MR. SEVERINO: Can I get a copy of those?
MS. DYSON: Sure.
MR. SEVERINO: Okay. Can I get them before I leave today?

Page 107

MS. DYSON: Oh, yeah. You can take that -- that binder can be attached as an exhibit, as far as I'm concerned.
MR. SEVERINO: All right. We can do that.
MS. DYSON: Is there something in here --
THE WITNESS: Well, I just wrote my personal notes in there.
MS. DYSON: That's okay.
MS. ADAMCHAK: It's on the last page.
MS. DYSON: We can make a copy for the Court Reporter.
BY MR. SEVERINO:
Q Take a look at Exhibit 2 for me. So what you just referred to related to Exhibit -- I mean -- sorry -- students 2 and 3. Correct?
A Yes.
Q And the date -- what's the date of that -- the charge letter?
MS. DYSON: Objection. Outside the scope.
BY MR. SEVERINO:
Q You can answer. The charge letters that you found on a break, what's the date of those?
A I don't know the exact date of them now.
Q It's not on there?
A No.

Page 108

Q There's no date on the charge letter?
A I don't have the charge letter at hand.
Q What were you referring to then?
A When I went to the case, when I looked at it, but I didn't print them out because I don't --
Q I thought you just looked at it in your binder. What was the last page?
A No. I looked at my notes. I wrote notes after calling the secretary to read it to me.
Q Okay.
A (Indicating.)
Q Okay. So the secretary read you the charge letter and you took notes?
A Mmm-hmm.
Q Okay. And she was easily able to access those charge letters from 2015?
A Yes.
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes. That would have been 2016.
BY MR. SEVERINO:
Q And that would have been in the -- what date would that have been? Can you tell me based on the chart, Exhibit 2?
MS. DYSON: Objection. Outside the scope.

Page 109

THE WITNESS: It would have been around the June 21st notification of charges and before the date of the formal hearing.
BY MR. SEVERINO:
Q I know you testified earlier that you don't know who actually prepared this spreadsheet.
A Mmm-hmm.
Q Do you know who would know who prepared this spreadsheet?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: University counsel and the director of student conduct, Melissa Graham, would know who contributed to it. I think legal counsel would know who actually created the spreadsheet.
BY MR. SEVERINO:
Q Melissa Graham is the director of what? I'm sorry.
A Student conduct and ethical development.
Q Did you ask your secretary during the break to take a look at any other documents with respect to the students on Exhibit 2?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No. For 2 and 3, just asked for the initial review letter.

BY MR. SEVERINO:
Q You didn't ask for student 20 as well?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No, I did not.
BY MR. SEVERINO:
Q Okay. So with Mr. Dingle, he is -- on the chart, he's student 20. Let's take a look at Mr. Dingle as student 20.
What was the definition of consent that was used in Mr. Dingle's formal hearing in reaching the conclusion that he was responsible for the charges?
MS. DYSON: Are you referring to a particular topic area?
MR. SEVERINO: Yes. 11 -- 11, 12, 13.
MS. DYSON: Well, which one is it that you are asking the question?
MR. SEVERINO: It will be all three. It's in all three of those.
MS. DYSON: Well, none of them ask for the definition used with respect to Mr. Dingle. None of those topic areas do.
BY MR. SEVERINO:
Q What was the definition of consent in 2016 at the time of Mr. Dingle's disciplinary process?


MS. DYSON: Objection. Outside the scope. And objection to the form.
THE WITNESS: The University Policy 004 provides a definition of consent. The phrase and/or actions that clearly indicate a willingness to engage in a specific activity is interpreted according to the plain meaning of those words.
BY MR. SEVERINO:
Q And did you just read that from the documents that counsel prepared and provided to you?
A I did.
Q Did you review Policy 004 in preparation for today's deposition?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No, I did not.
(Exhibit Number 15 was marked for identification.)
BY MR. SEVERINO:
Q Exhibit 15.
MS. DYSON: Do you have the stapler?
MR. SEVERINO: I don't know if it will work. It seems a little thick.
BY MR. SEVERINO:
Q Was this Policy 004, Sexual


Misconduct/Sexual Harassment, that was in effect in November of 2017?
A I don't know if there's one that was in between these. This says it was last reviewed on October 15th -- October 2015.
Q Did you --
MS. DYSON: Are you on topic area 13 now?
MR. SEVERINO: Yes.
MS. DYSON: Okay.
BY MR. SEVERINO:
Q Did you do anything before today's deposition to determine which sexual misconduct/sexual harassment policy was in effect in November of 2017?
A So the University says that the October 19th, 2015, is the policy in effect for years 2016 until January 3rd, 2018. So, yes.
Q And, again, you read from the binder that your counsel prepared?
A Correct.
Q But you didn't do anything to determine whether or not there were policies in between?
A No.
MS. DYSON: Objection. Outside the scope.
BY MR. SEVERINO:


Q And can you -- let me back up. Exhibit 15 is Bates labeled 498 to 521. Can you direct me to where the definition of consent is in Exhibit 15.
A On 00519, "Consent is defined, according to Florida law, as means intelligent, knowing, and voluntary consent and does not include coerced submission or submission out of fear. Consent shall not be deemed or construed to mean the failure by the alleged victim to offer physical resistance to the offender."
On page 23 or 00520, consent is defined -- do you want me to read that whole thing?
Q Yeah. Sure. Go ahead.
A "Consent means an informed, knowing, and voluntary agreement to engage in sexual activity. Consent to engage in sexual activity must exist from beginning to end to each instance of sexual activity. Consent is demonstrated through mutually understandable words and/or actions that clearly indicate a willingness to engage in a specific sexual activity. Silence or an absence of resistance alone, without actions evidencing permission, does not imply consent."
Q You can stop there, unless you'd like to read the rest of it. I'm not going to ask you about

the rest of it.
A Okay.
Q So you just read for me and directed me to two definitions of consent here in Exhibit 15.
A Mmm-hmm.
Q Did USF use both definitions that you just read to me?
MS. DYSON: Object to the form and object outside the scope.
THE WITNESS: What does that mean? Used in what?
BY MR. SEVERINO:
Q Well, there seem to be two different -- in the formal administrative hearing process -- and we'll limit it with respect to student number 20 -- it appears to be two different definitions. There's different words used. Would you agree?
MS. DYSON: Object. Outside the scope and as to form.
THE WITNESS: There are different words used.
BY MR. SEVERINO:
Q Okay. So did USF use a combination of these two definitions, or did they use one or the other?



MS. DYSON: Object to the form and outside the scope.
THE WITNESS: So USF didn't charge this policy. USF charged for Student Code of Conduct.
BY MR. SEVERINO:
Q Okay. So what definition under the Student Code of Conduct was there for consent?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: "Any sexual intercourse however slight, with any object or any individual upon another individual that is without consent and/or by force. Intercourse includes vaginal penetration by a penis, object, tongue or finger, anal penetration by a penis, object, tongue, or finger, and oral copulation no matter how slight the penetration or contact."
And 4.14(c) -- 4.14(c), "non-consensual Sexual Contact - Any intentional sexual touching, however slight, with any object, by any individual upon an individual, that is without consent or by force. Sexual contact includes intentional contact with the breasts, buttocks, groin, or genitals, or touching any



with any of these body parts, or making another touch you or themselves with or any of these body parts; any intentional bodily contact in a sexual manner, though not involving contact with/of/by breasts, buttocks, groin, genitals, mouth, and/or orifice."
BY MR. SEVERINO:
Q And for the record, where were you just reading that from?
A That is from the Student Code of Conduct.
Q Can you provide the section, please?
A Yes. It's on -- do you want the page?
Q Sure.
A For the Bates 00215.
Q Okay. And I did hear you use the term "without consent" and "non-consensual." Are those two terms or phrases defined anywhere in the Student Code of Conduct beyond what you just read?
MS. DYSON: Object to form. Outside the scope.
THE WITNESS: Not that I see.
BY MR. SEVERINO:
Q So let's take -- let's go back to Exhibit 15 for me, Bates label 520, where you read that definition of consent. And the heading there



reads "Consent, Coercion and Incapacitation Under University Policy."
When it's referring to "University Policy," do you know whether it's referring to this specific policy or the university policies as a whole?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I didn't write this, so I'm not sure what they were referring to.
BY MR. SEVERINO:
Q And within this definition, there's a sentence that reads "Consent is demonstrated through mutually understandable words and/or actions that clearly indicate a willingness to engage in a specific sexual activity."
So under this definition, under this policy, consent can be demonstrated through actions alone. Correct?
MS. DYSON: Objection. Outside the scope. Objection to the form.
THE WITNESS: Say that to me again.
BY MR. SEVERINO:
Q Yeah. Under this policy and definition of consent, consent can be demonstrated through actions alone and not words. Correct?

MS. DYSON: Objection to the form. Outside the scope.
THE WITNESS: Yes. And -- and/or actions. Phrased as "and/or actions." Yes.
BY MR. SEVERINO:
Q Right. So actions alone can demonstrate consent under this definition. Correct?
A According to the plain meaning of those words, yes.
Q Was Kristin Steffen provided any training or education with respect to this definition of consent and how it was to be applied in administrative hearings?
MS. DYSON: Objection to form. Outside the scope.
THE WITNESS: What topic are you referring to?
BY MR. SEVERINO:
Q 16.
A So all of the policies and procedures, including training, were made available to Kristin Steffen during her employment, if anyone else was serving as an administrative hearing officer. The processes for investigating, response -- responding to, and handling the



complaints involving sexual misconduct were set forth in Regulation 6.0021, Policy 0.004, and Diversity and Equal Opportunity Policy 0.007. And the formal hearing process is set forth in the Student Code of Conduct Regulation 6.0021.
Q And, again, you read that verbatim from the binder in front of you?
A Yes.
Q Was Ms. Steffen provided specific training on how to interpret and apply the definition of consent in Exhibit 15 that we're talking about?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I don't have the specific training and the specific verbiage of the training beyond what is in the policies and procedures.
BY MR. SEVERINO:
Q But you didn't review any of the policies and procedures before today in preparation for this depo, did you?
MS. DYSON: Objection. Outside the scope.
THE COURT REPORTER: I didn't hear you.
THE WITNESS: Correct.
BY MR. SEVERINO:
Q In serving as an administrative hearing



officer, specifically with respect to student number 20, was Ms. Steffen provided any training on how to weigh the evidence at the hearing?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: University provided training to Kristin Steffen regarding the process for investigating, responding to, handling complaints involving sexual misconduct, as well as conducting hearings, including the weighing of evidence, effective questioning and listening, creating meaningful learning outcomes, and developing educational sanctions. Trainings consist of seminars, meetings or conferences, review of policies and procedures, as well as on-the-job training and instruction.
BY MR. SEVERINO:
Q What specific training did Ms. Steffen receive with respect to weighing the evidence at a formal hearing?
A Based on the information that's reasonably available, we're unable to confirm what is in each training activity.
Q So how do you know that she was trained on weighing the evidence if you don't know what was in each training activity?



MS. DYSON: Object to the form. Outside the scope.
THE WITNESS: I know that we do training on the process and the procedures of the hearing.
BY MR. SEVERINO:
Q But USF has no record that Ms. Steffen was actually trained on weighing the evidence at an administrative hearing?
MS. DYSON: Object to the form.
THE WITNESS: We don't have a document to show that.
BY MR. SEVERINO:
Q All right. What training -- what specific training was Ms. Steffen provided with respect to determining educational sanctions?
A I don't have the information of the specifics of those trainings.
Q I understand you don't have them as you sit here today, but do you know whether or not those documents actually exist?
A I do not.
Q What specific --
MS. DYSON: Can we take a break real quick?

Page 122

MR. SEVERINO: Yes.
THE VIDEOGRAPHER: The time is 1:58 p.m. We're off the video record.
(The deposition was recessed from 1:58 p.m. to 2:02 p.m.)
THE VIDEOGRAPHER: The time is 2:02 p.m. We're back on video record.
BY MR. SEVERINO:
Q Before we took a break, Ms. McDonald, I believe my last question was: What specific training was provided to Maria Zale Cutsinger with respect to the definition of consent in Exhibit 15 and application of that definition in the student disciplinary process for student 20?
A Did you --
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Did you say Cutsinger or Steffen?
BY MR. SEVERINO:
Q I'm on Ms. Cutsinger now.
A Okay. So my understanding is the University provided a list of the seminars and conferences that were attended by both -- by Maria Zale Cutsinger and produced the information that was available regarding the seminars or

Page 123

conferences, which identified the topics covered. They were -- several of them are provided by a third party, and so their content would be available from the third party. Any other information than that, there's nobody else at the University would probably have that.
Q And you said through my understanding. Where did you obtain that understanding?
A From the document that was provided by legal counsel.
Q The document that you're looking at right now?
A Yes.
Q What training -- strike that.
What specific training was provided to Maria Zale Cutsinger with respect to weighing evidence throughout the disciplinary process with respect to student 20?
MS. DYSON: Object to the form and outside the scope.
THE WITNESS: So, as mentioned, the University gave a list of all the seminars, conferences, and trainings that Maria Cutsinger would have been participating in.
BY MR. SEVERINO:

Page 124

Q Do any of those reference weighing evidence?
A I don't have that in front of me, but it was identified which topics were covered, what we produced.
Q And how were those identified?
A I don't have that information.
Q If you could -- I don't know what exhibit number it is because I only had one copy. It's the hearing transcript. It's probably the thickest document you have. It's binder clipped, it looks like. It's down in the bottom. I see it. There you go.
A Yes.
Q I think that's it. What exhibit is that for the record?
A Exhibit 5.
Q Okay. Can you read the stamp on the top right of Exhibit 5?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: "Received" -- is that the one?
BY MR. SEVERINO:
Q Yes.
A "Received December 18, 2017."

Page 125

Q So that written transcript of the formal hearing for student 20, which is Mr. Dingle, was received by USF ten days after the formal hearing? Is that correct?
MS. DYSON: Object. Outside the scope.
BY MR. SEVERINO:
Q Take a look at Exhibit 2 and compare the date of the formal hearing. It's right in front of you, the chart exhibit.
A Yes. The formal hearing was on December 8th, and this document was received on -- the stamp says December 18th.
Q And I believe there are initials at the bottom of that stamp.
A Mmm-hmm.
MS. DYSON: Objection. Outside the scope.
THE WITNESS: SRR. I think that's a -- that's CA.
BY MR. SEVERINO:
Q Okay. And what does SS -- SRR stand for?
A Student rights (inaudible) --
MS. DYSON: Objection. Outside the scope.
THE COURT REPORTER: I didn't hear your answer.
THE WITNESS: Student rights and

responsibilities.
BY MR. SEVERINO:
Q Do you know what the other initials stand for?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Chiqui Aldana.
BY MR. SEVERINO:
Q Who is Chiqui Aldana?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: She was the administrative assistant during that time for the Office of Student Rights and Responsibilities.
BY MR. SEVERINO:
Q Why was a written transcript made of the formal hearing for student 20?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Is there a topic on this?
MS. DYSON: No.
THE WITNESS: Okay.
BY MR. SEVERINO:
Q No, because we had a disagreement about producing these documents, so I'm asking you now.
A I don't know.
Q Okay. Is it USF's practice to make written transcripts of the formal hearings?


MS. DYSON: Objection. Outside the scope.
THE WITNESS: I don't -- is it normal practice for every case? No.
BY MR. SEVERINO:
Q Okay. How is it determined which cases have a written transcript?
A I don't know.
MS. DYSON: Objection. Outside the scope.
BY MR. SEVERINO:
Q Who would know that?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Legal counsel.
BY MR. SEVERINO:
Q Can you grab the USF Student Code of Conduct 6.0021.
A Mmm-hmm.
Q Is that Exhibit 7?
A 9.
Q 9. Okay.
Under the Student Code of Conduct, which we've marked as Exhibit 9, does the Office of Student Rights and Responsibilities have discretion to postpone a formal hearing to gather additional information?
MS. DYSON: Objection. Outside the scope.


THE WITNESS: Can you restate your question?
BY MR. SEVERINO:
Q Yes.
Under the Student Code of Conduct that you have in front of you, which is Exhibit 9, does the Office of Student Rights and Responsibilities have the discretion to postpone a formal hearing to gather additional evidence or information?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes.
BY MR. SEVERINO:
Q Okay. And do you know why that wasn't done in Mr. Dingle's case?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: It -- not in that case, I do not.
BY MR. SEVERINO:
Q So on Exhibit 2, with respect to student 20, Mr. Dingle, it says here that the date of the formal hearing was December 8, 2017. Do you see that?
A Yes.
Q Under the Student Code of Conduct, what is the purpose of the formal hearing?


MS. DYSON: Objection. Outside the scope.
THE WITNESS: The formal hearing is to hear all of the information of the case, to hear witnesses, to then determine responsibility or not responsibility and appropriate sanctions.
BY MR. SEVERINO:
Q Would it be fair to say that the purpose of the hearing is to get to the truth?
MS. DYSON: Objection. Outside the scope. Objection to the form.
THE WITNESS: The purpose of the hearing is to be able to review all of the information we have available at the time.
BY MR. SEVERINO:
Q So does the University not care about the truth of the incident?
MS. DYSON: Object to the form. Outside the scope.
THE WITNESS: The University would need to consider everything that it has available to them.
BY MR. SEVERINO:
Q And if it doesn't have something available to it, the University can postpone that hearing to

Page 130

gather additional information. Correct?
MS. DYSON: Objection. Outside the scope. Objection to the form.
THE WITNESS: The University could delay the hearing but not typically to get more information.
BY MR. SEVERINO:
Q When you say "not typically," where does that knowledge come from?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: History with the -- with the cases.
BY MR. SEVERINO:
Q So what would be the -- go ahead.
A No. Go ahead.
Q What would be the purpose of postponing the formal hearing then --
MS. DYSON: Objection.
BY MR. SEVERINO:
Q -- if it's not to gather additional information?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Could be that there's a university holiday, could be that there's a reason why the -- a medical reason why someone

Page 131

wouldn't be available for it.
BY MR. SEVERINO:
Q Are those reasons anywhere in the Student Code of Conduct?
A The Student Code of Conduct, it does say the formal hearing will be scheduled to take place within six weeks from the date of the charge letter, except -- except in circumstances which may be identified by OSRR, which may include holidays or University scheduling conflicts.
Q Okay. So in addition to holidays or scheduling conflicts, the OSRR can also postpone it to gather additional information, though. Correct?
MS. DYSON: Objection to the form. Outside the scope.
THE WITNESS: They are not -- it's not forbidden to do that -- correct -- in the code.
BY MR. SEVERINO:
Q Well, not only is it not forbidden, it's actually expressly authorized in the code. Correct?
MS. DYSON: Objection to the form. Objection. Outside the scope.
THE WITNESS: It's authorized in the code to -- and in -- in circumstances to not be within the six weeks of the date of the charge

Page 132

letter.
BY MR. SEVERINO:
Q Okay. And what would those circumstances be other than holiday or scheduling conflicts?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: There could be any number of circumstances. There could be weather. We could have a hurricane. We could have that none of the -- that members of the -- we can't find a board during that time. There could be a number of different reasons.
BY MR. SEVERINO:
Q What about the availability of witnesses?
MS. DYSON: Objection to the form. Outside the scope.
THE WITNESS: Could be but does not have to be.
BY MR. SEVERINO:
Q Take a look at Exhibit 4 for me, please. 3 and 4, actually. On Exhibit 3, take a look at Bates 72, which is page 2. And you'll see there it says, "The following are the witnesses who will be requested/asked to testify:
"Officer D. Madsen" and then "Student 1."
Do you see that?

Page 133

A Yes.
MS. DYSON: Objection. Outside the scope.
BY MR. SEVERINO:
Q Okay. And then if you take a look at Exhibit 4, "University Witnesses," it identifies "Officer Danyelle Madsen" and "Student 1" again.
Do you see that?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes.
BY MR. SEVERINO:
Q Okay. What efforts did the University make to secure the attendance of Officer Danyelle Madsen at the formal hearing?
MS. DYSON: Objection. Outside the scope. Are you relating to a particular topic area?
MR. SEVERINO: Topic 5.
THE WITNESS: So we would provide a notice of the formal hearing to the witness.
BY MR. SEVERINO:
Q That's it? Do you do anything else to secure the attendance at the hearing?
A We send them a letter that tells them when the hearing is, what time to be there, when they -- actual notice of the formal hearing.
Q Is there any follow-up to check to see if

Page 134

they are available?
A Not that I know of.
Q What happens if they don't show up?
MS. DYSON: Objection to the form. Outside the scope.
THE WITNESS: We move on without them.
BY MR. SEVERINO:
Q Even if they have relevant information?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Depends on if it was to be provided for the hearing.
BY MR. SEVERINO:
Q Well, how would you know if they are coming to testify live?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: If we don't have it before the hearing, then it would not be considered in the hearing --
BY MR. SEVERINO:
Q So you --
A -- unless they were actually present to give their testimony.
Q That's what I'm saying. That's my question. So how do you know what evidence they are going to present if they are going to only be

Page 135

testifying live?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: We don't.
BY MR. SEVERINO:
Q And so if they don't show up, you just move on, no efforts are made to further secure their attendance?
MS. DYSON: Objection. Outside the scope, and objection to form.
THE WITNESS: We cannot require witnesses to come.
BY MR. SEVERINO:
Q But you can postpone that hearing to try again to get them there, can you not?
MS. DYSON: Objection to the form and outside the scope.
THE WITNESS: We could if we knew ahead of time and needed to, but we would also be concerned about the students that are involved in the process, especially provisional hearings.
BY MR. SEVERINO:
Q I don't understand how you would know that they are not going to show up if all you do is send them a letter and you don't follow up with them.

Page 136

MS. DYSON: Objection to the extent that's even a question. Outside the scope.
BY MR. SEVERINO:
Q Can you explain that?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: They can contact the office and say that they are not available.
BY MR. SEVERINO:
Q Do you know whether or not that happened with Officer Danyelle Madsen in this case?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I do not.
BY MR. SEVERINO:
Q So, just to be clear, USF's policy is if a witness doesn't show up USF just moves on with the hearing regardless of the information that that witness may present?
MS. DYSON: Objection. Outside the scope and asked and answered.
THE WITNESS: We have no way of requiring or prompting witnesses to come except for notifying them of the hearing.
BY MR. SEVERINO:
Q What communications did USF have with campus police regarding Mr. Kevaughn Dingle's case?

Page 137

MS. DYSON: Which topic area are you on?
MR. SEVERINO: That would be 15.
THE WITNESS: So we -- because there was a request and a court order to expunge -- for the University Police Department to expunge its records, we don't have that information. Based on what is available, there were no communications with the police department about the investigation except for those reflected in the transcript of the formal hearing.
BY MR. SEVERINO:
Q Did you talk to any of the USF employees who were involved in Mr. Dingle's disciplinary process and whether or not they had communications with campus police?
MS. DYSON: Object to the form. Outside the scope.
THE WITNESS: In preparation for this deposition?
BY MR. SEVERINO:
Q Yes, ma'am.
A No, I did not.
Q In reaching a finding of responsibility for Mr. Dingle, to what extent did USF rely on campus police's investigation?

A That would be up to the hearing officer. I do not know. I did not -- and I did not read the whole transcript for the case.

MS. DYSON: And you're now in -- still in topic area 15?

MR. SEVERINO: Yes.

BY MR. SEVERINO:

Q Did you talk to Ms. Steffen about that in preparation for today?

A Did I? No.

Q Did you talk to anyone other than your counsel about that in preparation for today?

MS. DYSON: Object to the form. Outside the scope.

THE WITNESS: What I do have is that USF did not rely on the police department's criminal investigation in reaching a decision in the Plaintiff's case. However, certain law enforcement records were considered during the formal hearing, which as reflected in the transcript of the formal hearing, the hearing officer received a copy of the synopsis, which was part of the documents reviewed in the formal hearing.

BY MR. SEVERINO:



Q Were are you aware that Mr. Dingle disputed the synopsis that was submitted at the formal hearing?

MS. DYSON: Objection to form and outside the scope.

THE WITNESS: I am not aware.

(Exhibit Number 16 was marked for identification.)

BY MR. SEVERINO:

Q I hand you what's been marked as Exhibit 16. What is Exhibit 16?

MS. DYSON: Object to the form. Outside the scope. What topic area are you on?

MR. SEVERINO: It would be 14.

BY MR. SEVERINO:

Q What is --

A I'm sorry. What was the question?

Q What is Exhibit 16?

MS. DYSON: Objection. Outside the scope.

THE WITNESS: Exhibit 16 is the outcome of the appeal.

BY MR. SEVERINO:

Q And outcome of the appeal for Mr. Dingle. Correct?

A Correct.



Q And it's dated January 9, 2018?

A Correct.

Q And it says here "Dear Kevaughn, on January 3rd, 2018, the Dean of Students Office received your appeal of the outcome from your hearing." And then it gives stated -- "You stated the following reasons..." And ultimately it says here "You missed the deadline for appeal and did not have a strong rationale for missing that deadline."

Do you see that?

A Yes.

MS. DYSON: Objection. Outside the scope.

THE WITNESS: Yes.

MS. DYSON: That's okay.

BY MR. SEVERINO:

Q Do you know how many days that Mr. Dingle missed the deadline by?

MS. DYSON: Objection. Outside the scope.

THE WITNESS: His finding was in 20 -- was December 8, 2017. He would have had to file it within five days from the date of the charge.

BY MR. SEVERINO:

Q Okay. And what is USF's policy concerning granting the request to extend that deadline?

MS. DYSON: Object to the form.



THE WITNESS: There is no policy regarding extending the deadline.

BY MR. SEVERINO:

Q So what about policy for accepting an appeal that was filed after that deadline?

MS. DYSON: Outside the scope. Objection. Outside the scope.

THE WITNESS: Can you repeat the question, please.

BY MR. SEVERINO:

Q Yeah.

Does USF have a policy with respect to accepting or considering appeals after the deadline has passed?

MS. DYSON: Objection. Outside the scope.

THE WITNESS: There is no policy.

BY MR. SEVERINO:

Q In Exhibit 16, does USF have any policy for what a strong rationale is for missing a deadline?

A There is no policy.

Q Okay. How is that determined then?

MS. DYSON: Objection. Outside the scope.

THE WITNESS: By what the person who is accepting or denying the appeal views from the

Page 142

rationale, because they don't have to accept it
at all.
BY MR. SEVERINO:
Q Okay. If you go to 164, it looks like --
A What are you on? I'm sorry.
Q I'm sorry. Exhibit 16, Bates label 164.
A Yes.
Q It appears that this letter came from you?
A Correct.
Q Okay. So what was the strong rationale in this case for not accepting the appeal?
MS. DYSON: Object to the form. Outside the scope.
THE WITNESS: I don't have that. I don't have the appeal. I don't know what the -- the rationale the student gave.
(Exhibit Number 17 was marked for identification.)
BY MR. SEVERINO:
Q Exhibit 17.
A What was the question?
Q I'm going to ask you one now.
A Okay.
Q Did you review this in preparation for your deposition today?

Page 143

MS. DYSON: Objection. Outside the scope.
THE WITNESS: No, I did not.
BY MR. SEVERINO:
Q Now that you've looked at Exhibit 17, does this refresh your recollection at all as to what the, quote, strong rationale was or was not for not accepting his appeal after the deadline had passed?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes. Being emotionally and mentally upset over -- over an incident is not a strong rationale for not meeting the deadline.
BY MR. SEVERINO:
Q Okay. What would be a strong rationale?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Not being able to actually do the appeal, if they had been unconscious.
BY MR. SEVERINO:
Q Okay. And I know you said -- you read the first part here, emotionally and mentally upset. And the next sentence said he has reading comprehension issues and had just started a job with FedEx. Is that not a strong enough rationale, coupled with the holidays?
MS. DYSON: Objection. Outside the scope.

Page 144

THE WITNESS: No, it would not.
BY MR. SEVERINO:
Q So, so far, the only strong rationale would be if someone was unconscious?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: He did not provide a strong rationale in what -- in what he said.
BY MR. SEVERINO:
Q Okay. So I'm asking: What are examples of a strong rationale other than someone being unconscious?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Something where they were not able to actually file the appeal in the amount of time.
BY MR. SEVERINO:
Q And that's at the discretion of the person reviewing the appeal? Correct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Correct.
BY MR. SEVERINO:
Q How long have you been with USF?
MS. DYSON: Objection to the form. Objection. Outside the scope.
THE WITNESS: 12 years.

Page 145

BY MR. SEVERINO:
Q Let me rephrase that.
You've been employed by USF for 12 years?
MS. DYSON: Objection to the form. Objection. Outside the scope.
THE WITNESS: Correct.
BY MR. SEVERINO:
Q Mr. Dingle was attending USF on an athletic scholarship. Correct?
MS. DYSON: Are you on a particular topic?
MR. SEVERINO: 7.
THE WITNESS: It's my understanding he was.
BY MR. SEVERINO:
Q And as a student athlete on an athletic scholarship, was Mr. Dingle personally responsible for paying for his housing?
MS. DYSON: Object to the form.
THE WITNESS: The housing contract is with the students, and the agreement is separate from and not contingent upon financial aid or scholarship award notification.
BY MR. SEVERINO:
Q Who paid for Mr. Dingle's housing when he was enrolled at USF?

MS. DYSON: Object to the form.
THE WITNESS: Mr. Dingle's room and board charges were paid by the athletic department.
BY MR. SEVERINO:
Q Okay. Did Mr. Dingle ever receive an invoice or a bill to pay for housing charges while he was enrolled at USF?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: The charges -- we don't provide bills. Charges are put on their OASIS account and then can be satisfied by financial aid or scholarship.
BY MR. SEVERINO:
Q So the athletic department or whoever may be responsible would go into OASIS and pay the housing dues if it was a student athlete on scholarship?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: They would pay the University to apply those charges to the student. The -- not the charges. The payments to the student charges.
BY MR. SEVERINO:
Q After Mr. Dingle was expelled from USF, why did the University place a financial hold on his



file?
MS. DYSON: Which topic area are you on now?
MR. SEVERINO: 8.
THE WITNESS: Because he still owed for the housing contract.
BY MR. SEVERINO:
Q But he was never responsible for paying. Correct?
MS. DYSON: Object to the form.
THE WITNESS: The housing contract is a binding agreement with the student and requires -- regardless of whether the student is paying full tuition or provided with an athletic, academic, or financial aid, they are responsible for the housing charges, which can be satisfied by financial aid.
BY MR. SEVERINO:
Q Or by an athletic scholarship?
A Or by the scholarship. If provided for a full athletic scholarship, the condition is that the student be a full-time attendant at the University during the academic year and was subject to cancelation if Mr. Dingle engaged in misconduct that brings disciplinary action from the University. The



financial aid agreement was canceled on January 8th, and therefore he would still have the housing contract to fulfill the obligation of.
Q And did you read that from the binder that was provided to you by counsel?
A Yes.
MR. SEVERINO: Let's take like five or ten minutes, and I'll try to wrap up in about 20, 30 minutesish before it gets --
MS. DYSON: Okay. I appreciate that.
THE VIDEOGRAPHER: The time is 2:39 p.m. We're off video record.
(The deposition was recessed from 2:39 p.m. to 2:55 p.m.)
THE VIDEOGRAPHER: The time is 2:55 p.m. We're back on video record.
BY MR. SEVERINO:
Q Ms. McDonald, I know we've -- on Exhibit 2 the spreadsheet, we've talked about the --
A Let me grab it. Hang on.
Q It's folded.
A Oh. Okay.
Q All right. So we've talked about determining the length of investigation on this chart. I know you provided testimony of, you know,



kind of the parameters of that based on these dates, but my question now is: Does the University have a policy regarding the typical length of investigation in these cases?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Wait. You said "policy," and then you said "typical." What are you --
BY MR. SEVERINO:
Q I'm saying does USF have a policy with respect to the kind of standard length of investigation under the Student Code of Conduct?
A We have a policy of -- that it's not supposed to take longer than a certain time frame.
MS. DYSON: Which topic area are you on?
MR. SEVERINO: 9.
MS. DYSON: 9?
THE WITNESS: So in the code of conduct, when OS -- when OSRR receives the referral that is filed within a reasonable time following discovery of an alleged violation and no later than six months after the discovery except in extraordinary cases.
BY MR. SEVERINO:
Q Where were you reading from?
A Oh, that's when they can receive a

referral. I'm reading from Exhibit 9. So on page 18 of Exhibit 9, it says, "The initial review officer will conclude the initial review process within six weeks of receipt of referral..."
Q How is that -- strike that.
Why is six weeks the period of time given to complete the initial review process?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I don't know the reason for that, if there was legislation at the time or why we had six weeks specifically.
BY MR. SEVERINO:
Q Okay. So that's the initial review process.
A Mmm-hmm.
Q Are there any other timing considerations throughout the process?
A With provisional suspensions, there are as well. Are you just talking about the formal hearing?
Q We'll start with the formal hearing.
A Okay. So the choice needs to be given to the student within five days of the charge letter. Formal hearing must be within five days. The formal hearing will be scheduled to take place within six



weeks from the date of the charge letter. Schedule a time to review the documents that may be used in the formal hearing no less than three days before the formal hearing. The administrative officer then has five days -- will have five days to reach an outcome. It does not have to take five days. The final OSRR decision has to be rendered within five days. The appeal has to be filed within five days. That's the formal process.
Q Okay. So it sounded like there were two six-week periods accounted for in the Student Code of Conduct. The first is six weeks to complete the initial review process. Correct?
MS. DYSON: Objection.
BY MR. SEVERINO:
Q Up to six weeks to complete the initial review process. I believe that's what you testified to.
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Six weeks -- the initial review officer will conclude the initial review process within six weeks.
BY MR. SEVERINO:
Q Okay.
A And then the hearing has to take place



within six weeks.
Q From the charge letter?
A From the charge letter.
Q Okay. All right. I believe you just testified that the final decision is to be rendered within five days of the formal hearing. Is that correct?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: The hearing officer or the conduct board has five days to reach an outcome. The director renders the final decision within five days of the receipt of the outcome from the hearing officer.
BY MR. SEVERINO:
Q All right. What is the director's role in that process?
MS. DYSON: Object to the form. Outside the scope.
THE WITNESS: Is there a topic on this one?
MS. DYSON: No, not that I'm aware of.
BY MR. SEVERINO:
Q I disagree with that. You can go ahead and answer.
A So the -- there are recommendations to the



director, and then the director would determine whether there's going to be any difference between the recommendation and the decision, and then those reasons will be presented to the charged student.
I don't -- so tell me the question -- ask me the question again.
Q Let me ask you this: Did the director in respect to student number 20, Mr. Dingle, review the outcome from the hearing officer and render a final decision?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: There was a final decision rendered by -- did you give me an exhibit of the outcome letter for 20?
MR. SEVERINO: I don't know if we have it. Here it is. I'll give you this. I'll mark it as 19. Hand me that stapler.
(Exhibit Number 19 was marked for identification.)
BY MR. SEVERINO:
Q I've only got one.
A The formal -- the outcome from the administrative hearing was given by Jonathan Monti, the interim associate director.
Q And as the interim associate director who

Page 154

issued Exhibit 19, do you know what he reviewed to uphold the outcome provided by the administrative hearing officer?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: He would have reviewed what the hearing officer gave him as the recommendation.
BY MR. SEVERINO:
Q Would he have reviewed the file at all?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I don't know if he did or not.
BY MR. SEVERINO:
Q But would that be the standard practice of the director or designee in rendering the final decision?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: When you say "the file," what do you mean?
BY MR. SEVERINO:
Q The file that was considered by the administrative hearing officer in the formal hearing.
A So the --
MS. DYSON: Objection. Outside the scope.

Page 155

THE WITNESS: So the hearing packet or reviewed the entire -- listened to the entire hearing?
BY MR. SEVERINO:
Q I don't know. You tell me. What would be the standard protocol when he's reviewing stuff to either uphold or alter the outcome that the hearing officer reached?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: It would be up to him to determine what he wants to review.
BY MR. SEVERINO:
Q Okay. Is there any USF policy or procedure that would provide guidance to him on that issue?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: No. Not to my knowledge.
BY MR. SEVERINO:
Q During the investigation of Mr. Dingle's incident, do you know whether USF ever listened to the audio recording of his interview with campus police?
MS. DYSON: Are you on a particular topic area?
MR. SEVERINO: Yes. 10.

Page 156

THE WITNESS: So USF reviewed the incident report forms, the command notification, the synopsis of USF17OFF001552, document provided by Mr. Dingle, interview of the complaining student, emergency provisional suspension hearing, and the formal hearing.
BY MR. SEVERINO:
Q So then USF's answer to that question would be no, they did not listen to the audio recording of Mr. Dingle's interview with campus police? Is that correct?
A That -- we do not have knowledge that the -- that it was listened to.
MR. SEVERINO: Uh-oh. We made one mistake. Real quick with the numbers --
MS. DYSON: Is it 19?
MR. SEVERINO: It's going to be 18.
MS. DYSON: I thought I had 19.
MR. SEVERINO: Let's fix that so we don't make it difficult for you.
MS. DYSON: I couldn't find --
MR. SEVERINO: No. I went there instead of there (indicating). So we'll fix that. Take this one, and I'll make a new one for 19. Put it on top of that.

Page 157

THE COURT REPORTER: Do you want to give me the one that doesn't have this?
MR. SEVERINO: Yes, I do have one. Here.
(Exhibit Number 18 was marked for identification.)
MR. SEVERINO: So 18 is Bates 71 through 74. No. I'm sorry. 153 through 155. That's Exhibit 18 now.
MS. DYSON: Okay.
MR. SEVERINO: Sorry for that confusion. Now I need a new sticker. So now we're on Exhibit 19. Here we go. Let me show you these two together.
(Exhibit Numbers 19 and 20 were marked for identification.)
BY MR. SEVERINO:
Q Okay. I'm going to hand you 19 and 20.
MS. DYSON: Which one is 19? Is it the complaint?
MR. SEVERINO: Yes. And then 20 is the affirmative defenses.
MS. DYSON: Anthony, can you hand the stapler down?
MR. SEVERINO: Yes.
MS. DYSON: Thank you.

Page 158

BY MR. SEVERINO:
Q All right. So we'll look at Exhibit 20 first. Go to page 22 of Exhibit 20.
Let me back up. What is Exhibit 20?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Exhibit 20 is "Defendant's Answer and Defenses to Plaintiff's Amended Complaint and Jury Demand."
BY MR. SEVERINO:
Q Did you review this in preparation for your deposition today?
A No, I did not.
Q Okay. So now turn to page 22. All right. 22 is Defendant's second defense, which reads "Plaintiff has not properly or timely satisfied the conditions precedent to file this lawsuit or bringing these claims. Thus, Plaintiff is not entitled to relief and this Court does not have jurisdiction over those claims."
So my question is: What facts does USF have to support that second defense?
MS. DYSON: So you're on topic 2. Correct?
MR. SEVERINO: That's correct.
THE WITNESS: So he did -- he was reminded

Page 159

of his -- on January 9th, 2018, he was reminded of his ability to file a petition for writ of certiorari challenging any suspension or expulsion decision. He did not file the petition. He did not file this -- any action until December 8th, 2021, nearly four years after the expulsion decision.
BY MR. SEVERINO:
Q Do you know what a -- do you know what conditions precedent are?
MS. DYSON: Objection to the form. Outside the scope.
THE WITNESS: No, I do not.
BY MR. SEVERINO:
Q Okay. All right. So take a look now at the third defense. You can just read that one to yourself. It's kind of long, so I'm not going to read the entire defense. Just let me know when you're finished.
A Okay.
Q What facts does USF have supporting and/or refuting that Third Affirmative Defense?
A Is that the same topic?
MS. DYSON: We're on the third defense. The third defense.

Page 160

THE WITNESS: Oh, gotcha.
So U -- USF enacted policies designed to prevent or correct race or sexual discrimination within our Student Code of Conduct, sexual misconduct and sexual harassment, diversity and equal opportunity. The policies provide a mechanism for students to complain of discrimination and for the University to provide remedial actions and supportive measures to address allegations of discrimination. The University's process also includes an opportunity for judicial review of any suspension or expulsion.
Mr. Dingle failed to file any complaint of discrimination under the University's policies, which were available to him. Mr. Dingle did not seek to take advantage of any remedial action or supportive measures by the University. Mr. Dingle failed to challenge the provisional suspension and expulsion decisions through a petition for writ of certiorari, which was made available to him by the University's policy.
Mr. Dingle failed to mitigate his damages, including by failing to take advantage of other

Page 161

educational opportunities available to him, such as at Iowa Central Community College, Garden City Community College, and Florida Memorial University, and by engaging conduct that resulted in his expulsion from Iowa Central Community College.
Based on the information presented during the formal hearing on December 8th, 2017, the Plaintiff was found responsible for violating the University's policies and procedures. Thus, any damages claimed arising from the expulsion were the result of the Plaintiff's own conduct.
BY MR. SEVERINO:
Q And did you just read that verbatim from the notebook provided to you by counsel?
A I did.
Q Did you review that notebook before today's deposition?
A I did.
Q When did you do that?
A What is today? Tuesday?
Q Yes.
A Friday.
Q Do you know whether -- well, let me --

let's take a look at Exhibit 19 real quick. And before we go on, what is Exhibit 19?

A Exhibit 19 is the amended complaint and jury demand.

Q And if you look at page 31, there's Count I that says "Violation of Title VI of the Civil Rights Act of 1964." And if you go to page 34, there's Count II, "Violation of Title IX of the Education Amendments of 1972."

So my question is: All of the things that you just read from that binder as to Affirmative Defense Number 3, are any of those required before Mr. Dingle is entitled to assert the claims that he asserted in his amended complaint?

MS. DYSON: Objection to form and outside the scope.

THE WITNESS: Is there a topic on that?

MS. DYSON: Hmm?

THE WITNESS: Is there a topic on that?

MS. DYSON: No.

BY MR. SEVERINO:

Q Yes. It would be topic 2.

MS. DYSON: No. Topic 2 asks for the facts supporting the defense, which she provided. You're asking for a legal



conclusion.

BY MR. SEVERINO:

Q Well, do you know?

A I do not know.

Q Okay. All right. So let's take a look at the Fifth Affirmative Defense, and we're back to Exhibit 20. Fifth defense, "Plaintiff has an obligation to utilize reasonable diligence to mitigate Plaintiff's damages. To the extent that Plaintiff has failed to mitigate damages, Defendant is not liable to Plaintiff -- Plaintiff for such sums that Plaintiff did or could have mitigated."

So what facts does USF have to support or refute that Sixth Affirmative Defense?

A After his expulsion from USF, Mr. Dingle immediately sought enrollment in Iowa Central Community College. He was offered a full athletic scholarship to the college. He was expelled for violating the Student Code of Conduct by engaging in misconduct. He also lost his full athletic scholarship as a result of the expulsion.

Mr. Dingle enrolled at Garden City Community College, which had a bachelor's -- a bachelor's degree program. He elected not to pursue his bachelor's degree at Garden City Community



College for no reason. Dr. -- Mr. Dingle could have stayed at Garden City to complete his bachelor's degree. Mr. Dingle enrolled at Florida Memorial University, but he only attended for one semester and decided to leave the university without obtaining his bachelor's degree.

Mr. Dingle failed to seek educational opportunities after his expulsion, including seeking enrollment at University of Mississippi Community College, Florida Atlantic University, Florida International University, Iowa Western Community College, Liberty University, University of Florida, University of Kentucky, University of Tennessee, University of Toledo, University of Utah, University of West Florida.

Mr. Dingle also failed to seek admission to any college that did not have a college football program. Mr. Dingle turned down job offers for other positions and has not sought other work since accepting a position at Molly Fulfillment.

Mr. Dingle also sought to expunge the records of the State Attorney's Office and USF Police Department prior to filing this lawsuit, which resulted in the permanent deletion of information and documents. USF is not aware of any



facts refuting the University's fifth defense.

Q And did you read that verbatim from the binder provided to you by counsel?

A I did.

Q Did you review any of the documents -- let me strike that.

Do you know what documents your counsel relied on in preparing that?

MS. DYSON: Objection. Outside the scope.

THE WITNESS: I do not.

BY MR. SEVERINO:

Q Did you review Mr. Dingle's deposition transcripts in preparation for today's deposition?

MS. DYSON: Objection. Outside the scope.

THE WITNESS: I did not.

BY MR. SEVERINO:

Q Who is the secretary that you spoke to on the break regarding students 2 and 3?

A Tammy Moscato.

Q And did you speak to her alone?

A I spoke to her with counsel present.

Q And did you take notes of that conversation?

A I just took notes -- yes, I took notes that -- that -- yes, I did.

Q Okay. Back to Exhibit 19, if you would, please, page 14, specifically paragraph 38.
MS. DYSON: Which paragraph?
MR. SEVERINO: 38.
BY MR. SEVERINO:
Q Paragraph 38 of the amended complaint reads "Not only did the University treat Plaintiff differently as compared to the accused in the Garrett case, but in July 2020 Tampa Bay Times reported that a 23-year-old former USF student accused a member of a predominantly white fraternity of sexually assaulting her in 2017."
MS. DYSON: What topic area are you on?
MR. SEVERINO: 18.
BY MR. SEVERINO:
Q Was USF aware of the allegations alleged in paragraph 38 in 2017?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: USF did not draft or participate in drafting the Tampa Bay Times newspaper article. Mr. Dingle did not attach a copy of the news article to his complaint or the disposition notice. He also didn't provide a copy of the article in his document production. He does not identify the



fraternity in this topic area or any responding or complaining students. USF produced a spreadsheet of all of the sexual misconduct complaints made in 2017. Therefore, USF cannot provide any further response or comment with respect to this topic.
BY MR. SEVERINO:
Q So my question is: With respect to paragraph 38, regardless of whether or not there was a complaint filed, was USF aware of those allegations?
A I --
MS. DYSON: Object to the form and outside the scope.
THE WITNESS: I don't know since the -- they weren't identified.
BY MR. SEVERINO:
Q Still with the amended complaint here, turn to page 19, paragraph 71. Paragraph 71 reads "Although a typical investigation takes up to 60 days, the Plaintiff's case, from the start of the 'investigation' to the formal hearing, a total of only 21 days elapsed."
And so my question is: What facts does USF have to support its denial of that allegation in



its answer and affirmative defenses?
A The answer admits the dates on when the incident reports were received and the date of the formal hearing. There were 22 days, not 21 days, between these events. USF policy does not require an investigation to take any particular length of time. Instead, the DEIO's office goal is to resolve investigations of sexual misconduct, including sexual harassment/violence complaints within 60 days, but depending on the complexity of the case and any documented extenuating circumstances, such investigation may take longer. Thus, even this goal does not require an investigation to take 60 days.
Moreover, when a provisional suspension has been imposed, USF's policy Regulation 6.0021 requires that a formal hearing date be provided in the disposition letter no sooner than five days or longer than six months from the emergency hearing unless the student waives the review period and the conduct officer is able to schedule the hearing sooner.
The matter involved -- involving Mr. Dingle was resolved within the goal established by the DIEO office as well as the time frame required as a result of the provisional suspension.



USF is not aware of any facts refuting the University's denial of paragraph 71.
Q Is it USF's position that it's more important to resolve these investigations timely than to actually get to the truth of what happened?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: It is USF's goal to resolve the case in a timely manner, giving appropriate due process to all parties.
BY MR. SEVERINO:
Q So USF does not have the goal of uncovering what actually happened?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: We have the goal of finding a resolution of what may -- what -- based on our evidence and what we have and creating our learning outcomes and protecting our community and resolving the case.
BY MR. SEVERINO:
Q What are the learning outcomes? What does that mean?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: So the disciplinary process within a university is not a court process. It is supposed to be a learning opportunity that

Page 170

balances educational outcomes of the person who may have been charged or accused and the safety of our community.
BY MR. SEVERINO:
Q Is there a list of learning outcomes that are provided to hearing officers?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Not that I have knowledge of.
BY MR. SEVERINO:
Q So how do the hearing officers determine the learning outcomes in a specific case?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Based on the facts of the case, the respond- -- how the respondent responds in a case. Many factors would be involved with that.
BY MR. SEVERINO:
Q Take a look at Exhibit 19, the amended complaint, paragraph 35, which I'll read. It's on page 13. It reads "Undoubtedly, the public knowledge of the two pending federal investigations, the public nature of the allegations of Ms. Garrett's complaint, the numerous news articles detailing USF's mishandling of sexual assault

Page 171

allegations created an even more directed effort by the University to avoid loss of future funding by failing to comply with Title IX, at the expense of Mr. Dingle's constitutional rights."
What facts does USF have to support the denial of that allegation?
A Mr. Dingle's constitutional rights were not violated by the University. Mr. Dingle does not allege in this lawsuit any claim that his constitutional rights were violated. The Department of Education has the right to investigate any matter. The Department's decision to investigate a matter does not impact, alter, or influence the University's decision on how to handle a particular case. It had no role in the University's handling of the matter involving Mr. Dingle.
The fact that a student in an unrelated matter elected to file a lawsuit and issue a press release regarding the lawsuit also had no role in the University's handling of the matter involving Mr. Dingle. The filing of this lawsuit and news reports regarding it did not impact, alter, or influence the University's decision on how to handle a particular case. Indeed, the University maintains that it correctly handled the matter involving

Page 172

Mrs. Garrett -- Ms. Garrett, which was confirmed in the District Court and the Eleventh Circuit.
The University does not make student conduct decisions based on or based -- because of information reported in the news media. Thus, news articles did not alter, impact, or influence the University's decision on how to handle a particular case. They had no role in the University's handling of the matter involving Mr. Dingle.
At the time of Mr. Dingle's student conduct proceedings, the Department of Education had not made any finding related to the University's handling of sexual misconduct cases nor had it communicated that the University's funding was at risk.
The University did not consider its funding when it made the decision involving Mr. Dingle. It's focus was on applying its policies and procedures. USF is not aware of any facts refuting the University's denial of paragraph 35.
Q At the end there, you mentioned USF was focused on applying its policies and procedures. Correct?
A Yes.
Q And, again, you read that verbatim from

Page 173

what your counsel provided you?
A Yes.
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Yes.
BY MR. SEVERINO:
Q If USF was so concerned with applying its policies and procedures, why was Mr. Dingle not given an opportunity to accept recommended sanctions and responsibility?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: Can I take a break?
MS. DYSON: Yeah. Sure.
THE VIDEOGRAPHER: The time is 3:30 p.m. We're off the video record.
(The deposition was recessed from 3:30 p.m. to 3:33 p.m.)
THE VIDEOGRAPHER: The time is 3:33 p.m. We're back on video record.
MR. SEVERINO: Can you repeat my last question. I don't know if we got an answer.
(The Court Reporter read as follows:
"Question: If USF was so concerned with applying its policies and procedures, why was Mr. Dingle not given an opportunity to accept recommended sanctions and responsibility?")

MS. DYSON: Did you get my objection to that?
THE COURT REPORTER: Yes, I did.
MS. DYSON: Okay.
THE WITNESS: I don't know.
BY MR. SEVERINO:
Q All right. Does USF -- turn to Exhibit 2 for me, the spreadsheet.
A Okay.
Q Does USF have an explanation as to why the only students on this spreadsheet that were expelled were black?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: I do not.
BY MR. SEVERINO:
Q Any explanation as to why none of the white students or Hispanic students were expelled?
MS. DYSON: Objection. Outside the scope.
THE WITNESS: It would depend on the facts of the case.
BY MR. SEVERINO:
Q And you don't know the facts of each case. Correct?
A Correct. I do not know.
MR. SEVERINO: Okay. That is all that I



have. I don't suspect you have any questions.
MS. DYSON: No.
MR. SEVERINO: So, Ms. McDonald, thank you very much for your time and being patient with all these documents. So thank you.
THE COURT REPORTER: Do you want the binder marked as 21?
MR. SEVERINO: Oh, good point. Thank you. Let's actually --
THE WITNESS: The binder?
MR. SEVERINO: Yes. Do you want to just stick a sticker on the cover?
MS. DYSON: I think it's 21.
MR. SEVERINO: Yes.
(Exhibit Number 21 was marked for identification.)
MS. DYSON: Do you want to take the --
THE COURT REPORTER: I'll take the whole thing --
MS. DYSON: That's fine.
THE COURT REPORTER: -- because I'd rather it stay together.
THE WITNESS: It's probably easier without having a binder clip.
MR. SEVERINO: Now we're officially done.



So thank you again.
THE VIDEOGRAPHER: The time is 3:35 p.m. We're off the video record.
THE COURT REPORTER: Do you want this transcribed?
MR. SEVERINO: Yes.
THE COURT REPORTER: Ms. Dyson, do you want a copy?
MS. DYSON: Yes.
(At 3:35 p.m., no further questions were propounded to the witness.)



CERTIFICATE OF REPORTER

STATE OF FLORIDA )
COUNTY OF HILLSBOROUGH )

I, Lori K. Ash, RPR, FPR, certify that I was authorized to and did stenographically report the deposition of DANIELLE McDONALD; that a review of the transcript was not requested; and that the foregoing pages, numbered 1 through 176, are a true and complete record of my stenographic notes taken during said deposition.

I further certify that I am not a relative, employee, attorney or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorneys or counsel connected with the action, nor am I financially interested in the action.

Dated this 1st day of August, 2023.



LORI K. ASH, RPR, FPR

CERTIFICATE OF OATH

STATE OF FLORIDA )
COUNTY OF HILLSBOROUGH )

I, the undersigned authority, certify that DANIELLE McDONALD personally appeared before me and was duly sworn on the 18th day of July, 2023.

WITNESS my hand and official seal this 1st day of August, 2023.



LORI K. ASH, RPR, FPR
Notary Public - State of Florida
My Commission No. HH 223848
Expires: March 24, 2026

Exhibits

**EX 0001 Danielle McDonald 071823**
8:10,14,21,23 9:3,6,8,15 14:23 32:18 47:23 48:5
**EX 0002 Danielle McDonald 071823**
25:22 26:1 41:8 51:5,20 57:11,17,22 60:7 66:2,12 67:16,21 68:2 72:18 75:22 78:14 79:24 101:9,19 107:13 108:24 109:22 125:7 128:19 148:18 174:7
**EX 0003 Danielle McDonald 071823**
34:25 35:3,19 36:13 66:8 82:16,17,18 101:21 102:10 132:20
**EX 0004 Danielle McDonald 071823**
37:10,13,14 60:13 99:24 132:19 133:5
**EX 0005 Danielle McDonald 071823**
38:12,15,21,23 124:17,19
**EX 0006 Danielle McDonald 071823**
54:21,24 69:2 101:20
**EX 0007 Danielle McDonald 071823**
54:21,22 56:18,19 101:20 127:17
**EX 0008 Danielle McDonald 071823**
60:3,8,18,20 68:20,22 102:23 103:4,7,8
**EX 0009 Danielle McDonald 071823**
64:12,16,20 65:4,9,16 66:23 67:2 70:2 75:22 103:8 127:21 128:6 150:1,2
**EX 0010 Danielle McDonald 071823**
65:1,3,5 77:1,4,7,12,14 102:23 103:6,9,10
**EX 0011 Danielle McDonald 071823**
87:1,5,14 90:13
**EX 0012 Danielle McDonald 071823**
90:19,22 91:5
**EX 0013 Danielle McDonald 071823**
95:12,13,16 98:15
**EX 0014 Danielle McDonald 071823**
99:20,23 100:5,23
**EX 0015 Danielle McDonald 071823**
111:17,20 113:1,3 114:4 116:24 119:11 122:12
**EX 0016 Danielle McDonald 071823**
139:7,11,18,20 141:18 142:6
**EX 0017 Danielle McDonald 071823**
142:17,20 143:4
**EX 0018 Danielle McDonald 071823**
157:4,8
**EX 0019 Danielle McDonald 071823**
153:18 154:1 157:12 162:1,2,3 166:1 170:19
**EX 0020 Danielle McDonald 071823**
158:2,3,4,6 163:7
**EX 0021 Danielle McDonald 071823**
175:15

0

**0-004**
20:12
**0.004**
119:2
**0.007**
119:3
**00215**
116:14
**004**
111:3,13,25
**00519**
113:4
**00520**
113:11
**00728**
68:24

1

**1**
8:10,14,21,23 9:3,6,8,15 14:23 15:10,19 16:23 32:18 44:14 47:23 48:5 105:6 132:24 133:6
**10**
19:11,13 65:1,3,5 77:1,4,7,12,14 78:15,24 79:7,15,22 102:23 103:6,9,10 155:25
**10:21**
43:21,24

**10:34**
43:24,25
**10:44**
53:1,4
**10:51**
53:4,5
**11**
19:22,25 28:6 87:1,5, 14 90:13 110:15
**11:01**
59:22,25
**11:08**
59:25 60:1
**12**
11:8 20:15, 18 28:6 64:24 65:12 90:19,22 91:5 110:15 144:25 145:3
**12:08**
99:6
**12:16**
103:19,22
**13**
21:4,6 28:6 92:23 95:12, 13,16 98:15 110:15 112:7 170:21
**13th**
91:10
**14**
21:19,22 28:6 37:14 99:20,23 100:5,23 139:14 166:2
**15**
22:16,18 28:6 111:17, 20 113:1,3 114:4 116:24 119:11 122:12 137:2 138:5
**153**
157:7
**155**
157:7
**15th**
112:5
**16**
23:6,8,18 28:6 66:19 118:19 139:7,11,18, 20 141:18 142:6
**164**
142:4,6
**16th**
80:6
**17**
24:6,8 28:6 91:2 97:13 142:17,20 143:4
**17a**
85:19
**17b**
25:5
**17c**
87:12
**17d**
91:3 97:21, 23 98:5
**17e**
98:7
**17f**
100:2
**17th**
41:18 44:8
**18**
5:5 16:23 20:22 25:11, 12,15 28:6 124:25 150:2 156:17 157:4,6,8 166:14
**18th**
5:14 125:12
**19**
28:7,11 153:17,18 154:1 156:16,18,24 157:12,14, 17,18 162:1, 2,3 166:1 167:19 170:19
**1964**
162:7
**1972**
162:9
**19th**
112:16
**1:32**
103:22,23
**1:58**
122:2,5

**2**

**2**
16:2 25:22 26:1 41:8, 10,13,17 43:10,18 44:5 45:15, 16,25 46:21 50:14 51:5, 20 52:17 57:11,12,17, 22 59:3 60:7 66:2,12 67:16,21 68:2 70:23 72:18 75:22 78:14 79:24 92:4 101:9, 11,19,24 102:5,8 103:12 104:2 105:6 107:13,15 108:24 109:22,24 125:7 128:19 132:21 148:18 158:22 162:22,23 165:18 174:7
**2's**
46:5
**20**
66:15,18,19, 24 80:1,25 81:5 82:1,2, 10 101:11, 21,24 102:8, 9 103:12 110:2,7,8 114:15 120:2 122:14 123:18 125:2 126:15 128:20 140:19 148:8 153:8,14 157:14,17,20 158:2,3,4,6 163:7
**20's**
81:20
**2011**
24:13
**2015**
41:18 44:8 57:12 108:16 112:5,16
**2016**
20:22 24:10 41:20,21 44:9 55:5 56:21 64:3, 10 65:20 108:20 110:24 112:16
**2017**
24:16,20,21 35:20 36:22 65:24 66:19

80:6,7 87:21 91:11 92:23 95:23 100:13 112:2,14 124:25 128:21 140:20 161:8 166:12,17 167:4

**2018**
10:15 65:20 112:17 140:1,4 159:1

**2020**
11:4 166:9

**2021**
159:6

**2023**
5:5,14

**21**
67:1 167:23 168:4 175:7, 13,15

**211**
87:6

**217**
87:6

**218**
90:23

**219**
71:7

**21st**
109:2

**22**
158:3,13,14 168:4

**220**
67:3 70:3 71:10 92:4

**222**
67:2 92:8

**225**
90:24

**22nd**
24:13,15

**23**
113:11

**23-year-old**
166:10

**25**
80:13

**26**
15:20

**268**
95:22

**27**
15:20

**273**
96:12

**275**
95:22

**28**
44:9 90:23

**28th**
35:20 36:22 41:19

**2:00**
55:18

**2:02**
122:5,6

**2:39**
148:11,14

**2:55**
148:14,15

**2nd**
87:21

**3**

**3**
16:12,16,21 34:25 35:3, 19 36:13 51:19,20 52:1,3,7,14 53:9 57:17 59:3 66:8 67:16 79:24 82:16,17,18 101:11,20, 21,24 102:6, 8,10 103:12 104:2 107:15 109:24 132:20 162:12 165:18

**30**
24:18 148:9

**30(b)(6)**
15:3

**301**
5:8,24

**30th**
24:19 95:23

**31**
162:5

**33620**
5:8,24

**34**
44:15 162:8

**35**
15:21 170:20 172:20

**38**
166:2,4,6,17 167:9

**3:30**
173:13,16

**3:33**
173:16,17

**3:35**
176:2,10

**3a**
67:3 71:11

**3rd**
112:17 140:4

**4**

**4**
16:25 17:3 27:20 36:8 37:10,13,14 57:25 58:1, 14,23 59:2 60:7,13,17 67:21,22 68:2,12 92:7 99:24 102:6, 20,22 103:4, 7,13 132:19, 20 133:5

**4.06**
58:2 78:18

**4.12**
58:3

**4.14(b)**
45:17 51:21 52:7 58:3 75:23 78:16 81:6

**4.14(c)**
45:17 51:21 58:4 75:24 78:17 81:7 115:19

**4.17**
58:5

**4.24**
58:6

**4.41(c)**
52:7

**4202**
5:7,23

**498**
113:2

**4th**
41:21

**5**

**5**
17:8,11 38:12,15,21, 23 124:17,19 133:16

**520**
116:24

**521**
113:2

**540**
26:2

**541**
72:19

**542**
79:25
**543**
26:2
**5th**
100:13

**6**

**6**
17:16,17 24:21 26:12, 14,15 47:3,4 54:13,17,21, 24 57:12 69:2 96:13 101:20
**6.0021**
33:1 119:2,5 127:15 168:15
**60**
167:20 168:9,13
**6a**
26:18
**6b**
41:16
**6c**
50:18
**6d**
32:19
**6e**
73:13
**6f**
47:5 48:25 49:2,8 52:18

**7**

**7**
18:6,10,13 26:12 54:13, 17,21,22 56:18,19 101:20 127:17
145:11
**707**
54:22
**708**
55:7,15
**709**
56:1
**71**
15:21 35:21 82:19,21 157:6 167:19 169:2
**713**
54:22
**714**
54:22
**715**
57:4
**72**
132:21
**720**
54:23
**721**
60:24
**726**
60:24 61:10, 11
**730**
61:11
**74**
35:21 82:21 157:7
**759**
77:13
**762**
77:14
**765**
77:13,14

**8**

**8**
18:15,17 60:3,8,18,20 64:21 68:20, 22 72:20 73:3,9 74:13,22 75:4 102:23 103:4,7,8 128:21 140:20 147:4
**8th**
80:7 125:11 148:1 159:6 161:8

**9**

**9**
18:25 19:2 64:12,16,18, 20 65:4,9,16 66:23 67:2 70:2 75:21, 22 76:3,12, 22 77:21 102:20,23 103:6,8,9, 10,13 127:18,19,21 128:6 140:1 149:15,16 150:1,2
**9's**
76:8
**9:38**
5:6,14
**9th**
159:1

**A**

**a.m.**
5:6,14 43:21,24,25 53:1,4,5 55:18 57:12 59:22,25 60:1
**ability**
159:2
**able**
34:11,15 44:15 52:12 72:10 95:2 108:15 129:13 143:16 144:14 168:20
**above**
56:9
**absence**
113:21
**absentia**
61:15,23 69:14,15 70:7,14,18 71:2,15
**Absolutely**
59:21
**academic**
147:15,23
**accept**
59:9 63:20 67:6,13 68:13,22 69:3,17 77:22 78:10 83:6 84:4 101:12,25 102:21 104:7,12 142:1 173:8, 24
**accepted**
49:13 54:1 61:3
**accepting**
63:23 141:4, 13,25 142:11 143:7 164:20
**access**
108:15
**account**
33:11 59:7 146:11
**accounted**
151:11

**accounts**
54:2 59:9
**accurate**
30:17,21 105:17
**accused**
166:8,11 170:2
**acknowledge**
34:11,15
**Act**
162:7
**action**
86:2 90:1 93:3,6 96:3, 5,6 98:13 100:21 147:25 159:5 160:18
**actions**
90:3 111:5 113:19,22 117:13,17,24 118:3,4,6 160:9
**actively**
86:19
**activity**
56:12 111:6 113:15,16, 18,21 117:15 120:22,25
**acts**
58:6
**actual**
19:5,16 21:9,25 22:22 23:11 24:25 44:16 47:7 79:16 101:18 104:14 133:24
**Adamchak**
6:10 14:15, 16 54:11 107:9
**add**
84:13
**addition**
131:11
**additional**
127:23 128:9 130:1,20 131:13
**address**
5:23 86:7 160:10
**administrative**
22:10 31:20 32:1,21,25 33:3,5,11 34:3,7 36:2, 13 37:5 38:24 39:8, 15 40:3,10 72:9 86:8 93:20 98:19 114:14 118:13,23 119:25 121:9 126:10 151:4 153:23 154:2,22
**admission**
164:16
**admits**
168:2
**advantage**
160:17,25
**Advisor**
37:21
**affirm**
6:14
**affirmative**
157:21 159:22 162:11 163:6,14 168:1
**affirmed**
6:21
**ago**
39:24
**agree**
30:14 39:7 84:24 105:23 106:5 114:17
**agreement**
113:15 145:20 147:12 148:1
**ahead**
18:3 47:10 98:11 113:13 130:14,15 135:17 152:23
**aid**
145:21 146:12 147:15,17 148:1
**alcohol**
58:6
**Aldana**
126:6,8
**allegation**
50:15 167:25 171:6
**allegations**
78:15,24 79:6 160:10 166:16 167:11 170:23 171:1
**allege**
171:9
**alleged**
51:6 55:16 95:25 113:9 149:20 166:16
**alleging**
98:25
**alter**
155:7 171:13,22 172:6
**amended**
8:15 9:8 24:18 158:7 162:3,14 166:6 167:18 170:19
**Amendments**
162:9
**amount**
144:15
**anal**
115:15
**and/or**
53:9 79:5 111:5 113:19 115:13 116:6 117:13 118:3,4 159:21
**anger**
58:18,20
**annual**
91:12 93:21
**answer**
7:22 18:3 27:20 29:9 41:5 42:3 44:6,7 49:7 50:7 75:19 83:12 84:7, 14 98:11 107:21 125:24 152:24 156:8 158:7 168:1, 2 173:20
**answered**
75:17 79:9, 19 80:4,16 81:2 102:3 136:19
**answers**
7:17 30:8,16
**Anthony**
6:5 7:1 99:6 157:22
**anticipate**

99:9
**anyone**
14:7,13,17 118:22 138:11
**apologize**
98:6
**appeal**
13:24 22:9 41:20 139:21,23 140:5,8 141:5,25 142:11,15 143:7,17 144:14,18 151:8
**appeals**
141:13
**appearances**
6:3
**appears**
114:16 142:8
**appellate**
13:2,5
**application**
122:13
**applied**
118:12
**apply**
33:16 106:8 119:10 146:20
**applying**
172:18,22 173:6,23
**appoints**
32:24
**appreciate**
148:10
**approach**
100:12
**appropriate**
70:8 71:4 129:6 169:8
**approve**
94:14
**approximately**
7:9
**area**
15:19 16:20, 25 17:3,17 18:6,10,13, 15,17,25 19:2,11,13, 22,25 20:15, 18 21:4,6, 19,22 22:18 23:8 24:8 25:15 26:11 32:4,9,11,15 36:5 41:15 47:2 50:17 52:16 64:18, 23 65:12 73:12 85:17 87:11 91:1 110:14 112:7 133:15 137:1 138:5 139:13 147:2 149:14 155:24 166:13 167:1
**areas**
32:19 34:9 110:22
**arising**
161:11
**around**
10:15 109:1
**arrange**
61:24
**article**
24:16,20,22 25:15 87:20 88:15,22 89:25 90:3, 4,13 91:10 92:23 93:4 95:23 96:4, 8,11,22,25 97:3,9,22 98:8,22 100:23,24 166:21,22,24
**articles**
24:25 25:4 96:9 97:4 170:24 172:6
**Ash**
5:9 6:1 7:23
**asked**
47:19 49:20 75:17 79:8, 18 80:4,15 81:1 102:3 109:24 136:19
**asking**
26:17 32:5 44:4 51:3 110:17 126:22 144:9 162:25
**asks**
162:23
**assault**
89:2 90:15 91:24 95:25 96:15 99:1 170:25
**assaulting**
166:12
**assert**
162:13
**asserted**
162:14
**assessment**
13:19 58:18, 20
**assigning**
40:21
**assignments**
33:13
**assistant**
10:6 11:1 126:11
**associate**
10:2,24 11:3 153:24,25
**associated**
17:10
**associations**
95:9
**athlete**
145:15 146:16
**athletic**
145:9,15 146:3,14 147:15,19,21 163:17,20
**Atlantic**
164:10
**attach**
166:21
**attached**
107:2
**attendance**
133:12,21 135:7
**attendant**
147:22
**attended**
122:23 164:4
**attending**
145:8
**attention**
8:2 90:6
**Attorney's**
164:22
**audio**
155:21 156:9
**August**
41:21 65:22
**authorized**
71:21 131:20,23
**availability**
23:9 33:12 132:13
**available**
24:1 67:12 118:21 120:21 122:25 123:3 129:14,21,24 131:1 134:1 136:7 137:7

160:16,22 161:1
**Avenue** 5:7,23
**avoid** 171:2
**award** 145:22
**aware** 11:21,24 12:3 88:8, 11,15 100:16 102:14,17 139:1,6 152:21 164:25 166:16 167:10 169:1 172:19

**B**

**B-A-N-N-E-R** 28:25
**bachelor's** 163:23,24,25 164:2,6
**back** 14:5 28:4 41:8 44:1 45:13,15 53:6 55:5 60:2 67:2 69:2 72:18 78:14 83:24 103:24,25 106:9 113:1 116:23 122:7 148:16 158:4 163:6 166:1 173:18
**balances** 170:1
**Banner** 28:23,25
**base** 101:6
**based** 33:12 43:12 45:15,23 49:18 51:20 57:19 64:3 93:13 94:6 96:10 104:5, 8 108:23 120:20 137:6 149:1 161:7 169:15 170:14 172:4
**basically** 86:14
**basis** 86:7
**Bates** 26:1 35:21 37:13 54:21, 22 55:7,15 56:1 57:4 60:23 61:10 67:2 70:2 71:7 72:19 77:12,13 79:25 82:18 87:5 90:23 95:21 113:2 116:14,24 132:21 142:6 157:6
**Bay** 24:15,19,21 25:15 88:16 98:7 166:9, 20
**began** 43:1
**begin** 43:3 106:14
**beginning** 6:3 41:25 113:17
**behalf** 6:5,8 7:11, 13 50:20
**behavior** 58:3
**believe** 29:24 30:7, 20 34:12 45:2 48:7 51:15 60:24 68:4 122:10 125:13 151:17 152:4
**Besides** 14:16
**best** 30:21
**better** 99:10
**bill** 146:6
**bills** 146:10
**binder** 16:23 24:24 25:17 33:19 106:20 107:2 108:7 112:18 119:7 124:11 148:4 162:11 165:3 175:7, 10,24
**binding** 147:12
**black** 46:11 52:4 81:23 174:12
**blank** 37:21
**blanket** 106:7
**board** 5:3,18,21 6:9 56:8 57:8 94:5,13 132:10 146:2 152:10
**bodily** 116:3
**body** 116:1,3
**bottom** 35:22 124:12 125:14
**break** 7:19,21 43:19 44:4 52:24 53:8 59:20 60:6,9 99:11,15 107:22 109:21 121:24 122:9 165:18 173:11
**breasts** 115:24 116:5
**bringing** 158:17
**brings** 147:25
**building** 5:24
**bullet** 56:10
**Busson** 7:6
**buttocks** 115:25 116:5

**C**

**CA** 125:18
**calendar** 48:13 80:18
**call** 15:3
**calling** 108:9
**campus** 50:25 91:18 93:3 136:25 137:15,25 155:21 156:10
**cancelation** 147:24

**canceled**
148:1
**care**
129:16
**case**
7:2 11:19, 21,24 12:4 14:5 31:6, 10,13 32:2, 22 34:4,9,10 47:7,8,20 49:4,9,17,21 53:13,25 55:4,24 56:16,22 59:7 60:12, 22 61:1 62:19 63:12 73:9,15,18 74:2,4,10, 17,19 76:17 79:11,17 80:5 82:5 87:23 89:2 99:1 104:19 108:4 127:3 128:14,16 129:3 136:10,25 138:3,18 142:11 166:9 167:21 168:10 169:8,18 170:12,15,16 171:15,24 172:8 174:20,22
**cases**
49:10 51:15 53:12 82:4 96:16 127:5 130:12 149:4,22 172:13
**categories**
27:19
**category**
105:25
**censure**
89:13
**Central**
161:2,6 163:16
**certain**
49:21 93:22 105:18 138:18 149:13
**certiorari**
159:3 160:21
**CGS**
5:7,23
**challenge**
10:19 160:19
**challenging**
159:3
**change**
40:8 86:7 89:14 90:4 93:14
**changed**
98:21
**changes**
90:7 93:20 96:10 97:7
**changing**
93:11,18 98:18
**charge**
62:7 67:12 70:9,11,19 71:5,16,25 72:4 77:18 78:6 84:16, 25 104:10, 20,22 107:18,21 108:1,2,13, 16 115:3 131:7,25 140:21 150:23 151:1 152:2,3
**charged**
33:2 34:17 37:19,20 51:17 67:5, 11,13 84:22 115:4 153:4 170:2
**charges**
50:13,20,22 51:4,9 58:9, 15 63:20 65:23 68:23 70:8 71:4 78:7 84:20 109:2 110:12 146:3,6,9, 10,20,21,22 147:16
**chart**
26:17 27:11, 25 28:4 29:7,13 30:8 41:9,24 66:12 68:3 72:18 80:1 108:24 110:7 125:9 148:25
**check**
133:25
**Chiqui**
126:6,8
**choice**
150:22
**choices**
67:12 68:25
**choose**
32:1 33:3
**chosen**
37:4
**Circuit**
172:2
**circumstances**
31:4 49:12, 15,18 53:15 59:8,11 131:8,24 132:3,7 168:11
**City**
161:3 163:22,25 164:2
**Civil**
162:7
**claim**
171:9
**claimed**
161:11
**claims**
158:17,19 162:13
**clarification**
23:16
**clarify**
104:1
**clear**
136:14
**clearly**
111:5 113:19 117:14
**clerical**
39:17,18
**clip**
175:24
**clipped**
124:11
**code**
12:7,23 20:19 64:1, 7,10 65:1,9, 16,19 66:24 67:4 72:11, 15,16,23 78:3 79:3 81:16 85:6,9 93:16 94:9, 12,20 115:4, 8 116:10,18 119:5 127:14,20 128:5,24 131:4,5,17, 20,23 149:11,17 151:11 160:4

163:19
**codes**
59:4 81:16
**coerced**
113:6
**Coercion**
117:1
**Colleague**
24:13 94:2, 19,24
**college**
161:2,3,6 163:17,18,23 164:1,10,12, 17
**column**
41:10 42:1 46:13,14 58:9
**columns**
28:7,11,12 31:17
**combination**
114:23
**come**
95:8 130:9 135:11 136:21
**comes**
28:17
**command**
156:2
**commencing**
5:5
**comment**
167:5
**commentary**
86:5
**communicated**
41:1 69:21 172:14
**Communication**
22:19
**communications**
22:22 136:24 137:8,14
**community**
10:3 11:10 49:16,17 53:17,18 54:4 59:14 82:7 161:2, 3,6 163:17, 23,25 164:9, 11 169:17 170:3
**compare**
125:7
**compared**
57:11 166:8
**compile**
27:9,25 29:13 30:24
**compiled**
26:16 27:11
**complain**
160:8
**complainant**
42:13,21 45:9 50:20 56:11 73:23 79:12 82:6
**complainant's**
62:19
**complaining**
156:4 167:2
**complaint**
24:18 31:4,5 41:18 42:1, 4,7,10,13,20 43:2 44:8,22 45:2,5,9 66:18 76:18 80:13,22 157:19 158:8 160:14 162:3,14 166:6,22 167:10,18 170:20,24
**complaints**
119:1 120:8 167:4 168:9
**complete**
150:7 151:12,16 164:2
**complexity**
96:15 168:10
**comply**
171:3
**comprehension**
143:22
**con**
37:3
**concern**
96:16
**concerned**
107:3 135:19 173:6,22
**conclude**
150:3 151:21
**conclusion**
70:17 71:11, 14 110:11 163:1
**condition**
147:21
**conditions**
158:16 159:10
**conduct**
12:7,23 13:23 20:19 42:24 51:6 56:8 57:8 59:4 64:1,7, 11 65:1,10, 11,16,20 66:24 67:4 71:2 72:11, 15,16,23 78:3 79:3 81:16 85:7,9 93:16 94:9, 12,20 104:19 109:12,19 115:5,8 116:10,18 119:5
127:15,20 128:5,24 131:4,5 149:11,17 151:12 152:10 160:5 161:4,13 163:19 168:20 172:4,11
**conducting**
70:6 120:9
**conferences**
120:14 122:23 123:1,23
**confirm**
120:21
**confirmed**
101:23 102:19 172:1
**conflict**
33:14,24 34:2,12,22 37:4
**conflicts**
131:10,12 132:4
**confused**
65:2
**confusing**
9:11
**confusion**
157:10
**connected**
46:19
**consent**
20:1,7,11,12 56:12 110:9, 24 111:4 113:3,4,6,7, 11,14,16,18, 23 114:4 115:8,13,23 116:16,25 117:1,12,17, 24 118:7,12

119:11 122:12
**consider** 46:24 62:17 90:7 129:21 172:16
**considerations** 50:8 76:16 79:15,16 150:16
**considered** 49:3 52:13, 22 53:10,13 55:20 56:13 60:11 61:8 62:15 73:9 75:7,11,12 79:6,17 82:1,11 134:17 138:19 154:21
**considering** 33:14 141:13
**considers** 33:23
**consist** 120:13
**constitutional** 171:4,7,10
**construed** 113:8
**contact** 58:5 75:25 78:17 81:8 115:18,20, 23,24 116:3, 4 136:6
**contained** 26:16 86:17
**content** 35:25 123:3
**contingent** 145:21
**continued** 84:19
**contract** 18:14 145:19 147:6,11 148:3
**contributed** 109:13
**conversation** 165:23
**copies** 24:24 35:15 104:24 105:1 106:20
**copulation** 115:17
**copy** 19:5,16,19 20:3,21,24 21:9,14 38:16 106:22 107:10 124:9 138:22 166:22,24 176:8
**corporate** 5:2,16 8:16 9:24
**correct** 9:24 10:7 30:1,17 31:10 33:20, 24 34:23 42:2 44:24 45:17 46:16 48:25 51:22 54:7 57:12 62:24 63:8, 17 65:5,24 66:17,19 67:17,18,22 69:17 70:22 71:8,17,22 75:4,20 78:4,9 80:10,14 82:12,14 85:10,12 88:9,16 89:24 91:18, 24 92:23 94:10 96:25 101:13 102:1,22 103:10 107:15 112:20 117:18,25 118:7 119:23 125:4 130:1 131:13,17,20 139:24,25 140:2 142:9 144:18,20 145:6,9 147:9 151:13 152:7 156:11 158:23,24 160:3 172:23 174:23,24
**correctly** 171:25
**correspond** 46:15
**counsel** 5:4,7 6:2,4 16:10 17:6, 14,20 18:21 19:9 23:4, 13,20 33:20 50:9 59:17 86:21 109:11,14 111:11 112:19 123:10 127:12 138:12 148:5 161:16 165:3,7,21 173:1
**count** 80:17 162:6, 8
**couple** 63:22
**coupled** 143:24
**court** 6:1,11,13 29:2 61:17, 20 84:1 105:5,15,18, 20,22 106:7, 10,17 107:11 119:22 125:23 137:4 157:1 158:18 169:24 172:2 173:21 174:3 175:6,18,21 176:4,7
**Court's** 105:3,9
**cover** 175:12
**covered** 123:1 124:4
**COVID** 10:16
**created** 26:22 94:6 109:14 171:1
**creating** 120:11 169:16
**criminal** 50:13,19,22 51:2,4,9 138:17
**crisis** 11:17
**current** 11:5 33:12
**Cutsinger** 24:2 122:11, 17,20,24 123:16,23

**D**

**damages** 160:24

161:11 163:9,10
**Danielle** 5:2,19 6:20 7:6
**Danyelle** 133:6,12 136:10
**data** 74:8,18,21 76:17,19
**database** 27:12 28:17, 19
**date** 41:18,20 42:1,23 44:7,22,23 45:4 57:10 65:23 66:18 80:13,14,22 85:20 107:17,22,23 108:1,23 109:3 125:8 128:20 131:7,25 140:21 151:1 168:3,16
**dated** 35:20 100:12 140:1
**dates** 80:10 149:1 168:2
**dating** 58:7
**days** 80:13,18,21 125:3 140:16,21 150:23,24 151:3,5,6,8 152:6,10,12 167:21,23 168:4,10,13, 17
**deadline** 140:8,9,17, 24 141:2,5, 13,20 143:7, 12
**deal** 12:6
**dean** 10:4,6,24,25 11:2,3 140:4
**Dear** 24:13 94:1, 19,24 140:3
**December** 24:21 80:7 100:13 124:25 125:11,12 128:21 140:20 159:6 161:8
**decided** 49:18 164:5
**decision** 13:24 49:23 52:23 72:20 78:22 138:17 151:7 152:5, 12 153:3,10, 12 154:16 159:4,7 171:12,14,23 172:7,17
**decision-maker** 75:12
**decisions** 49:25 160:20 172:4
**deemed** 113:8
**Defendant** 163:10
**Defendant's** 158:6,14
**defense** 16:6,7 158:14,21 159:16,18, 22,24,25 162:12,24 163:6,7,14 165:1
**defenses** 157:21 158:7 168:1
**deferred** 76:5,13
**defined** 113:4,11 116:17
**definitely** 61:7 101:5
**definition** 19:25 20:7, 11,12 110:9, 21,24 111:4 113:3 115:7 116:25 117:11,16,23 118:7,11 119:10 122:12,13
**definitions** 114:4,6,16, 24
**degree** 163:24,25 164:3,6
**DEIO's** 168:7
**delay** 42:9 130:4
**deletion** 164:24
**demand** 158:8 162:4
**demographic** 27:16,17
**demonstrate** 118:6
**demonstrated** 113:18 117:12,17,24
**denial** 15:20,22 167:25 169:2 171:6 172:20
**deny** 22:8
**denying** 141:25
**department** 24:12 89:9, 12,15 93:25 137:5,8 146:3,14 164:23 171:10 172:11
**department's** 138:16 171:12
**departments** 11:8,11
**depend** 31:3 174:19
**depending** 93:21 168:10
**Depends** 42:3 74:1 89:14 134:10
**depo** 119:20
**deposed** 7:7,14
**deposition** 5:1,8,16 8:14,15 14:8,13,20 15:3,12 16:18 20:25 21:15 23:25 25:6,20 29:20 43:16, 23 47:13,24 48:8 53:3 56:25 59:24 60:15,22 74:23 77:8 87:15 91:6

95:17 99:24 100:6 103:21 106:2,14 111:14 112:12 122:4 137:19 142:25 148:13 158:11 161:19 165:12,13 173:15
**Describe** 39:18
**described** 24:17
**designated** 33:10
**designed** 160:2
**designee** 32:24 33:23 34:2 40:17, 22 154:15
**detailing** 170:25
**determination** 53:19 70:8 71:3
**determine** 13:19 31:6, 12 32:20 34:2 35:23 52:21 74:17 112:12,21 129:4 153:1 155:11 170:11
**determined** 33:15 127:5 141:22
**determining** 41:23 52:13 55:21 60:11 82:1,11 121:16 148:24
**developing** 120:12
**development** 10:3 109:19
**deviate** 72:10
**DIEO** 168:24
**difference** 153:2
**different** 7:16 15:22 49:17 114:13,16, 17,20 132:11
**differently** 166:8
**differing** 73:24
**difficult** 156:20
**diligence** 163:8
**Dingle** 5:20 6:6 7:3 14:2 35:20 37:20 38:3 83:4 84:2 85:1 87:5 90:23,24 92:4,7 95:22 110:6,8,21 125:2 128:20 137:24 139:1,23 140:16 145:8,16 146:5,24 147:24 153:8 156:4 160:14,16, 19,24 162:13 163:15,22 164:1,3,7, 16,18,21 166:21 168:23 171:8,16,21
172:9,18 173:7,24
**Dingle's** 38:8 39:7 65:11,17,23 110:10,25 128:14 136:25 137:13 145:24 146:2 155:19 156:10 165:12 171:4,7 172:10
**direct** 113:2
**directed** 114:3 171:1
**directing** 26:10
**director** 32:24 33:9, 22 34:1 40:17,22 109:12,17 152:11 153:1,7,24, 25 154:15
**director's** 152:15
**disagree** 68:24 152:23
**disagreement** 126:21
**disciplinary** 11:25 49:15 53:16 54:3 59:12 65:18 110:25 122:14 123:17 137:13 147:25 169:23
**discovery** 149:20,21
**discretion** 127:22 128:8 144:17
**discrimination** 160:4,8,11, 15
**discuss** 58:20 93:10
**discussing** 53:9
**dismiss** 75:12
**dismissed** 67:10 72:21 75:3 79:1 84:18
**dismissing** 73:9 79:6,17
**disposition** 166:23 168:17
**disputed** 139:2
**District** 172:2
**diversity** 119:3 160:6
**division** 10:4
**doc-** 104:19
**document** 9:16 17:6,13 18:21 19:8 20:6,9 23:3, 19 25:14 26:3,6 55:1, 10 56:2 57:5 70:12 77:16 82:24 90:23 121:11 123:9,11 124:11 125:11 156:3 166:24

**documented**
168:11
**documents**
14:19 15:7, 11 16:3,17 17:1,19 18:7 25:5,19 27:24 29:12 35:21 51:8, 12,16 69:11 73:19 74:8 76:19 86:21 102:5,6,11, 14,15 104:5, 9,17 105:10, 18,19,20,24, 25 106:2,11, 19 109:21 111:11 121:21 126:22 138:23 151:2 164:25 165:5,7 175:5
**Doing**
40:22
**draft**
166:19
**drafting**
166:20
**due**
169:9
**dues**
146:16
**duly**
6:21
**duties**
72:12
**Dyson**
6:7,8 8:19 9:7,10 11:7, 20 12:1,8, 13,19,25 13:7,16 14:3,12,16 15:13 16:4, 14,19 17:2, 9,22,24 18:8,16,23 19:1,12,24 20:8,17 21:2,5,11, 16,21 22:2, 13,17,24 23:7,14,22 24:3,7 25:1, 8,13 26:5, 10,14,18,25 27:6 28:1,8, 14,20 29:8, 15,21 30:2, 11,18 31:1, 11,22 32:3, 8,13 34:5 35:5,13 36:4,7,14, 18,23 37:6, 16,24 38:4, 9,17,22 39:4,10,19 40:4,11,19 41:3,14 42:15 43:5, 11,19 44:17 45:11,19 46:1,7,17 47:1,4,9,16, 25 48:12,14, 22 50:3,10, 16 51:23 52:2,8,15,24 53:23 54:14 55:2,11,17, 22 56:3,15, 20 57:1,6, 13,18 58:10, 16,24 59:5, 21 60:16 61:13 62:4, 16,25 63:9, 13,18 64:2, 8,17,22 65:2,7,12,25 66:2,7,21 67:7,19,23 68:3,15 69:5,19,23 70:4,13,20 71:19,23 72:5,13,25 73:4,11,25 74:6,14,24 75:5,15 76:4,9,14,23 77:5,9,17,24 78:5,11,20, 25 79:8,18 80:3,15 81:1,10,14, 17,21 82:3, 13,17,20,25 83:7,11,18 85:3,11,16, 25 86:11,18, 24 87:10,17, 25 88:5,10, 17,23 89:6, 18 90:8,16, 25 91:7,15, 19,25 92:12, 20,24 93:5, 17 94:3,11, 21 95:1,7,18 96:20 97:1, 10,14,17,19, 23,25 98:2, 4,7,16 99:3, 6,8,13,17, 19,25 100:8, 18 101:3,14 102:2,16,24 103:14 105:2,9,17 106:5,13,23 107:1,5,8, 10,19 108:18,25 109:10,23 110:3,13,16, 20 111:1,15, 21 112:7,9, 24 114:8,18 115:1,9 116:19 117:7,19 118:1,14 119:12,21 120:4 121:1, 10,24 122:16 123:19 124:20 125:5,16,22 126:5,9,16, 18 127:1,8, 11,25 128:10,15 129:1,10,18 130:2,10,18, 22 131:14,21 132:5,14 133:2,8,14 134:4,9,15 135:2,8,15 136:1,5,11, 18 137:1,16 138:4,13 139:4,12,19 140:12,14, 18,25 141:6, 15,23 142:12 143:1,8,15, 25 144:5,12, 19,23 145:4, 10,18 146:1, 8,18 147:2, 10 148:10 149:5,14,16 150:8 151:14,19 152:8,17,21 153:11 154:4,10,17, 25 155:9,16, 23 156:16, 18,21 157:9, 18,22,25 158:5,22 159:11,24 162:15,18, 20,23 165:9, 14 166:3,13, 18 167:13 169:6,13,22 170:7,13

173:3,10,12 174:1,4,13, 18 175:2,13, 17,20 176:7, 9

**E**

**earlier** 18:5 29:24 30:7 45:1,6 48:7 82:23 101:10,23 102:19 109:5
**easier** 54:16 175:23
**easily** 108:15
**East** 5:7,23
**Eastern** 5:15
**editorial** 100:11,17,25 101:5
**education** 89:9,12,15 94:1 118:11 162:9 171:11 172:11
**Education's** 24:12
**educational** 120:12 121:16 161:1 164:7 170:1
**effect** 20:22 65:10, 17,20 66:24 112:1,13,16
**effective** 120:10
**effort** 30:21 171:1
**efforts** 133:11 135:6
**eight** 28:6
**either** 155:7
**elapsed** 167:23
**elect** 84:23
**elected** 163:24 171:18
**elects** 33:4,6
**Eleventh** 172:2
**email** 96:14,18,19, 24
**emails** 97:3
**emergency** 11:15 35:16 83:2,21 156:5 168:18
**emotionally** 143:9,20
**employed** 145:3
**employees** 137:12
**employment** 118:22
**enacted** 160:2
**enacting** 93:10
**end** 31:18 36:1 113:17 172:21
**enforcement** 138:19
**engage** 111:6 113:15,16,20 117:14
**engaged** 147:24
**engagement** 10:3
**engaging** 161:4 163:19
**enrolled** 145:25 146:7 163:22 164:3
**enrollment** 163:16 164:9
**ensued** 80:24
**entire** 9:15,17 155:2 159:18
**entitled** 25:14 105:8 106:3 158:18 162:13
**equal** 119:3 160:6
**error** 39:17,18
**established** 101:10 168:23
**estimate** 99:11
**ethical** 109:19
**evaluate** 74:5
**evening** 96:15
**events** 168:5
**evidence** 49:3 52:13 53:10 73:8 79:6,16 106:4 120:3, 10,18,24 121:8 123:17 124:2 128:9 134:24 169:16
**evidencing** 113:22
**exact** 107:23
**exactly** 11:5 42:22
**EXAMINATION** 6:23
**examined** 6:22
**examples** 144:9
**exhibit** 8:10,14,21, 22,23 9:2,3, 4,5,6,8,13, 15,21 14:23, 25 16:16 25:22 26:1 32:18 34:25 35:3,19 36:13 37:10, 13,14 38:12, 15,21,23 41:8 47:23 48:3,5 51:5, 20 54:17,21, 22,24 56:18, 19 57:11,17, 22 60:3,7,8, 13,18,20 64:12,16,20 65:1,3,4,5, 9,16 66:2,8, 12,23 67:2, 16,21,24 68:2,20,22 69:2 70:2 72:18 75:22 77:1,4,7,12, 14 78:14 79:24 82:16, 17,18 87:1, 5,14 90:13, 19,22 91:5 95:12,13,16 98:15 99:12, 20,23,24

100:5,23 101:9,19,20, 21 102:9,10, 22,23 103:4, 6,7,8,9,10 107:3,13,14 108:24 109:22 111:17,20 113:1,3 114:4 116:24 119:11 122:12 124:8,15,17, 19 125:7,9 127:17,21 128:6,19 132:19,20 133:5 139:7, 11,18,20 141:18 142:6,17,20 143:4 148:18 150:1,2 153:13,18 154:1 157:4, 8,12,14 158:2,3,4,6 162:1,2,3 163:7 166:1 170:19 174:7 175:15

**exhibits** 101:16 103:2

**exist** 113:16 121:21

**expel** 52:14 82:2, 11

**expelled** 59:3 146:24 163:18 174:11,17

**expense** 171:3

**experience** 11:10 12:17 40:3

**explain** 42:5 94:8 136:4

**explanation** 103:11 174:10,16

**expressly** 131:20

**expulsion** 24:11 46:2, 22,23,25 52:9,11 53:11,21 56:14 76:13 81:18 159:4, 7 160:13,20 161:5,12 163:15,21 164:8

**expunge** 137:4,5 164:21

**extend** 140:24

**extending** 141:2

**extension** 22:9

**extensions** 21:23 22:1

**extent** 136:1 137:24 163:9

**extenuating** 168:11

**external** 58:18,20

**extraordinary** 149:22

**F**

**fact** 55:20,24 56:13,16 89:1 171:17

**factor** 74:12

**factored** 49:24

**factors** 46:23 49:2, 11 52:13,22 53:9,20,25 60:10,25 61:6 62:14 73:8,14,22, 23 74:18 79:5 82:1 170:16

**facts** 11:19 15:19, 21 16:5,6,7, 13 17:10 49:18 53:13, 25 59:7 60:25 62:19 73:15 74:1, 21 76:17,18, 21 79:10 82:5,10 88:12 158:20 159:21 162:24 163:13 165:1 167:24 169:1 170:14 171:5 172:19 174:19,22

**faculty** 33:16

**failed** 61:16 70:24 160:14,19,24 163:10 164:7,16

**failing** 160:25 171:3

**fails** 70:25

**failure** 113:8

**fair** 129:8

**familiar** 50:21

**far** 46:12,13 107:3 144:3

**fear** 113:7

**fears** 95:24

**federal** 87:21 88:3,8 89:21,23,24 106:3 170:22

**federally** 89:20

**Fedex** 143:23

**feel** 8:5

**FERPA** 105:3,6,14, 16,23 106:6, 7

**field** 39:23

**fifth** 16:7 163:6,7 165:1

**figure** 99:15

**file** 22:9 42:10 50:19 101:18 140:20 144:14 147:1 154:9,18,21 158:16 159:2,4,5 160:14 171:18

**filed** 42:4,7,25 43:2 50:14 51:4 71:4 97:9 98:14 141:5 149:19 151:8 167:10

**files**
45:9
**filing**
42:8,12,20 45:2 99:4 164:23 171:21
**final**
151:7 152:5, 11 153:9,12 154:15
**financial**
18:17 145:21 146:11,25 147:15,17 148:1
**find**
132:10 156:21
**finding**
41:19 44:9, 23 45:23 49:21 72:21, 22 78:23 79:2 80:6, 14,22 89:15 137:23 140:19 169:14 172:12
**findings**
46:18 49:10, 12 53:14 68:25
**fine**
10:20 83:20 175:20
**finger**
115:15,16
**finished**
159:19
**first**
6:4,21 35:22 56:10 62:9 91:12 143:20 151:12 158:3
**five**
10:13,14 28:5 31:18 140:21 148:7 150:23,24 151:5,6,7,8 152:6,10,12 168:17
**fix**
156:19,23
**Flip**
54:24
**Florida**
5:3,6,8,10, 18,21,22,24 6:9 91:12 113:5 161:3 164:3,10,12, 15
**focus**
11:9 172:18
**focused**
172:22
**folded**
148:21
**follow**
68:7 135:25
**follow-up**
133:25
**following**
22:9 35:25 36:1 56:9 58:2 90:10 132:22 140:7 149:19
**follows**
6:22 84:1 173:21
**football**
164:17
**forbidden**
131:17,19
**force**
115:13,23
**forgot**
18:1
**form**
12:2 13:17, 22 19:14,16, 20 20:8 22:3,13,24 26:25 28:2, 15,20 30:2, 11,19 31:2, 22 35:5,13 39:19 40:11, 19 41:3 42:15 44:17 45:19 47:9, 16 70:20 74:15 75:16 79:18 84:23 86:11 89:6 92:12 102:24 111:2 114:8, 19 115:1 116:19 117:20 118:1,14 121:1,10 123:19 129:11,18 130:3 131:14,21 132:14 134:4 135:9,15 137:16 138:13 139:4,12 140:25 142:12 144:23 145:4,18 146:1 147:10 152:17 159:11 162:15 167:13
**formal**
33:2 38:8 39:7 61:2 67:14 68:25 109:3 110:10 114:14 119:4 120:19 125:1,3,8,10 126:15,25 127:23 128:8,21,25 129:2 130:17 131:6 133:13,18,24 137:10 138:20,21,24 139:3 150:19,21,24 151:3,4,9 152:6 153:22 154:22 156:6 161:8 167:22 168:4,16
**forms**
156:2
**formulating**
94:19
**forth**
27:19 119:2, 4
**forward**
8:9 13:22 42:8 45:3 84:19,20 87:9
**found**
45:16 49:21 51:21 56:8 58:1,14 75:22 81:5 89:3 107:22 161:9
**four**
28:5 31:18 61:7 159:6
**Fowler**
5:7,23
**FPR**
5:9
**frame**
80:19 93:22 149:13 168:24
**fraternity**
166:11 167:1
**free**

8:5
**Friday**
161:24
**front**
9:20 14:23
25:18 41:8
86:10 104:6
119:7 124:3
125:8 128:6
**fulfill**
148:3
**Fulfillment**
164:20
**full**
7:4 8:2
147:14,21
163:17,20
**full-time**
147:22
**function**
51:2
**funding**
89:13,16,17,
21,23,24
171:2
172:14,17
**future**
171:2

**G**

**Garden**
161:3
163:22,25
164:2
**Garrett**
166:9 172:1
**Garrett's**
170:24
**gather**
127:23 128:9
130:1,20
131:13
**gave**
14:21 96:8
123:22
142:16 154:6
**gender**
27:17
**general**
5:7 26:15
40:16 50:8
60:10 79:15
**generally**
75:10
**genitals**
115:25 116:5
**Genshaft**
96:14
**getting**
90:5
**give**
6:15 30:21
38:15 72:6
76:16 97:24
99:10 134:22
153:13,16
157:1
**given**
15:14 37:8
47:22,24
67:17,22
85:2,4,10
93:2 103:7,8
104:6,10,12
150:6,22
153:23
173:8,24
**giving**
8:2 169:8
**glad**
105:11
**goal**
168:7,12,23
169:7,11,14
**goes**
7:15 61:11
**going**
8:13 15:6,24
25:25 38:18
47:8,19
49:17 54:13
57:25 60:8
62:11 87:4,9
99:15 113:25
134:25
135:24
142:22 153:2
156:17
157:17
159:17
**good**
5:12 6:7,25
175:8
**gotcha**
9:5 160:1
**Governors**
94:5
**grab**
127:14
148:20
**Graham**
109:12,17
**grant**
22:8
**granting**
140:24
**groin**
115:25 116:5
**guess**
33:22 34:21
51:8
**guidance**
155:14

**H**

**halfway**
56:7
**hand**
6:14 25:25
60:8 61:18
64:15 77:4
87:4 90:22
99:23 108:2
139:10
153:17
157:17,22
**handed**
54:20
**handle**
106:17
171:14,23
172:7
**handled**
171:25
**handling**
87:22 89:2
118:25 120:7
171:15,20
172:8,13
**Hang**
148:20
**Hankins**
5:25
**happen**
62:9
**happened**
39:25 73:24
97:4 136:9
169:5,12
**harassment**
112:1,13
160:6
**harassment/ violence**
168:9
**Harvey**
92:15
**head**
16:24
**heading**
116:25
**health**
49:16 53:16
54:3 59:13
**hear**
29:3 61:20
116:15
119:22
125:23
129:3,4
**hearing**
12:22 22:10
32:21,25
33:3,4,7,9,
11 34:3,8,

18,19,22 35:17,23 36:2,13 37:5,21 38:7,8,11, 19,24 39:2, 8,9,15 40:10,25 44:11 49:22 50:1 54:3 56:5 57:8 59:12 61:2, 15,22 67:14 68:25 72:9 83:2 104:15 105:16,22 109:3 110:10 114:14 118:23 119:4,25 120:3,19 121:5,9 124:10 125:2,3,8,10 126:15 127:23 128:8,21,25 129:2,9,12, 25 130:5,17 131:6 133:13,18, 21,23,24 134:11,17,18 135:13 136:16,22 137:10 138:1,20,21, 24 139:3 140:6 150:20,21, 24,25 151:3, 4,25 152:6, 9,13 153:9, 23 154:3,6, 22,23 155:1, 3,7 156:6 161:8 167:22 168:4,16,18, 20 170:6,11

**hearings** 40:3 118:13 120:9 126:25 135:21

**held** 5:22 61:15, 22 91:18

**help** 101:15

**Hispanic** 79:23 174:17

**history** 49:15 53:16 59:13 82:6 130:11

**Hmm** 162:18

**hold** 18:18 146:25

**holiday** 130:24 132:4

**holidays** 131:9,11 143:24

**HOME** 91:11

**hosts** 91:12

**housing** 13:22 18:13 145:17,19,24 146:6,16 147:6,11,16 148:2

**hurricane** 132:8

**I**

**identification** 8:11 25:23 35:1 37:11 38:13 54:18 60:4 64:13 77:2 87:2 90:20 95:14 99:21 111:18 139:8 142:18 153:19 157:5,15 175:16

**identified** 36:12 39:2 44:13 50:2 64:6 97:9 98:14 123:1 124:4,6 131:9 167:16

**identifies** 133:5

**identify** 28:12 32:8, 10,14 98:4 166:25

**identifying** 31:13 60:10

**ignored** 95:24

**II** 162:8

**immediately** 163:16

**impact** 49:10,11,16 53:17 54:4 59:14 171:13,22 172:6

**imply** 113:23

**important** 169:4

**imposed** 45:24 46:21 49:3 52:6 53:19 55:21 58:13 60:12 76:3,12 81:12 84:25 89:4 168:15

**imposing** 46:24 53:10 56:14

**inaccurate** 29:7

**inaudible** 125:21

**Incapacitation** 117:1

**incident** 19:14,20 55:16 57:17, 20 73:19 129:17 143:10 155:20 156:1 168:3

**include** 113:6 131:9

**includes** 115:14,24 160:12

**including** 72:20 78:22 118:21 120:9 160:25 164:8 168:8

**incorrect** 97:18

**Indeed** 171:24

**indicate** 84:16 111:5 113:20 117:14

**indicates** 67:12 84:17

**indicating** 106:21 108:11 156:23

**individual** 11:16 29:18 41:1 49:9,10 115:12,22

**individuals** 29:19 33:10

**influence** 171:13,23

172:6
**information**
26:16 27:9, 11,15,16,17, 21,25 28:12, 23 30:21,24 31:14 62:18 72:22 73:10, 16 74:9,18 75:3 79:2,7 86:17,22 103:16 120:20 121:17 122:24 123:4 124:7 127:24 128:9 129:3, 13 130:1,6, 21 131:13 134:8 136:16 137:6 161:7 164:25 172:5
**informed**
113:14
**initial**
13:20 62:6, 14 69:7,25 70:17,18,24, 25 71:1,11, 14,16 72:10 77:19 78:15 104:14,21,22 109:25 150:2,3,7,13 151:13,16, 20,21
**initials**
125:13 126:3
**injurious**
58:3
**instance**
113:17
**instruction**
120:15
**instructor**
34:9
**instructs**
18:4
**insufficient**
72:22 73:10 75:3 79:1,7
**intelligent**
113:5
**intentional**
115:20,24 116:3
**intercourse**
58:4 75:24 78:17 81:7 115:10,13
**interest**
33:14,24 34:3,13,22 37:4
**interim**
10:17,25 13:8,11 153:24,25
**interim/ provisional**
13:15
**International**
164:11
**interpret**
119:10
**interpreted**
111:7
**interrogatories**
30:1,9,16
**Interrogatory**
27:20
**interview**
55:13 155:21 156:4,10
**intoxicated**
56:11
**investigate**
45:10 171:11,12
**investigating**
118:24 120:7
**investigation**
19:3 41:13, 25 43:1,3, 10,17 44:5, 6,11,16,21 45:4 62:20 80:2,9,12,24 87:22 88:4, 9,12,22 89:1 137:9,25 138:17 148:24 149:3,11 155:19 167:20,22 168:6,12,13
**investigations**
41:24 168:8 169:4 170:22
**investigative**
55:13
**invoice**
146:6
**involved**
12:22 13:1, 5,18 14:1 34:8,11,16 73:18 96:16 135:19 137:13 168:22 170:17
**involving**
12:4 116:4 119:1 120:8 168:22 171:16,20,25 172:9,17
**Iowa**
161:2,5 163:16 164:11
**issue**
70:19 71:16 72:2 105:13 106:6,7,8 155:15 171:18
**issued**
154:1
**issues**
94:1 106:12 143:22
**items**
27:19
**IX**
12:11,18 19:2,13,19 20:3,10 42:14,25 100:12 162:8 171:3

**J**

**January**
112:17 140:1,4 148:1 159:1
**Joanne**
6:10
**job**
143:22 164:18
**Jodi**
14:15
**Jonathan**
24:2 153:23
**judicial**
160:12
**Judy**
96:14
**July**
5:5,14 41:19 44:9 92:18 166:9
**June**
57:12 109:2
**jurisdiction**
158:19
**jury**
158:8 162:4

**K**

**Kentucky**
164:13

**Keroack**
36:15,17 39:14 40:2,9
**Kevaughn**
5:20 6:6 7:3 37:20 136:25 140:3
**kind**
7:15 149:1, 10 159:17
**knew**
135:17
**know**
7:15,19 8:6 9:12,19 11:11 16:9 18:3 26:9, 20,21,23 27:2 34:7 35:4 38:2,5, 7 39:16 42:6,16,22 43:6 44:10 45:12 47:6, 18 49:11,20, 24 50:13 51:8 54:25 55:10 57:16 59:2 61:12 62:14 63:11, 22 64:9 68:2 74:12 75:2, 6,8,10,11 76:12,21 79:16 82:10 85:4,23 86:21 88:6, 12,21 90:18 92:1 93:9 96:9,18 97:2 107:23 109:5,6,8, 13,14 111:22 112:3 117:4 120:23,24 121:3,20 124:8 126:3, 23 127:7,10 128:13 134:2,13,24 135:23 136:9 138:2 140:16 142:15 143:19 148:18,25 150:9 153:15 154:1,11 155:5,20 159:9,18 161:25 163:3,4 165:7 167:15 173:20 174:5,22,24
**knowing**
85:6 113:5, 14
**knowledge**
11:18 22:14 29:10 40:5, 13 90:2 130:9 155:17 156:12 170:8,22
**Kristin**
24:1 37:22 39:5,8 118:10,22 120:6
**Kyle**
5:25

**L**

**label**
55:7,15 56:1 57:4 61:10 70:2 71:7 72:19 77:13 116:24 142:6
**labeled**
26:2 35:21 37:13 54:21, 22 60:23 67:2 77:13 79:25 82:18 87:5 90:23 95:21 113:2
**Large**
5:10
**lastly**
25:11
**Lauren**
36:15,17
**law**
113:5 138:18
**lawsuit**
51:14 95:24 97:8 98:9, 14,25 99:5 158:16 164:23 171:9,18,19, 21
**learning**
120:11 169:17,20,25 170:5,12
**leave**
106:25 164:5
**left**
31:19 39:23
**left-hand**
46:13
**legal**
109:14 123:10 127:12 162:25
**legislation**
93:19 94:5, 6,9,10,15,16 150:10
**legislative**
86:7 90:10
**legislature**
98:19
**length**
41:12,23 43:10 44:4, 15 80:2 148:24 149:3,10 168:6
**letter**
24:14 34:18 35:8 36:22 37:1,8 39:22 40:23 41:2 56:4 57:7 61:11,12,22 62:7 63:7,16 67:12 70:9, 11,19 71:5, 16,25 72:4 77:18,23 78:6 82:20 83:8 84:16, 18,25 85:5 104:11,20, 21,22 107:18 108:1,2,13 109:25 131:7 132:1 133:22 135:25 142:8 150:23 151:1 152:2,3 153:14 168:17
**letters**
35:15 94:2, 19,25 107:21 108:16
**liability**
89:4
**liable**
89:3 163:11
**Liberty**
164:12
**lifted**
84:19
**limit**
114:15
**line**
82:24
**list**
122:22 123:22 170:5
**listen**
156:9

**listened**
155:2,20
156:13
**listening**
120:11
**LISTSERV**
95:10
**little**
7:16 111:23
**live**
134:14 135:1
**locate**
104:16
**long**
10:5,11
43:17 44:10
144:22
159:17
**longer**
99:8 149:13
168:12,18
**longest**
80:23
**look**
8:16 14:5
31:5,16
32:17,18,19
35:3 38:10
41:9 47:22,
23 48:13,14,
16 56:1,18
57:4,10,22,
25 60:13
61:10 66:11,
14,15 67:3
68:20 69:1
72:20 75:21
77:13 78:15
82:16 83:15
84:8 92:4,7
107:13
109:21 110:7
125:7
132:19,20
133:4 158:2
159:15
162:1,5
163:5 170:19
**looked**
42:23 48:23
65:5 104:9
105:19
108:4,6,8
143:4
**looking**
70:23 80:1
123:11
**looks**
31:17 38:24
63:3 96:12
124:11 142:4
**Lori**
5:9 6:1
**loss**
89:17,23,24
171:2
**lost**
10:16 163:20
**lots**
101:4
**lunch**
104:9

**M**

**Madam**
6:11
**made**
24:1 40:8
49:23 63:1
118:21
126:14 135:6
156:14
160:22 167:4
172:12,17
**Madsen**
132:24
133:6,13
136:10
**maintain**
30:23
**maintained**
27:18
**maintains**
27:15 171:24
**make**
7:22 8:6
13:23 54:16
71:3 83:25
90:7,9 91:3
93:14,19
97:7 107:10
126:24
133:12
156:20,24
172:3
**making**
52:23 116:1
**management**
58:19,21
**manager**
58:21
**manner**
116:4 169:8
**Maria**
24:2 122:11,
24 123:16,23
**mark**
8:13 95:12
153:16
**marked**
8:10 9:2,3
25:22,25
34:25 35:3
37:10 38:12
54:17,20
60:3,8
64:12,15
77:1,4 87:1,
4 90:19,22
95:13 99:20,
23 111:17
127:21
139:7,10
142:17
153:18
157:4,14
175:7,15
**mass**
96:14,19
**matter**
5:19 7:12
115:17
168:22
171:12,13,
16,18,20,25
172:9
**Mcdonald**
5:2,19 6:20,
25 7:6 37:14
44:3 53:8
60:6 106:11
122:9 148:18
175:3
**mean**
32:6 39:18
45:8 47:5
51:5 60:17
63:7 80:17
96:5 101:19
107:14 113:8
114:10
154:19
169:21
**meaning**
61:15 93:7
111:7 118:8
**meaningful**
120:11
**means**
42:6 106:2
113:5,14
**measures**
160:10,18
**mechanism**
160:7
**media**
90:6 172:5
**medical**
130:25
**meeting**
58:19 61:24
62:6,9,14
69:7,13,22,
25 76:6
104:22
143:11
**Meeting/in**
70:18

**meetings**
93:9 120:13
**Melissa**
109:12,17
**member**
36:19 76:6 166:11
**members**
31:20 32:25 33:14,16 58:19 132:9
**Memorial**
161:4 164:3
**mentally**
143:10,20
**mention**
18:1 70:5
**mentioned**
33:22 63:22 123:21 172:21
**mentions**
70:6
**merge**
39:23
**middle**
83:15 84:8
**minute**
83:17 84:10
**minutes**
99:18 148:8
**minutesish**
148:9
**misconduct**
21:7,10 119:1 120:8 147:24 160:5 163:20 167:3 168:8 172:13
**misconduct/ sexual**
112:1,13
**mishandled**
98:25
**mishandling**
170:25
**missed**
140:8,17
**missing**
140:9 141:19
**Mississippi**
164:9
**mistake**
156:15
**misuse**
58:5
**mitigate**
160:24 163:9,10
**mitigated**
163:12
**mitigating**
49:14 53:14 59:10
**Mmm-hmm**
8:19 10:10 15:1,5 16:24 29:1 41:11 55:9 57:24 61:9 63:24 77:15 104:4 108:14 109:7 114:5 125:15 127:16 150:15
**Molly**
164:20
**months**
149:21 168:18
**Monti**
24:2 153:23
**morning**
5:12 6:7,25
**Moscato**
165:19
**mouth**
116:6
**move**
42:8 45:3 61:17 84:19, 20 134:6 135:6
**movement**
24:10 42:11 85:15,21 86:3,4 92:10,18
**moves**
136:15
**mutually**
113:18 117:13

**N**

**name**
5:18,25 6:7 7:1,4 28:19 31:19 39:22
**nature**
170:23
**necessitate**
53:21
**need**
7:19 23:15 32:8,10 54:15 68:7 83:17 84:10, 13 93:19 129:20 157:11
**needed**
103:25 135:18
**needs**
150:22
**negative**
90:5
**never**
147:8
**news**
166:22 170:24 171:21 172:5
**newspaper**
98:22 100:24 166:21
**nine**
28:6
**no-contact**
46:2,22 52:9 58:17 76:6 81:18
**nods**
16:24
**non-consensual**
58:4,5 75:24,25 78:16,17 81:6,7 115:19 116:16
**non-hispanic**
46:11 52:4 58:25 73:6 76:10 81:23
**normal**
127:2
**Notary**
5:9
**notebook**
15:15,18,25 23:12 27:22 49:6 50:9 54:6 59:17 86:10,17,23 161:16,18
**notes**
107:7 108:8, 13 165:22,24
**notice**
5:4 8:15 9:2,9,13 55:12 104:6 133:17,24 166:23
**noticed**
106:13
**notification**
63:3 109:2 145:22 156:2
**notifying**
136:22
**November**
24:15,19

35:20 36:22 41:18 44:8 65:24 66:19 80:6 87:21 91:10 92:23 95:23 112:2, 14

**number**
8:10 16:2, 12,16,25 17:8,16,17 18:6,15 19:11 20:15 21:19 25:22 27:20 34:6, 25 37:10 38:12 41:10, 17 46:12 49:11 52:3 57:20 60:3 64:12,24 70:23 77:1 79:14,15 80:21 87:1 90:19 95:13 99:20 104:2 105:6 111:17 114:15 120:1 124:9 132:6, 11 139:7 142:17 153:8,18 157:4 162:12 175:15

**numbers**
31:17 44:14 46:15 54:17 156:15 157:14

**numerous**
170:24

**O**

**OASIS**
146:10,15

**object**
18:1 39:19 42:15 44:17 47:9,16 86:11 92:12 106:15 114:8,18 115:1,11,15, 16,21 116:19 121:1,10 123:19 125:5 129:18 137:16 138:13 139:12 140:25 142:12 145:18 146:1 147:10 152:17 167:13

**objection**
11:7,20 12:1,2,8,13, 19,25 13:7, 16,17 14:3 15:13 16:4, 14,19 17:2, 9,22 18:8, 16,23 19:1, 12,24 20:8, 17 21:2,5, 11,16,21 22:2,3,13, 17,24,25 23:7,14,22 24:3,7 25:1, 8,13 26:5,25 27:6 28:1,2, 8,14,15,20, 21 29:8,15, 21 30:2,3, 11,18,19 31:1,2,11, 22,23 34:5 35:5,13,14 36:4,14,18, 23 37:6,16, 24 38:4,9,22 39:4,10 40:4,11,19 41:3,4 43:5, 11 45:11,19 46:1,7,17 47:25 48:12, 22 50:3,10 51:23 52:2,8 53:23 55:2, 11,17,22 56:3,15,20 57:1,6,13,18 58:10,16,24 59:5 60:16 61:13 62:4, 16,25 63:9, 13,18 64:2,8 65:25 66:21 67:7,19,23 68:15 69:5, 19,23 70:4, 13,20,21 71:19,23 72:5,13,25 73:4,25 74:6,14,15, 24 75:5,15, 16 76:4,9, 14,23 77:9, 17,24 78:5, 11,20,25 79:8,18 80:3,15 81:1,10,14, 17,21 82:3, 13,25 83:7, 11 84:6 85:3,11,16, 25 86:11,18, 24 87:17,25 88:5,10,17, 23 89:6,18 90:8,16 91:7,15,19, 25 92:20,24 93:5,17 94:3,11,21 95:1,7,18 96:20 97:1, 10 98:16 99:3,25 100:8,18 101:3,14 102:2,16,24 103:14 105:16 107:19 108:18,25 109:10,23 110:3 111:1, 2,15 112:24 115:9 117:7, 19,20 118:1, 14 119:12,21 120:4 122:16 124:20 125:16,22 126:5,9,16 127:1,8,11, 25 128:10,15 129:1,10,11 130:2,3,10, 18,22 131:14,21,22 132:5,14 133:2,8,14 134:4,9,15 135:2,8,9,15 136:1,5,11, 18 139:4,19 140:12,18 141:6,15,23 143:1,8,15, 25 144:5,12, 19,23,24 145:4,5 146:8,18 149:5 150:8 151:14,19 152:8 153:11 154:4,10,17, 25 155:9,16 158:5 159:11 162:15 165:9,14 166:18 169:6,13,22 170:7,13 173:3,10 174:1,13,18

**objections**
105:6
**obligation**
148:3 163:8
**obtain**
27:21 123:8
**obtaining**
164:6
**obviously**
60:25 96:7
**occur**
55:16
**occurred**
44:21 80:9 92:11 93:2
**October**
112:5,15
**offender**
113:10
**offer**
113:9
**offered**
163:17
**offering**
33:8
**offers**
164:18
**office**
5:6 20:10 27:13 32:23 42:14 126:11 127:21 128:7 136:6 140:4 164:22 168:7,24
**officer**
13:23 22:10 31:20 32:2, 21,25 33:4, 5,10 34:3,8, 19,22 35:23 36:3,13 37:5,22 38:7,19 39:3,9,15 40:10 41:1 49:22 70:19 71:2,16 118:24 120:1 132:24 133:6,12 136:10 138:1,22 150:3 151:4, 21 152:9,13 153:9 154:3, 6,22 155:8 168:20
**officers**
13:21 33:11 34:19 50:2 72:9,10 170:6,11
**officially**
175:25
**okay**
7:11,14,17, 20 8:8 9:10, 21,23 10:1, 11,18 11:14 12:11 13:4, 14 14:7,10, 12,19,22 15:9,17,23 16:1,9,25 17:5,24 18:15,20 19:8 20:6 21:19 23:6 24:6 28:11 34:1 38:17 43:15 45:8 46:21 48:10, 17,20,25 49:6 52:11 54:14 55:7 56:1,7 58:13 61:10 64:22 65:7,21,23 67:16 68:21 69:1 71:7,14 73:8 79:5 80:12,21 81:20 83:22 84:12 92:17 93:2 96:3 98:11 99:13, 17 100:16 101:22 102:13,19 103:5,11,17 106:16,24 107:8 108:10,12,15 110:6 112:9 114:2,23 115:7 116:15 122:21 124:18 125:20 126:19,24 127:5,19 128:13 131:11 132:3 133:4,11 140:14,23 141:22 142:4,10,23 143:14,19 144:9 146:5 148:10,22 150:13,22 151:10,24 152:4 155:13 157:9,17 158:13 159:15,20 163:5 166:1 174:4,9,25
**on-the-job**
120:15
**once**
7:10,15
**one**
15:6 26:23 28:5 31:17 36:7 52:17 53:12 68:17 73:22 110:16 112:3 114:24 124:9,22 142:22 152:20 153:21 156:14,24 157:2,3,18 159:16 164:4
**one-four**
37:14
**ones**
49:23
**operational**
86:8 93:20 98:20
**opinion**
86:5 101:6
**opinions**
101:5
**opportunities**
161:1 164:8
**opportunity**
34:21 37:3,9 67:6,17,22 68:13 69:3, 17 77:22 78:10 83:5 84:4 85:2,5, 10 101:12,25 102:21 103:13 104:7,12 119:3 160:6, 12 169:25 173:8,24
**option**
62:7
**options**
33:2
**oral**
115:16
**order**
46:3,22 52:9 58:18 76:6 81:18 105:3, 9 137:4
**ordered**
105:18,20,24
**orifice**
116:6

**OS**
149:18
**OSRR**
40:18 131:9, 12 149:18 151:7
**out-of-class**
11:10
**outcome**
56:4 57:7 61:14,21 83:1 88:21 139:20,23 140:5 151:6 152:11,13 153:9,14,22 154:2 155:7
**outcomes**
35:16 120:12 169:17,20 170:1,5,12
**outside**
11:7,20 12:1,8,13, 19,25 13:7, 16 14:3 15:13 16:4, 14,19 17:2, 9,22 18:8, 16,23 19:1, 12,24 20:17 21:2,5,11, 16,21 22:2, 17,25 23:7, 14,22 24:3,7 25:1,8,13 26:5,25 27:6 28:1,8,14,21 29:8,15,21 30:3,12,18 31:1,11,23 34:5 35:6,14 36:4,14,18, 23 37:6,16, 24 38:4,9,22 39:4,10,19 40:4,12,20 41:4 43:5,11 45:11,19 46:1,7,17 47:16,25 48:12,22 50:3,10 51:23 52:2,8 53:23 55:2, 11,17,22 56:3,15,20 57:1,6,13,18 58:10,16,24 59:5 60:16 61:13 62:4, 16,25 63:9, 13,18 64:2,8 65:25 66:21 67:7,19,23 68:15 69:5, 19,23 70:4, 13,21 71:19, 23 72:5,13, 25 73:4,25 74:6,14,24 75:5,15 76:4,9,14,23 77:9,17,24 78:5,11,20, 25 80:3 81:10,17,21 82:3,13,25 83:7,11 84:6 85:3,5,11, 16,25 86:12, 18,24 87:17, 25 88:5,10, 17,23 89:7, 18 90:8,16 91:7,15,19, 25 92:12,20, 24 93:5,17 94:3,11,21 95:1,7,18 96:20 97:1, 10 98:16 99:3,25 100:8,18 101:3,14 102:2,16,25 103:14 107:19 108:18,25 109:10,23 110:3 111:1, 15 112:24 114:9,18 115:1,9 116:19 117:7,19 118:2,14 119:12,21 120:4 121:1 122:16 123:19 124:20 125:5,16,22 126:5,9,16 127:1,8,11, 25 128:10,15 129:1,10,18 130:2,10,22 131:15,22 132:5,15 133:2,8,14 134:5,9,15 135:2,8,16 136:2,5,11, 18 137:16 138:13 139:4,12,19 140:12,18 141:6,7,15, 23 142:12 143:1,8,15, 25 144:5,12, 19,24 145:5 146:8,18 149:5 150:8 151:19 152:8,17 153:11 154:4,10,17, 25 155:9,16 158:5 159:12 162:15 165:9,14 166:18 167:13 169:6,13,22 170:7,13 173:3,10 174:13,18
**overcome**
106:6
**overruled**
105:5,15
**oversee**
11:8
**owed**
147:5

**P**

**p.m.**
103:19,22,23 122:2,5,6 148:11,14,15 173:13,16,17 176:2,10
**packet**
155:1
**page**
8:7 14:24 35:22 66:14, 16 67:1 71:10 72:19 75:22 79:24 83:15 84:9 92:4,7 96:13 107:9 108:7 113:11 116:12 132:21 150:1 158:3,13 162:5,7 166:2 167:19 170:21
**pages**
9:20
**paid**
145:24 146:3
**paperclipped**
87:8
**paragraph**
15:20 24:18 36:1 67:3

71:11 92:5,8 166:2,3,6,17 167:9,19 169:2 170:20 172:20
**paragraphs** 15:22
**parameters** 149:1
**paraphrase** 35:24
**part** 10:19 26:14 28:22 44:11 57:16 59:18 63:2,6,25 64:4 72:7 105:2 138:23 143:20
**participate** 27:4 62:1,5, 13 86:16 166:20
**participated** 26:24 61:1
**participating** 123:24
**participation** 73:17
**particular** 26:11,21 32:4 35:7 36:5 41:15 47:2 50:17 52:16 64:18, 23 73:12 85:17 87:11 91:1 110:14 133:15 145:10 155:23 168:6 171:14,24 172:7
**particularity** 98:5
**parties** 169:9
**partipat-** 73:16
**parts** 53:15 59:11 116:1,3
**party** 50:21 123:3, 4
**passed** 141:14 143:7
**past** 48:18
**patient** 175:4
**pay** 146:6,15,19
**paying** 145:17 147:8,14
**payments** 146:21
**pending** 170:22
**penetration** 115:14,15,17
**penis** 115:14,16
**people** 34:10 101:4
**performing** 72:11
**period** 150:6 168:19
**periods** 151:11
**permanent** 164:24
**permission** 113:23
**person** 26:21,23 36:2 39:22 42:8,12,14 45:2 141:24 144:17 170:1
**personal** 7:12 11:18 107:7
**personally** 145:16
**personnel** 33:12
**petition** 159:2,5 160:21
**phrase** 111:4
**Phrased** 118:4
**phrases** 116:17
**physical** 113:9
**place** 91:23 131:6 146:25 150:25 151:25
**plain** 111:7 118:8
**Plaintiff** 5:5 6:6 7:2 11:25 12:4 14:2 158:15, 17 161:9 163:7,10,11, 12 166:7
**Plaintiff's** 6:4 24:11 138:18 158:7 161:12 163:9 167:21
**planning** 92:17
**please** 6:4,12,14 7:4 32:14 61:18 72:19 79:25 82:16 116:11 132:19 141:9 166:2
**point** 34:20 56:10 80:10 175:8
**police** 13:21 22:19, 20,23 50:25 136:25 137:5,8,15 138:16 155:22 156:11 164:23
**police's** 137:25
**polices** 93:11
**policies** 23:9,12,25 89:14 93:15 97:7 100:22 112:22 117:5 118:20 119:15,18 120:14 160:2,7,15 161:10 172:18,22 173:7,23
**policy** 19:3,5 20:4, 12,13,21 21:7,10,22, 25 22:4,6,11 43:3,6 45:12 84:23 85:6 86:6 90:3, 14,17 91:23 93:10,22 96:10 98:21 101:1,6 111:3,13,25 112:13,16 115:4 117:2, 4,5,17,23 119:2,3 136:14 140:23 141:1,4,12, 16,18,21 149:3,6,9,12

155:13 160:23 168:5,15
**pool**
33:15
**portions**
20:13
**position**
164:20 169:3
**positions**
164:19
**postpone**
127:23 128:8 129:25 131:12 135:13
**postponing**
130:16
**potential**
33:24 89:3
**practice**
126:24 127:3 154:14
**precedent**
158:16 159:10
**predominantly**
166:11
**preparation**
14:8,20 15:11 16:17 18:7 19:20 23:24 25:6, 19 29:13,20 47:12 50:5 56:24 60:14, 21 74:22 77:7 87:14 91:5 95:16 100:6 111:13 119:19 137:18 138:9,12 142:24 158:10 165:13
**prepare**
14:13 15:7 25:12 86:22
**prepared**
16:10 26:9, 20 29:19 109:6,8 111:11 112:19
**preparing**
26:24 27:4 43:15 55:4 86:16 165:8
**present**
134:21,25 136:17 165:21
**presented**
49:19 153:4 161:7
**preside**
32:2,21
**president**
10:2 11:1,3 96:13
**press**
171:18
**pretty**
7:18
**prevent**
8:1 160:3
**previous**
84:13
**print**
108:5
**prior**
20:24 21:14 47:24 53:16 54:2 55:1 56:19 63:7 89:2 99:24 164:23
**probably**
69:12 123:5 124:10 175:23
**procedure**
43:3 101:7 155:14
**procedures**
12:12,18 20:4 23:25 93:11,15 97:8 100:22 118:20 119:16,19 120:14 121:4 161:10 172:19,22 173:7,23
**proceeding**
11:25
**proceedings**
172:11
**process**
12:23 13:2, 4,5 40:16 44:12 61:2 62:2 63:3,6, 25 64:4,6 65:11,18 67:4 69:16 70:24 71:1, 12,15 72:7 84:16 93:21, 23 110:25 114:14 119:4 120:6 121:4 122:14 123:17 135:20 137:14 150:3,7,14, 17 151:9,13, 17,22 152:16 160:11 169:9,23,24
**processes**
90:11 118:24
**produce**
105:4,11,13
**produced**
29:25 30:8, 15 105:18, 21,25 122:24 124:5 167:2
**producing**
126:22
**production**
166:25
**professional**
95:9
**program**
163:24 164:18
**prominence**
85:15 92:10
**prompting**
136:21
**properly**
158:15
**proposed**
62:15
**propounded**
176:11
**prosecutorial**
51:2
**protect**
105:24
**protected**
89:20
**protecting**
169:17
**protections**
100:12
**protest**
24:17 91:17, 22 93:2,4,13
**protests**
93:12
**protocol**
155:6
**provide**
32:13 116:11 133:17 144:6 146:10 155:14 160:7,9 166:23 167:5
**provided**
17:6,13,19

18:21 19:8 23:4,12,19 24:1 33:20 38:2 48:8, 11,21 50:7,9 51:7,8,12 59:17 67:5 68:12 69:2 73:20 77:21 83:4 84:2 101:11,24 102:12,20 103:12 111:11 118:10 119:9 120:2,5 121:15 122:11,22 123:2,9,15 134:11 147:14,20 148:5,25 154:2 156:3 161:16 162:25 165:3 168:16 170:6 173:1

**provides**
20:12 63:17 111:4

**provisional**
13:12,19 35:16 83:2, 21 84:15,17 135:20 150:18 156:5 160:20 168:14,25

**public**
5:9 86:5 170:21,23

**published**
87:20 92:23 95:23 100:13

**pull**
104:19

**pulled**
104:18

**purpose**
92:2 94:24 128:25 129:8,12 130:16

**pursuant**
5:4

**pursue**
163:24

**put**
39:22 41:8 51:14 146:10 156:25

**Q**

**queried**
27:20

**question**
7:17 8:5 12:14 17:16 18:2,25 19:11,23 20:16 21:4, 20 22:16 23:6,16 24:6 25:11 30:5 32:7 34:21 36:9 37:3 48:1 49:7 65:13 68:10 83:25 84:2,8 86:9 97:17 98:1,12 100:3 101:22 110:17 122:10 128:2 134:24 136:2 139:17 141:8 142:21 149:2 153:5,6 156:8 158:20 162:10 167:8,24 173:20,22

**questioning**
82:24 120:10

**questions**
32:5 35:24 47:18 175:1 176:10

**quick**
101:9 121:25 156:15 162:1

**quote**
70:19 85:14 143:6

**quoted**
96:22

**R**

**race**
27:17 46:6, 14 52:1 58:23 73:3,5 76:8 79:22, 23 81:20,22 160:3

**raise**
6:13

**rationale**
140:9 141:19 142:1,10,16 143:6,11,14, 23 144:3,7, 10

**reach**
151:5 152:10

**reached**
155:8

**reaching**
110:10 137:23 138:17

**read**
27:22 33:19 50:8 59:16 83:24 84:1 86:10 108:9, 12 111:10 112:18 113:12,25 114:3,7 116:18,24 119:6 124:18 138:2 143:19 148:4 159:16,18 161:15 162:11 165:2 170:20 172:25 173:21

**reading**
47:7,8 54:6 116:9 143:21 149:24 150:1

**reads**
117:1,12 158:14 166:7 167:19 170:21

**real**
101:9 121:24 156:15 162:1

**reason**
7:22 130:25 150:9 164:1

**reason/s**
56:9

**reasonable**
98:4 149:19 163:8

**reasons**
18:2 131:3 132:11 140:7 153:4

**recall**
35:12

**receipt**
150:4 152:12

**receive**
120:18 146:5 149:25

**received**
13:20 124:21,25 125:3,11 138:22 140:5 168:3

**receives** 34:17 149:18
**recessed** 43:23 53:3 59:24 103:21 122:4 148:13 173:15
**recollection** 92:9 105:8 106:1 143:5
**recommendation** 153:3 154:7
**recommendations** 72:2,6 152:25
**recommended** 63:17 67:5 68:13 69:3, 16 77:21,23 78:9 83:5 84:3,20 101:11,25 102:20 104:7,11,13 173:8,25
**recommending** 62:15 72:3
**record** 5:13 6:3 7:5 26:1 43:22 44:1 53:2,6 59:23 60:2, 23 77:12 95:21 103:18,20,24 116:8 121:7 122:3,7 124:16 148:12,16 173:14,18 176:3
**recorded** 5:1,16
**recording** 155:21 156:10
**records** 30:23 104:10 137:6 138:19 164:22
**redepose** 106:10
**reference** 124:1
**referenced** 24:25 25:5 88:22
**referencing** 32:3,9,11,15 100:1
**referral** 67:9 84:17, 19 149:18 150:1,4
**referred** 67:10 70:25 84:21 94:1 107:14
**referring** 9:7 37:2 41:14 42:19 47:1 50:24 51:13 52:15 64:17,22 68:3 73:11 85:17 87:10 89:17 90:25 97:19 108:3 110:13 117:3,4,9 118:16
**refers** 94:15
**reflected** 137:9 138:20
**refresh** 92:8 105:7 143:5
**refreshing** 106:1
**refute** 163:14
**refuting** 15:20 159:22 165:1 169:1 172:20
**regarding** 21:23,25 43:9 88:4 89:1 104:2 120:6 122:25 136:25 141:1 149:3 165:18 171:19,22
**regular** 86:7
**regulation** 33:1 94:13 119:2,5 168:15
**regulations** 24:9 33:1
**reiterating** 96:15
**relate** 36:5 98:8
**related** 35:17 73:19 92:19 107:14 172:12
**relates** 98:5,7
**relating** 50:16 133:15
**release** 171:19
**relevance** 35:24
**relevant** 55:24 134:8
**relied** 86:22 165:8
**relief** 158:18
**relies** 105:7
**rely** 94:18 137:24 138:16
**remedial** 160:9,17
**remember** 14:4 30:9 36:21 48:10 92:14
**remind** 18:5
**reminded** 158:25 159:1
**removed** 31:13
**render** 153:9
**rendered** 151:7 152:5 153:13
**rendering** 154:15
**renders** 152:11
**repeat** 48:1 65:13 68:9 100:3 101:22 103:1 141:8 173:19
**rephrase** 8:6 42:18 145:2
**replaced** 39:14
**report** 13:21 19:14, 20 49:15 62:21 156:2
**reported** 5:9 166:10 172:5
**Reporter** 6:1,11,13 29:2 61:17, 20 84:1 107:11 119:22 125:23 157:1 173:21 174:3 175:6,18,21

176:4,7
**reports**
76:19 168:3 171:22
**represent**
7:1
**representative**
5:2,17 8:16 9:24
**request**
22:9 67:14 137:4 140:24
**requested**
27:21
**requested/ asked**
132:23
**Requests**
21:23
**require**
135:10 168:5,13
**required**
78:3 162:12 168:25
**requirements**
86:8 98:20
**requires**
147:13 168:16
**requiring**
136:20
**rescission**
24:13
**reserve**
106:10
**resistance**
113:9,22
**resolution**
169:15
**resolve**
168:7 169:4, 7
**resolved**
168:23
**resolving**
169:18
**respect**
14:2 15:10 22:12 23:18 40:16 41:13 46:23 50:14 51:5 52:11 74:13,22 75:3 78:23 79:14 80:1, 24 81:25 82:9 90:14 93:15 100:21 106:19 109:22 110:21 114:15 118:11 120:1,18 121:15 122:12 123:16,18 128:19 141:12 149:10 153:8 167:6,8
**respective**
33:13
**respond-**
170:15
**responded**
96:7
**respondent**
46:8,14,15, 19 52:3 62:13,24 63:1,11 67:11 69:12 73:5,24 76:18 79:23 81:22 82:5 170:15
**responder**
42:22
**responding**
20:10 50:21 118:25 120:7 167:1
**responds**
170:16
**response**
11:15 16:20 17:3,11,17 18:9 24:16, 22 29:25 30:8,15 86:2,4,5,9 89:25 93:3 96:4,24 97:8 98:13,22,24 100:23,24 104:1 118:25 167:5
**responsibilities**
27:14 32:24 126:1,12 127:22 128:7
**responsibility**
41:19 44:9, 24 45:24 49:14 53:14 54:1 59:9 61:3 62:8 63:20,23 67:14 68:23 69:4,17 72:21 78:23 80:7,14,23 83:6 84:4,24 102:1 104:8, 12 129:5 137:23 173:9,25
**responsible**
45:16 51:21 56:8 58:2,8, 14 75:23 81:5 110:11 145:16 146:15 147:8,16 161:9
**rest**
74:9 113:25 114:1
**restate**
128:1
**result**
161:12 163:21 168:25
**resulted**
161:5 164:24
**results**
104:14
**review**
14:19 15:11 16:17 18:7 19:19 20:24 21:14 23:24 25:4 27:25 29:12 48:20 49:7,9 55:3 56:24 60:14, 21 69:7,25 70:17,18,24 71:1,2,3,11, 15,16 72:10 74:19,21 77:7,19 83:17 84:10, 15 87:14 90:4,9 91:5 93:21,23 95:6,16 99:24 100:5 104:14,22 109:25 111:13 119:18 120:14 129:13 142:24 150:2,3,7,13 151:2,13,17, 21 153:8 155:11 158:10 160:12 161:18

165:5,12 168:19
**reviewed** 15:7,14 16:3 25:19 26:7 27:18,19 55:1 84:12 112:4 138:23 154:1,5,9 155:2 156:1
**reviewing** 31:9 73:18 74:17 144:18 155:6
**reviews** 86:6 95:10
**revisit** 100:12
**right** 6:14 7:14,25 8:4 9:23 10:6 15:10, 23 17:8,16 18:20 20:15 31:19 33:6,7 44:3 45:1,3 48:6 65:9 66:12 67:1 68:20 69:12, 18 70:11 75:13,14,21 101:9 103:17 105:12 106:10 107:4 118:6 121:14 123:11 124:19 125:8 148:23 152:4,15 158:2,13 159:15 163:5 171:11 174:7
**right-hand** 46:14
**rights** 27:13 32:23 125:21,25 126:12

127:22 128:7 162:7 171:4, 7,10
**rise** 85:15 92:9
**risk** 172:15
**role** 10:1,12,13, 15,23 11:5 13:14 36:21 72:3 152:15 171:15,19 172:8
**roles** 10:6 12:6, 18,24
**room** 146:2
**RPR** 5:9
**Rules** 106:3
**ruling** 106:7

**S**

**Sacha** 6:8 14:11,21
**Safe** 91:11
**safety** 49:16 53:17 54:3 59:13 82:6 170:2
**said/she** 74:4
**sanction** 46:24 52:12 53:11,21,22 55:21 56:14 76:2,13
**sanctions** 45:24 46:22 49:3 52:6 53:19 58:13

60:11 62:11, 15 63:17,19 67:5,6 68:13,14 69:3,16 72:3,7 76:2 77:22,23 78:9 81:12 83:5,6 84:3, 5,21,25 89:4 101:11,12,25 102:1,21,22 104:7,11,13 120:12 121:16 129:6 173:8,25
**satisfied** 146:11 147:17 158:15
**saying** 89:9 134:23 149:9
**says** 36:1 37:19, 21 41:17,20 42:1 46:14 49:2 56:7,11 62:11 67:9 68:24 70:17, 22 71:25 92:17 112:4, 15 125:12 128:20 132:22 140:3,7 150:2 162:6
**schedule** 62:10 151:1 168:20
**scheduled** 131:6 150:25
**schedules** 33:13
**scheduling** 131:10,12 132:4

**scholarship** 18:13 145:9, 16,22 146:12,17 147:19,20,21 163:18,21
**scope** 11:7,20 12:1,8,13, 19,25 13:7, 16 14:3 15:13 16:4, 14,19 17:2, 9,22 18:8, 16,23 19:1, 12,24 20:17 21:2,5,11, 16,21 22:2, 17,25 23:7, 14,22 24:3,7 25:1,8,13 26:5 27:6 28:1,8,14,21 29:8,15,21 30:3,12,18 31:1,11,23 34:5 35:6,14 36:4,14,18, 23 37:6,16, 24 38:4,9,22 39:4,10,20 40:4,12,20 41:4 43:5,11 45:11,20 46:1,7,17 47:17,25 48:12,22 50:3,10 51:23 52:2,8 53:23 55:2, 11,17,22 56:3,15,20 57:1,6,13,18 58:10,16,24 59:5 60:16 61:13 62:4, 16,25 63:9, 13,18 64:2,8 65:25 66:21

67:7,19,23 68:15 69:5, 19,23 70:4, 13,21 71:19, 23 72:5,13, 25 73:4,25 74:6,14,24 75:5,16 76:4,9,14,23 77:9,17,24 78:5,11,20, 25 80:3 81:10,17,21 82:3,13,25 83:7,11 84:6 85:3,11,16, 25 86:12,18, 24 87:17,25 88:5,10,17, 23 89:7,18 90:8,16 91:7,15,19, 25 92:13,20, 24 93:5,17 94:3,11,21 95:1,7,18 96:20 97:1, 10 98:16 99:3,25 100:8,18 101:3,14 102:2,16,25 103:14 107:19 108:18,25 109:10,23 110:3 111:1, 15 112:24 114:9,18 115:2,9 116:20 117:7,19 118:2,15 119:12,21 120:4 121:2 122:16 123:20 124:20 125:5,16,22 126:5,9,16 127:1,8,11, 25 128:10,15 129:1,10,19 130:2,10,22 131:15,22 132:5,15 133:2,8,14 134:5,9,15 135:2,8,16 136:2,5,11, 18 137:17 138:14 139:5,13,19 140:12,18 141:6,7,15, 23 142:13 143:1,8,15, 25 144:5,12, 19,24 145:5 146:8,18 149:5 150:8 151:19 152:8,18 153:11 154:4,10,17, 25 155:9,16 158:5 159:12 162:16 165:9,14 166:18 167:14 169:6,13,22 170:7,13 173:3,10 174:13,18

**second** 16:5 66:14 72:19 92:4 158:14,21

**secretary** 104:18 108:9,12 109:20 165:17

**section** 45:17 75:23 116:11

**secure** 133:12,21 135:6

**see** 15:2 28:5,7 31:21 35:12 37:19,23 48:25 49:4, 10 58:8 72:24 75:25 78:18 81:8 87:23 91:2, 13 96:1 100:14 105:12 116:21 124:12 128:21 132:21,25 133:7,25 140:10

**seek** 160:17 164:7,16

**seeking** 164:8

**selection** 40:25

**selects** 33:9

**self-identified** 27:15

**semester** 164:4

**seminars** 120:13 122:22,25 123:22

**send** 71:4 133:22 135:24

**sends** 41:1

**sentence** 35:23 56:10 117:12

143:21

**separate** 145:20

**September** 24:12

**serve** 11:15 36:2

**serving** 40:9 118:23 119:25

**set** 27:19 119:1, 4

**seven** 28:5

**seventh** 31:18,19

**several** 123:2

**Severino** 6:5,24 7:1 8:12,20 9:8, 12,14 11:13, 23 12:5,10, 16,21 13:3, 10,25 14:6 15:16 16:8, 15,22 17:4, 12,25 18:11, 19,24 19:4, 15 20:2,14, 20 21:3,8, 13,18,24 22:5,15,21 23:2,10,17, 23 24:5,23 25:3,10,16, 24 26:8,12, 15,19 27:3,8 28:3,10,18, 24 29:5,11, 17,23 30:6, 13,22 31:8, 15,25 32:5, 10,16 34:14 35:2,9,18 36:6,8,11, 16,20,25

37:12,18 38:1,6,14, 16,18,20 39:1,6,13 40:1,7,15,24 41:7,16,22 42:17 43:8, 14,20 44:2, 20 45:14,22 46:4,9,20 47:3,5,11,21 48:2,19,24 50:4,12,18, 23 51:25 52:5,10,17, 25 53:7 54:5,9,12, 15,19 55:6, 14,19,25 56:6,17,23 57:3,9,15,21 58:12,22 59:1,15,19 60:5,19 61:25 62:12, 22 63:5,10, 15,21 64:5, 14,20,24,25 65:4,8,14 66:4,10,22 67:15,20 68:1,5,7,11, 19 69:8,20 70:1,10,15 71:6,20 72:1,8,17 73:2,7,13,21 74:3,11,20 75:1,9,18 76:7,11,20, 25 77:3,6, 11,20 78:1, 8,13,21 79:4,13,21 80:8,20 81:4,11,15, 19,24 82:8, 15,18,21,22 83:3,9,14, 19,24 84:11 85:8,13,18, 22 86:1,15, 20 87:3,7, 12,13,19 88:2,7,14, 20,25 89:10, 22 90:12,21 91:2,4,9,16, 21 92:3,16, 21 93:1,8,24 94:7,17,23 95:5,11,15, 20 96:23 97:6,12,15, 18,21,24 98:1,3,6,10, 23 99:7,10, 14,18,22 100:2,4,10, 20 101:8,17 102:7,18 103:3,17 104:3 105:1, 5,15,22 106:9,16,18, 22,24 107:4, 12,20 108:21 109:4,16 110:1,5,15, 18,23 111:9, 19,22,24 112:8,10,25 114:12,22 115:6 116:7, 22 117:10,22 118:5,18 119:17,24 120:16 121:6,13 122:1,8,19 123:25 124:23 125:6,19 126:2,7,13, 20 127:4,9, 13 128:3,12, 18 129:7,15, 23 130:7,13, 19 131:2,18 132:2,12,18 133:3,10,16, 19 134:7,12, 19 135:4,12, 22 136:3,8, 13,23 137:2, 11,20 138:6, 7,25 139:9, 14,15,22 140:15,22 141:3,10,17 142:3,19 143:3,13,18 144:2,8,16, 21 145:1,7, 11,14,23 146:4,13,23 147:4,7,18 148:7,17 149:8,15,23 150:12 151:15,23 152:14,22 153:15,20 154:8,13,20 155:4,12,18, 25 156:7,14, 17,19,22 157:3,6,10, 16,20,24 158:1,9,24 159:8,14 161:14 162:21 163:2 165:11,16 166:4,5,14, 15 167:7,17 169:10,19 170:4,10,18 173:5,19 174:6,15,21, 25 175:3,8, 11,14,25 176:6

**sexual**
21:6,10 56:12 58:4,5 75:24,25 78:16,17 81:6,7 87:22 89:2 90:15 91:23 95:25 96:15 98:25 111:25 112:12 113:15,16, 17,21 115:10,20,23 116:4 117:15 119:1 120:8 160:3,5 167:3 168:8, 9 170:25 172:13

**sexually**
166:12

**show**
8:13 121:12 134:3 135:5, 24 136:15 157:12

**showed**
69:13

**shows**
76:19

**sic**
8:2 27:1 52:7 57:11, 17 60:13

**Silence**
113:21

**Simplicity**
27:12,18,24 28:13,17 31:10 104:19

**single**
49:21 74:16 98:1

**sit**
29:6 121:20

**six-week**
151:11

**Sixth**
163:14

**slight**
115:11,17,21
**Slut**
24:17 91:12
**someone's**
101:6
**sooner**
168:17,21
**sought**
163:16
164:19,21
**sounded**
151:10
**South**
5:3,6,17,20,
22 6:9 91:11
**speak**
14:7,10,12,
17 29:18
165:20
**specific**
32:2,7,22
34:4 47:7
49:18,24
52:12 53:20
58:6 60:12
82:10 105:10
111:6 113:20
117:5,15
119:9,13,14
120:17
121:14,23
122:10
123:15
170:12
**specifically**
52:20 72:14
79:14 81:25
82:9 105:23
120:1 150:11
166:2
**specifics**
75:7 121:18
**spoke**
14:11
165:17,21
**spokesman**
88:19
**spreadsheet**
26:9,20,22,
24 27:5,10
29:19 30:15,
16,25 31:16
41:9 43:13
44:14,19
45:16 47:19
50:2 51:20
57:23 58:1
68:17 78:14
109:6,9,15
148:19 167:3
174:8,11
**SRR**
125:17,20
**SS**
125:20
**staff**
33:16 36:19
58:19 76:6
**stalking**
58:3 78:18
**stamp**
124:18
125:12,14
**stand**
125:20 126:3
**standard**
5:15 101:1
149:10
154:14 155:6
**staple**
54:15 87:7,8
**stapled**
9:15
**stapler**
54:9,11
111:21
153:17
157:23
**start**
41:25 54:24
150:21
167:21
**started**
10:15,24
42:4 45:4
85:21 92:17
143:22
**Starting**
65:22
**state**
5:10 6:2 7:4
94:14 164:22
**stated**
7:1 29:24
140:6
**statement**
62:23 88:18
**statements**
62:20 63:2
73:17 79:11,
12 96:8
104:1
**states**
34:18 72:21
**stay**
175:22
**stayed**
164:2
**Steffen**
24:1 37:22
39:5,8,15
40:2,9
118:10,22
119:9 120:2,
6,17 121:7,
15 122:18
138:8
**step**
71:1
**stick**
175:12
**sticker**
157:11
175:12
**stop**
7:21 113:24
**strike**
123:14 150:5
165:6
**strong**
140:9 141:19
142:10
143:6,11,14,
23 144:3,6,
10
**student**
10:3,4 11:17
12:7,23
13:23 20:18
27:13,14
28:22 32:23
33:2,4,6
34:17,20
37:2,20
41:10,13,24
42:24 43:10,
18 44:5,23
45:15,16,25
46:5,13,21
49:13 50:14
51:5,19,20
52:1,7,14,
17,20 53:9
54:1 57:25
58:1,14,23
59:2 60:7,17
61:1,3,23
62:1 64:1,7,
10 65:1,9,
16,19 66:15,
18,19,23,24
67:4,10,11,
13,16,21,22
68:2,12 69:2
70:25 72:11,
20,23 73:3,9
74:13,22
75:4,21
76:3,8,12,22
77:21 78:3,
15,24 79:3,
7,15,22
80:1,25
81:5,16,20,
25 82:2,10
84:21,22,23
85:6,9 93:15
94:9,12,19

101:18,19, 20,21 102:22,23 103:4,6,7,9, 10 104:2,19 109:12,19 110:2,7,8 114:15 115:4,8 116:10,17 119:5 120:1 122:13,14 123:18 125:2,21,25 126:12,15 127:14,20,22 128:5,7,19, 24 131:3,5 132:24 133:6 142:16 145:15 146:16,21,22 147:12,13,22 149:11 150:23 151:11 153:4,8 156:5 160:4 163:19 166:10 168:19 171:17 172:3,10

**student's** 37:20 46:5 67:5 95:24

**students** 10:4,7,25 11:2,3,9,16 27:16 33:15 34:11,16 44:13,16 54:2 59:3,8, 10 73:17,20 101:10,24 102:20 103:12,13 107:15 109:22 135:19 140:4 145:20 160:7 165:18 167:2 174:11,17

**stuff** 155:6

**subject** 147:23

**submission** 113:7

**submitted** 35:24 139:2

**substantiate** 72:22 79:2

**success** 10:4

**sums** 163:12

**support** 15:21 158:21 163:13 167:25 171:5

**supporting** 11:9 15:20 159:21 162:24

**supportive** 160:10,18

**supposed** 85:10 149:13 169:25

**sure** 7:22 8:6 18:4 28:16 37:7 39:24 43:20 57:19 59:21 83:18, 25 85:20 90:10 91:3 99:19 100:19 106:23 113:13 116:13 117:9 173:12

**suspect** 175:1

**suspended** 59:2

**suspending** 82:2

**suspension** 13:9,15,20 35:17 53:22 58:17 76:5, 13 83:2,21 84:15,18 156:5 159:3 160:13,20 168:14,25

**suspensions** 150:18

**swear** 6:12,14

**sworn** 6:21

**synopsis** 138:22 139:2 156:3

**system** 27:12,15,21 28:23

**T**

**tabs** 16:23

**take** 7:21,23 8:16 31:16 32:17 35:3 41:9 43:19 47:22 52:24 56:1, 18 57:22 59:19 60:13 61:10 66:11, 15 68:20 69:1 72:20 75:21 77:13 78:14 80:13 82:16 83:15 84:8 86:2,4 89:25 90:3 92:4 93:3 96:3 98:13 99:11,15 100:21 107:1,13 109:21 110:7 116:23 121:24 125:7 131:6 132:19,20 133:4 148:7 149:13 150:25 151:6,25 156:24 159:15 160:17,25 162:1 163:5 165:22 168:6,12,13 170:19 173:11 175:17,18

**taken** 5:4 59:6

**takes** 167:20

**taking** 8:15 33:11

**talk** 50:1 105:11 137:12 138:8,11

**talked** 53:25 82:23 148:19,23

**talking** 42:13 60:7 85:18 119:11 150:19

**talks** 97:21

**Tammy** 165:19

**Tampa** 5:8,24 24:15,19,21 25:15 88:16 98:7 166:9,

20
**Targets**
87:22
**tell**
15:17 41:12 43:17 44:15 45:9 52:12 79:25 108:23 153:5 155:5
**telling**
89:13
**tells**
133:22
**ten**
28:6 125:3 148:7
**Tennessee**
164:13
**term**
116:15
**terms**
55:4 62:18 72:11 84:24 90:3,4 99:4 116:17
**testified**
6:22 30:7 45:1,5 48:7 60:24 63:16 101:23 109:5 151:17 152:5
**testify**
15:8 43:9 132:23 134:14
**testifying**
135:1
**testimony**
6:15 7:24 32:14 101:10 134:22 148:25
**thank**
54:12 60:20 77:5 157:25 175:3,5,8 176:1
**thick**
111:23
**thickest**
124:10
**thing**
8:4 9:9,17 13:11 15:23 73:15 113:12 175:19
**things**
33:23 34:7 42:9 53:13 89:19 97:4 162:10
**think**
9:10,19 29:9 39:16 64:18 66:2 88:11 109:13 124:15 125:17 175:13
**third**
14:24 16:6 66:16,17 123:2,4 159:16,22, 24,25
**third-party**
42:22
**thought**
68:21 108:6 156:18
**threat**
13:19
**three**
23:6 28:5 31:18 110:18,19 151:3
**Thursday**
96:14
**time**
5:14,15 6:2 7:19 11:24 36:22 43:4, 7,21,25 44:10 45:13 53:1,5 55:16 57:10 59:22 60:1 65:10, 17 80:19 90:13 93:22 96:13 97:5 98:19 100:16 103:19,23 110:25 122:2,6 126:11 129:14 132:10 133:23 135:18 144:15 148:11,15 149:13,19 150:6,10 151:2 168:7, 24 172:10 173:13,17 175:4 176:2
**timeline**
31:4
**timely**
158:15 169:4,8
**times**
7:9 18:2 24:15,19,21 25:15 63:22 88:16 98:8 166:9,20
**timing**
150:16
**title**
12:11,18 19:2,13,19 20:3,10 36:21 42:14, 25 100:12 162:6,8 171:3
**titled**
18:12 87:21 91:11 95:23 100:11
**today**
5:13 7:2,17 8:2 9:18,23 14:8,14,20 15:4,12 16:18 18:7 19:20 21:10 25:6,12,20 26:4 29:6, 14,20 37:15 43:16 50:5 55:1 56:19, 25 74:23 87:15 91:6 95:17 106:25 119:19 121:20 138:9,12 142:25 158:11 161:22
**today's**
8:14 20:25 21:15 23:24 47:12,24 48:8 60:14 77:8 99:24 100:6 111:14 112:11 161:19 165:13
**told**
18:4 68:22
**Toledo**
164:14
**tolerance**
90:18
**tongue**
115:15,16
**top**
28:7 124:18 156:25
**topic**
15:10,19 16:2,16,20, 25 17:3,11, 17 18:6,10,

13,15,17,25 19:2,11,13, 22,25 20:15, 18 21:4,6, 19,22 22:16, 18 23:8,18 24:8 25:11, 12,15 26:11, 12,14,15 32:4,9,11, 15,17,19 36:5 41:15, 16 47:2,3,4 48:25 49:2 50:17 52:16 64:18,23 65:12 73:12 85:17 87:11 91:1 97:11, 14,19,21 100:1 110:14,22 112:7 118:16 126:17 133:15,16 137:1 138:5 139:13 145:10 147:2 149:14 152:19 155:23 158:22 159:23 162:17,19, 22,23 166:13 167:1,6

**topics** 15:3,8,22 32:6,12 123:1 124:4

**total** 167:22

**touch** 116:2

**touching** 115:21,25

**trained** 120:23 121:8

**training** 23:9,11 118:10,21 119:9,14,15 120:2,5,15, 17,22,25 121:3,14,15 122:11 123:14,15

**trainings** 120:13 121:18 123:23

**transcribed** 176:5

**transcript** 38:11,25 39:12 124:10 125:1 126:14 127:6 137:10 138:3,21

**transcripts** 126:25 165:13

**treat** 166:7

**true** 30:17 104:8

**Trustees** 5:3,18,21 6:9 94:14

**truth** 6:16,17 129:9,17 169:5

**try** 8:6 135:13 148:8

**Tuesday** 5:5,13 161:22

**tuition** 147:14

**turn** 14:24 55:7 66:14 79:24 96:12 158:13 167:19 174:7

**turned** 164:18

**twice** 10:17,25

**two** 9:20 10:5 28:5 31:18 33:2 48:18 68:25 80:10 83:16 114:4, 13,16,24 116:17 151:10 157:13 170:22

**type** 37:1 93:6 96:5,6

**typical** 149:3,7 167:20

**typically** 130:5,8

**U**

**UCB** 31:20 33:1, 3,6,7,15 52:21 56:5

**Uh-oh** 156:14

**ultimately** 55:21 140:7

**unable** 56:12 120:21

**unconscious** 143:17 144:4,11

**uncovering** 169:12

**underlying** 13:4

**understand** 8:5 23:15 30:4 51:3 121:19 135:23

**understandable** 113:19 117:13

**understanding** 122:21 123:7,8 145:12

**Undoubtedly** 170:21

**university** 5:3,6,17,20, 22 6:8 11:6, 16 17:11 18:9 20:11 22:19,23 32:20 39:16 45:10 46:24 50:25 51:1 56:8 57:8 74:5 90:5,7 91:11 94:13, 18 95:3,6 109:11 111:3 112:15 117:2,3,5 120:5 122:22 123:5,22 129:16,20,25 130:4,24 131:10 133:5,11 137:5 146:20,25 147:22,25 149:2 160:9, 19 161:4 164:4,5,9, 10,11,12,13, 14 166:7 169:24 171:2,8,24 172:3,16

**University's** 32:14 160:11,15,23

161:10 165:1 169:2 171:14,15, 20,23 172:7, 8,12,14,20
**unrelated** 171:17
**uphold** 154:2 155:7
**upset** 143:10,20
**USF** 7:11,13 9:24 10:1,21 12:6,7,18,24 22:4,6,11, 20,23 24:11 26:15 27:9, 11,19,24 30:9,14,20, 23 32:1 36:19 50:19, 24 51:4,11, 16 72:3,23 79:3 86:2 87:22 88:8, 15 89:3,5,25 90:14 91:18, 22 93:3 95:24 96:3, 13 97:7 98:13,25 100:11,16,21 101:1 114:6, 23 115:3,4 121:7 125:3 127:14 136:15,24 137:12,24 138:15 141:12,18 144:22 145:3,8,25 146:7,24 149:9 155:13,20 156:1 158:20 159:21 160:2 163:13,15 164:22,25 166:10,16,19 167:2,4,10, 25 168:5 169:1,11 171:5 172:19,21 173:6,22 174:7,10
**USF's** 12:11 20:3 21:25 24:8 43:2 89:2 103:11 126:24 136:14 140:23 156:8 168:15 169:3,7 170:25
**USF17OFF00155 2** 156:3
**Utah** 164:14
**utilize** 163:8

**V**

**vaginal** 115:14
**verbally** 7:22 69:21 70:3 71:22 72:3
**verbatim** 59:16 119:6 161:15 165:2 172:25
**verbiage** 119:14
**verified** 30:15
**versions** 73:24
**versus** 5:20 59:3 82:2
**VI** 162:6
**vice** 10:2 11:1,3
**victim** 113:9
**video** 5:1,13,16 7:23 43:22 44:1 53:2,6 59:23 60:2 103:20,24 122:3,7 148:12,16 173:14,18 176:3
**videographer** 5:12,25 6:11 43:21,25 53:1,5 59:22 60:1 103:19, 23 122:2,6 148:11,15 173:13,17 176:2
**videotaped** 8:15
**views** 141:25
**violate** 72:15
**violated** 171:8,10
**violating** 45:17 51:21 52:7 58:2 59:3 75:23 161:9 163:19
**violation** 49:13 56:9 59:8 72:23 78:16 79:3 81:6,13 149:20 162:6,8
**violations** 76:3 89:12
**violence** 58:7 87:23
**violence/4.24** 58:6
**voluntary** 113:6,15
**VP** 10:6

**W**

**Wait** 149:6
**waive** 33:7
**waives** 33:5,6 168:19
**wake** 93:11
**Walk** 24:17 91:12
**want** 11:11 42:10 113:12 116:12 157:1 175:6,11,17 176:4,8
**wanted** 45:3
**way** 14:22 66:5, 11 68:17 136:20
**weather** 132:7
**week** 92:18,22
**weeks** 48:18 131:7, 25 150:4,6, 11 151:1,12, 16,20,22 152:1

**weigh**
74:7 120:3
**weighing**
120:9,18,24 121:8 123:16 124:1
**Weinstein**
92:15
**welfare**
53:17
**went**
25:18 32:11, 19 56:22 60:9 80:5 104:9 108:4 156:22
**West**
164:15
**Western**
164:11
**whatsoever**
22:11
**white**
58:25 73:6 76:10 166:11 174:17
**willingness**
111:6 113:20 117:14
**with/of/by**
116:5
**witness**
6:12,18 8:18 11:8,21 12:3,9,14,20 13:1,8,18 14:4 15:14 16:5,20 17:3,10,23 18:9,17 19:2,13,25 20:9,18 21:6,12,17, 22 22:4,14, 18 23:1,8,15 24:4,8 25:2, 9,14 26:6 27:2,7 28:9, 16,22 29:4, 9,16,22 30:4,20 31:3,12,24 34:6 35:7,15 36:9,15,19, 24 37:7,17, 25 38:5,10, 23 39:5,11, 21 40:5,13, 21 41:5,17 42:16 43:6, 12 44:18 45:12,21 46:2,8,18 47:6,18 48:1,13,16, 23 50:11,19 51:24 52:3, 9,19 53:24 55:3,12,18, 23 56:4,16, 21 57:2,7, 14,19 58:11, 17,25 59:6 60:17 61:14, 19,21 62:5, 17 63:1,14, 19 64:3,9 65:13 66:1, 3,9 67:8,24 68:6,9,16 69:6,24 70:5,14,22 71:24 72:6, 14 73:1,5,14 74:1,7,16,25 75:6 76:5, 10,15,24 77:10,18,25 78:6,12 79:1,10,11, 20 80:5,17 81:3,18,22 82:4,14 83:1,8,12 85:4,12,20 86:13,19,25 87:18 88:1, 6,11,18,24 89:8,19 90:9,17 91:8,20 92:1,14,25 93:6,18 94:4,12,22 95:2,8,19 96:21 97:2, 11 98:17 99:4 100:3, 9,19 101:4, 15 102:4,17 103:1,15,25 107:6 108:19 109:1,11,24 110:4 111:3, 16 114:10,20 115:3,10 116:21 117:8,21 118:3,16 119:13,23 120:5 121:3, 11 122:17 123:21 124:21 125:17,25 126:6,10,17, 19 127:2,12 128:1,11,16 129:2,12,20 130:4,11,23 131:16,23 132:6,16 133:9,17,18 134:6,10,16 135:3,10,17 136:6,12,15, 17,20 137:3, 18 138:15 139:6,20 140:13,19 141:1,8,16, 24 142:14 143:2,9,16 144:1,6,13, 20,25 145:6, 12,19 146:2, 9,19 147:5, 11 149:6,17 150:9 151:20 152:9,19 153:12 154:5,11,18 155:1,10,17 156:1 158:6, 25 159:13 160:1 162:17,19 165:10,15 166:19 167:15 169:7,14,23 170:8,14 173:4,11 174:5,14,19 175:10,23 176:11
**witnesses**
53:15 59:10, 11 62:20 129:4 132:13,22 133:5 135:10 136:21
**word**
17:5,13 18:21 19:8 20:6,9 23:3, 19 86:13
**words**
111:8 113:19 114:17,20 117:13,25 118:9
**work**
111:23 164:19
**wrap**
99:14 148:8
**writ**
159:2 160:21
**write**
95:3,4 117:8

**writing**
39:22
**written**
22:6 70:11 125:1 126:14,25 127:6
**wrong**
39:22
**wrote**
107:6 108:8

**Y**

**yeah**
9:12 12:17 23:18 30:7 36:12 48:3 66:2 99:7 100:5 107:1 113:13 117:23 141:11 173:12
**year**
85:23 147:23
**years**
10:14,16,17 20:22 39:24 112:16 144:25 145:3 159:6

**Z**

**Zale**
24:2 122:11, 24 123:16
**zero**
90:18
**zero-tolerance**
90:14 91:23 93:10